**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAFARI MBADIWE and RACHEL MILLER on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>AMAZON.COM, INC.,<br><br>              Defendant. | Civ. |

Tafari Mbadiwe and Rachel Miller ("Plaintiffs"), by and through undersigned counsel, and on behalf of themselves and all others similarly situated, seek damages under state antitrust and consumer protection laws against Defendant Amazon.com, Inc. ("Amazon"). This Complaint is alleged upon information and belief, except as to those allegations which pertain to the named Plaintiffs, which are alleged based on Plaintiffs' personal knowledge.

## NATURE OF ACTION

1.      This action seeks redress for consumers from Arkansas, Arizona, Connecticut, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Missouri, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (collectively, the "States") who, during the respective Class Periods, defined infra

1

at ¶ 102,[1] paid supra-competitive prices for products sold on e-commerce platforms other than Amazon because of an unlawful price restraint that Amazon imposed on the millions of third-party sellers that utilized Amazon to sell their products online.

2.     Amazon was and is the world's largest online retailer, with a market share multiple times higher than its nearest competitors.  Sales on Amazon's website, mobile application, and voice control devices (collectively, the "Amazon Platform") reportedly constituted 49.1% of all online retail spend in the United States in 2018,[2] and accounted for between "65% to 70% of all U.S. online marketplace sales" as of October 2019.[3]

3.     The products sold on the Amazon Platform were divided into two categories. First, consumers could choose among approximately 12 million products to purchase that were sold by Amazon directly.[4]  Second, consumers could choose among approximately 500 million products to purchase that were sold by third-party sellers that registered with Amazon to sell products on the Amazon Platform.[5]  Nicholas Dennissen, Amazon's Vice President of

---

[1]     Unless otherwise specified herein, all allegations relate to conduct or practices occurring within the Class Periods.

[2]     Jillian Hufford, *Amazon Statistics: Need to Know Numbers about Amazon*, NChannel (Dec. 12, 2020), https://www.nchannel.com/blog/amazon-statistics/.

[3]     Staff of S. Comm. on Antitrust, Commercial, and Administrative Law, 116th Cong., Rep. on Investigation of Competition in Digital Markets ("House Report"), at 255 (2020), https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf?utm_campaign=4493-519.

[4]     Emily Dayton, *Amazon Statistics You Should Know: Opportunities to Make the Most of America's Top Online Marketplace,* BigCommerce (Feb. 8, 2019), https://www.bigcommerce.com/blog/amazon-statistics/.

[5]     *How Many Products Does Amazon Sell Worldwide* – January 2018, ScrapeHero, https://www.scrapehero.com/how-many-products-amazon-sell-worldwide-january-2018/ (last visited Oct. 31, 2022).

Marketplace Business, described the Amazon Platform as "akin to an online mall where independent merchants display their products to people perusing the website."[6]

4.    There were over two million third-party sellers in the United States that sold products on the Amazon Platform,[7] and from 2018 to 2019, over 50% of the units sold on the Amazon Platform were sold by third-party sellers.[8]

5.    Given Amazon's dominant position in the United States e-commerce market, access to the Amazon Platform was indispensable for third-party sellers.

6.    Although approximately 80% of Amazon's third-party sellers also sold their products on competing online retail platforms, such as Walmart, Target, or their own websites,[9] third-party sellers generated a substantial portion of their revenue from sales on the Amazon Platform.  According to a 2018 survey, almost half of Amazon's third-party sellers generated between 81% and 100% of their revenues from sales on the Amazon Platform.[10]

---

[6]    Affidavit of Nicholas Denissen, Amazon's Vice President of Marketplace Business ("Denissen Aff.") ¶ 5, June 30, 2017, Oberdorf v. Amazon.com, Inc., No. 16-cv-1127MWB (M.D. Pa.), ECF No. 31.

[7]    *Key Metrics of Amazon.Com Marketplace Sellers in the United States in 2019*, Statista, https://www.statista.com/statistics/1086637/amazoncom-3p-seller-metrics-usa/ (last visited Oct. 31, 2022); *Third-Party Sellers Giving Amazon a Huge Boost*, Seattle Times, https://www.seattletimes.com/business/amazon/amazon-to-host-forum-for-its-marketplace-merchants/ (last updated May 31, 2016).

[8]    *Share Of Paid Units Sold by Third-Party Sellers on Amazon Platform From 2nd Quarter 2007 to 2nd Quarter 2022*, Statista, https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/ (last visited Oct. 31, 2022).

[9]    Rani Molla & Jason Del Rey, *A fifth of professional Amazon merchants sell more than $1 million a year — double the share from last year*, Vox (May 23, 2018), https://www.vox.com/2018/5/23/17380088/amazon-sellers-survey-third-party-marketplace-walmart-ebay.

[10]    *Percentage of E-commerce Revenue from Amazon Sales According to Amazon Marketplace Sellers in 2018*, Statista, https://www.statista.com/statistics/886918/amazon-revenue-share-of-amazon-sellers/ (last visited Oct. 31, 2022).

7.     For a third-party seller to have sold products to the millions of consumers who shopped on the Amazon Platform, the third-party seller registered with Amazon, paid up to a $40 registration fee, and "agreed to the terms of the Amazon Services Business Solutions Agreement ("BSA") and the policies incorporated in that agreement."[11]

8.     During the Class Periods, Amazon prohibited third-party sellers by contract in the BSA from offering their products on any competing e-commerce platform, even the third-party sellers' own websites, at lower prices or on more favorable terms than the third-party seller offered their products on the Amazon Platform.  Amazon exploited the fact that third-party sellers needed to be able to sell on the Amazon Platform by coercing the third-party sellers into agreeing to a contract provision that was against their best interests.

9.     Until in or around March 2019, the BSA executed between Amazon and third-party sellers included a "Price Parity Restriction" that required third-party sellers to:

> maintain parity between the products you offer through Your Sales Channels and the products you list on any Amazon Site by ensuring that … the purchase price and every other term of sale … is at least as favorable to Amazon Site users as the most favorable terms via Your Sales Channels (excluding consideration of Excluded Offers).[12]

10.     Amazon monitored compliance with the Price Parity Restriction by scanning competing e-commerce platforms for third-party sellers' products and alerting a third-party seller if a product was offered by the third-party seller on a site other than the Amazon Platform for a lower price than the product was offered on the Amazon Platform.  On discovering a breach of the Price Parity Restriction, Amazon sanctioned the breaching third-party seller by, for example,

---

[11]     Irwin Decl. ¶ 4.

[12]     Irwin Decl. ¶ 4, Ex. A at 18.

suspending its right to sell on the Amazon Platform or making its products appear less prominently in the search results on the Amazon Platform.

11.     Taking together (1) the explicit language of the Price Parity Restriction, (2) Amazon's robust system to ensure compliance with the same, and (3) the range of sanctions Amazon threatened to and did impose for violating the Price Parity Restriction, third-party sellers were precluded by Amazon from offering their products for lower prices anywhere outside of the Amazon Platform.

12.     The anticompetitive impact of the Price Parity Restriction was exacerbated by the series of fees and extra charges that Amazon extracted from third-party sellers.  Amazon, for example, charged third-party sellers a "referral fee" which was computed as a percentage – usually 15% – of the product price.  Between referral fees, shipping fees, and advertising fees, the per-unit fees paid to Amazon by third-party sellers in aggregate could equal up to 30 percent of the product price in 2018, which was up from 19 percent in 2014.[13]  By virtue of the Price Parity Restriction, third-party sellers were forced to incorporate Amazon's high fees and costs into their product prices not only when selling on Amazon, but also when selling across the entire online retail sales market.

13.     Even though it cost third-party sellers significantly less to sell products on other e-commerce platforms like eBay or their own websites,[14] third-party sellers could not and did not

---

[13]     Stacy Mitchell, *Amazon's Toll Road How the Tech Giant Funds Its Monopoly Empire by Exploiting Small Business*, ILSR (Dec. 1, 2021), https://ilsr.org/wp-content/uploads/2021/11/ILSR-AmazonTollRoad-Final.pdf.

[14]     Max Godin, *Selling on Amazon vs eBay – Discover Which is Better and Why*, Crazylister (May 15, 2018) https://crazylister.com/blog/selling-on-amazon-vs-ebay/; Molson Hart, *How Amazon's Business Practices Harm American Consumers: Why Amazon Needs a Competitor and Why Walmart Ain't It*, Medium (July 19, 2019), https://medium.com/swlh/amazon-needs-a-competitor-and-walmart-aint-it-5997977b77b2.

decrease their prices and pass along these savings to consumers outside of the Amazon Platform because of the Price Parity Restriction.

14.     Amazon was able to suppress competition by way of the Price Parity Restriction because it held substantial market power.  Amazon knows that it was only because access to the Amazon Platform was indispensable for third-party sellers that it could simultaneously (1) charge third-party sellers substantially higher fees than other platforms and (2) prevent third-party sellers from discounting their products off the Amazon Platform, without risking losing its captive population of third-party sellers.

15.     Absent the Price Parity Restriction – if Amazon's third-party sellers were allowed to compete on price outside of the Amazon Platform – the prices of Class Products, defined infra at ¶ 93, during the Class Periods would have been substantially lower.

16.     Amazon and its third-party sellers were horizontal competitors in the online retail markets in the States, in that Amazon sold its own products as a retail seller on the Amazon Platform directly in competition with third-party sellers' products.  By virtue of the Price Parity Restriction, which restrained third-party sellers from offering lower prices or more favorable terms on platforms outside of Amazon, Amazon engaged in a *per se*, horizontal agreement in restraint of trade.  In the alternative, Amazon is liable for the creation, maintenance, and enforcement of the Price Parity Restriction under a "quick look" or rule of reason standard.  If third-party sellers had been able to offer lower prices outside of the Amazon Platform, it would have created competitive pressure on Amazon to lower prices as a first-party seller for products sold on the Amazon Platform that competed with the third-party sellers' products.  The Price Parity Restriction removed that pressure by preventing third-party sellers from reducing prices

on platforms other than the Amazon Platform even when it would have been profitable for them to do so. The Price Parity Restriction thus artificially inflated prices for third-party sellers' products sold outside of the Amazon Platform.

17.    Amazon also had a vertical relationship with third-party sellers because Amazon was providing third-party sellers access to the Amazon Platform to sell their products in exchange for fees. The Price Parity Restriction removed the competitive pressure that would otherwise have existed on Amazon to lower fees and charges that it imposed on third-party sellers to sell products on the Amazon Platform. The Price Parity Restriction constituted an unreasonable vertical agreement in restraint of trade because it prevented price competition among online retail platforms by imposing an artificially high price floor for products sold by third-party sellers on platforms across the online retail markets in the States.

18.    In response to congressional scrutiny that the Price Parity Restriction ran afoul of antitrust laws,[15] Amazon removed the Price Parity Restriction from the BSA in the United States in or around March 2019.[16] The date on which Amazon removed the Price Parity Restriction from the BSA will be referred to herein as the "March 2019 Removal Date."

19.    Plaintiffs and members of the Classes, defined infra at ¶ 102, purchased Class Products during the Class Periods at inflated and supra-competitive prices because Amazon, through the Price Parity Restriction, prevented its third-party sellers from offering lower prices

---

[15]    Letter from Senator Richard Blumenthal to Honorable Makan Delrahim, Assistant Attorney General U.S. Department of Justice (Dec. 19, 2018), https://www.blumenthal.senate.gov/imo/media/doc/12.19.18%20-%20DOJ%20-%20Price%20Parity.pdf.

[16]    *See, e.g.*, Greg Magana, Amazon is ending its restrictive pricing practice, Business Insider (Mar. 13, 2019), https://www.businessinsider.com/amazon-ends-restrictive-pricing-parity-2019-3

for their products outside the Amazon Platform.  Plaintiffs and members of the Classes hereby seek damages from Amazon under state antitrust and consumer protection laws.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1332(d), in that the claims are asserted on behalf of the Classes, and the matter or controversy exceeds the sum of $5 million, exclusive of interests and costs, and some members of the proposed Classes are citizens of a state different from Amazon.

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, Amazon resides in, is licensed to do business in, does business in, has agents in, or is found or transacts business in, this District.

22.    Amazon engaged in conduct that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

23.    The activities of Amazon were within the flow of, were intended to, and did have, a substantial effect on interstate commerce in the United States.

## PARTIES

24.    Tafari Mbadiwe is a resident of New York, New York.  While living in New York City, Mr. Mbadiwe regularly shopped online on e-commerce platforms other than the Amazon Platform, and many of the products he purchased from other e-commerce platforms were concurrently available for sale on the Amazon Platform.  For example, on December 3, 2018,

Mr. Mbadiwe went to Walmart.com and purchased Sensodyne Pronamel Gentle Whitening Fluoride Toothpaste for $9.84 and Jergens Ultra Healing Extra Dry Skin Moisturizer for $5.84. The prices that Mr. Mbadiwe paid for these products on Walmart.com were equal to the lowest prices listed for those products on the Amazon Platform on December 3, 2018.  Amazon's Price Parity Restriction prevented the price competition that would have resulted in lower prices for these products.  Mr. Mbadiwe was injured by paying more for Class Products than he would have paid in the absence of the Price Parity Restriction, as set forth herein.

25.      Rachel Miller is a resident of Brooklyn, New York.  While living in Brooklyn, New York, Mrs. Miller regularly shopped online on e-commerce platforms other than the Amazon Platform, and many of the products she purchased from other e-commerce platforms were concurrently available for sale on the Amazon Platform.  For example, on February 11, 2019, Mrs. Miller purchased Drunk Elephant Beste™ No. 9 Jelly Cleanser from Sephora.com for $32.00, a price equal to the lowest price listed for that product on the Amazon Platform at that time.  Amazon's Price Parity Restriction prevented the price competition that would have resulted in a lower price for this product.  Mrs. Miller was injured by paying more for Class Products than she would have paid in the absence of the Price Parity Restriction, as set forth herein.

26.      Amazon is an online retail behemoth with its principal headquarters in Seattle, Washington.  Amazon sells products directly to customers on the Amazon Platform, and, in exchange for fees and charges, also permits over two million third-party sellers to sell their products on the Amazon Platform.

## FACTUAL ALLEGATIONS

A.    **Background**

27.    During the Class Periods, Amazon was, by a wide margin, the largest online retailer in the United States.

28.    In 2018, according to a well-known market research company named eMarketer, "Americans bought more books, T-shirts and other products on Amazon than eBay, Walmart and its next seven largest online competitors combined."[17]

29.    Amazon's market valuation as of February 2019 was $806 billion,[18] more than Walmart, eBay, and Target combined.

30.    As of July 2018, Amazon's website was the most visited website in the United States for shopping and was the fourth most visited website across the entire internet in the United States.[19]

31.    According to a May 2018 survey, almost half of internet users in the United States started their online shopping searches on the Amazon Platform.[20]

32.    Amazon's growth was fueled, in part, by its Prime program. Prime membership is and was a paid subscription service, which entitles Amazon customers benefits, including free

---

[17]    Karen Weise, *Prime Power: How Amazon Squeezes the Businesses Behind Its Store*, NYT (Dec. 19, 2019), https://www.nytimes.com/2019/12/19/technology/amazon-sellers.html.

[18]    *Market Capitalization of Amazon (AMZN)*, Companies Market Cap, https://companiesmarketcap.com/amazon/marketcap/ (last visited Oct. 31, 2022).

[19]    Archived pages reflecting overview of traffic on Amazon.com during July 2018, Similar Web, https://web.archive.org/web/20180815230047/https://www.similarweb.com/website/amazon.com (last visited Oct. 31, 2022).

[20]    Jillian Hufford, *Amazon Statistics: Need to Know Numbers about Amazon*, NChannel (Dec. 12, 2020), https://www.nchannel.com/blog/amazon-statistics/.

two-day shipping on Prime products.  Amazon had over 100 million Prime members in the

United States as of January 2019.

      **B.**      **The Amazon Platform was Indispensable for Millions of Third-Party Sellers**

      33.      Third-party sellers needed access to the Amazon Platform for their businesses to

survive given Amazon's dominant position in the e-commerce market.

      34.      Although third-party sellers sold their products through other e-commerce

channels, including their own websites, third-party sellers generated a substantial portion of their

revenue from sales on the Amazon Platform.

      35.      Molson Hart, whose company sold toys on the Amazon Platform reported: "Were

we to be suspended from selling on Amazon.com, it would probably take 3–6 months before

we'd be bankrupt. We are not alone. This is typical for small to medium sized businesses which

sell online today.  In fact, most companies like our own, would probably go bust even faster."[21]

      36.      In April 2018, Nate Masterson, a marketing manager for Maple Holistics, stated

that "becoming established as an Amazon Marketplace Partner is imperative to the future success

of any small business . . . Amazon is the future (if not the present), and businesses will either

adapt to it or get left behind."[22]

---

[21]      Molson Hart, *How Amazon's Business Practices Harm American Consumers: Why Amazon Needs a Competitor and Why Walmart Ain't It*, Medium (July 19, 2019), https://medium.com/swlh/amazon-needs-a-competitor-and-walmart-aint-it-5997977b77b2.

[22]      Pamela N. Danziger, *Thinking of Selling on Amazon Marketplace? Here Are the Pros And Cons*, Forbes (Apr. 27, 2018), https://www.forbes.com/sites/pamdanziger/2018/04/27/pros-and-cons-of-amazon-marketplace-for-small-and-mid-sized-businesses/?sh=27b3c5468677.

### C.    Amazon Generated Billions of Dollars From Fees and Charges Paid by Third-Party Sellers

37.    To be able to sell products on the Amazon Platform, the process for a third-party seller began with the payment of up to a $40 registration fee and the execution of the BSA.

38.    Third-party sellers could then create product listings or match existing product listings and begin selling products on the Amazon Platform.

39.    For any sale a third-party seller made on the Amazon Platform, Amazon then charged the third-party seller a "referral fee," which, for most product categories, was 15 percent of the product price.[23]

40.    Upon making a sale on the Amazon Platform, the third-party seller could choose to fill the order itself or select "Fulfillment by Amazon" ("FBA").  FBA was a program whereby third-party sellers paid Amazon fees to store products, pack and ship products to customers, and manage customer service and returns.  Many third-party sellers enrolled in the FBA program because it was cost effective, permitted them to qualify to sell to Prime members, and, most importantly, it increased the likelihood that Amazon's search algorithm selected the third-party seller for the Buy Box.[24]  The importance to a third-party seller of being selected for the Buy Box is discussed further infra at ¶ 61.

---

[23]    Category Referral Fees, Amazon, https://sell.amazon.com/pricing?ref_=sdus_soa_sell_pricing_reffee#referral-fees (last visited Oct. 31, 2022).

[24]    Stacy Mitchell & Shaoul Sussman, *How Amazon Rigs Its Shopping Algorithm*, ProMarket (Nov. 6, 2019) https://www.promarket.org/2019/11/06/how-amazon-rigs-its-shopping-algorithm/; Eyal Lanxner, *The Amazon Buy Box: How It Works for Sellers, and Why It's So Important*, Big Commerce (Dec. 13, 2017), https://www.bigcommerce.com/blog/win-amazon-buy-box/.

41.    Third-party sellers also paid Amazon advertising fees.  It was estimated that in 2018, sellers forfeited an estimated 2.7 percent of their sales revenue to buy ads from Amazon.[25]

42.    As shown below, a December 2021 report by the Institute for Local Self-Reliance found that, after aggregating all fees and charges, third-party sellers paid an average of 30 percent of each sale to Amazon in 2018, which was up from 19 percent in 2014.[26]



43.    Amazon earned $42 billion in 2018 and $53 billion in 2019 from "Third-Party Seller Services Sales," which was defined by Amazon as "commissions, related fulfillment and shipping fees, and other third-party seller services."[27]

---

[25]    Stacy Mitchell, *Amazon's Toll Road How the Tech Giant Funds Its Monopoly Empire by Exploiting Small Business*, ILSR (Dec. 1, 2021), https://ilsr.org/wp-content/uploads/2021/11/ILSR-AmazonTollRoad-Final.pdf.

[26]    *Id*. at 6.

[27]    Amazon Third-Party Seller Services Sales, Marketplace Pulse, https://www.marketplacepulse.com/stats/amazon/amazon-third-party-seller-services-sales-106 (last visited Nov. 1, 2022).

D.    **Amazon's First-Party Products Competed with Third-Party Sellers'
Products on and off the Amazon Platform**

44.    During the Class Periods, Amazon sold approximately 12 million products on the

Amazon Platform as a retail seller in a variety of categories – including clothing, shoes, jewelry,

home and kitchen items, and electronics – in direct competition with its third-party sellers.

45.    Amazon sold products as a first-party seller that fell within the same categories of

products sold by third-party sellers.  For example, the men's athletic socks that Amazon sold

under its private label called Amazon Essentials competed with men's athletic socks sold by

Fruit of the Loom both on the Amazon Platform as well as on Fruit of the Loom's own website.

46.    Amazon even sold the same products as some third-party sellers.

47.    A user searching for a product to purchase on the Amazon Platform viewed

Amazon's first-party offers "alongside [the offers of] independent third-party sellers," leading

the U.S. House of Representatives' Subcommittee on Antitrust, Commercial and Administrative

Law of the Committee on the Judiciary (the "House Antitrust Subcommittee") to conclude that

the third-party sellers are "both [Amazon's] customers and competitors" in the e-commerce

market.[28]

48.    Amazon even referred to its third-party sellers as "internal competitors,"[29] and in

a 2018 letter to shareholders, Amazon acknowledged the competition between it, as a first-party

---

[28]    House Report, at 86.

[29]    *Id*. at 16.

14

seller, and its third-party sellers, stating: "Third-party sales have grown from 3% of the total to

58%.  To put it bluntly: Third-party sellers are kicking our first party butt.  Badly."[30]

> **E.** **Amazon Prevented Price Competition Through the Price Parity Restriction**

49. From the beginning of the Class Periods until the March 2019 Removal Date, the

BSA included the Price Parity Restriction, which provided that third-party sellers were required

to:

> maintain parity between the products you offer through Your Sales Channels and
> the products you list on any Amazon Site by ensuring that … the purchase price
> and every other term of sale … is at least as favorable to Amazon Site users as the
> most favorable terms via Your Sales Channels (excluding consideration of
> Excluded Offers).[31]

50. The Price Parity Restriction was reinforced by what was referred to during a

portion of the Class Periods as the "General Pricing Rule."

51. In January 2017, the "Fees and Pricing" section of the "Policies and Agreements"

applicable to selling on the Amazon Platform defined the General Pricing Rule as follows:

> You may list items at any price you feel is fair, regardless of the Amazon price or
> list price, within the limits set by Amazon, and so long as your price adheres to our
> General Pricing Rule.
>
> . . . .
>
> General Pricing Rule: By our General Pricing rule, you must always ensure that the
> item price and total price of an item you list on Amazon.com are at or below the
> item price and total price at which you offer and/or sell the item via any other online
> sales channel.

---

[30]     Jeff Bezos, *2018 Letter to Shareholders*, Amazon (Apr. 11, 2019),
https://www.aboutamazon.com/news/company-news/2018-letter-to-shareholders (emphasis in original).

[31]     Irwin Decl. Ex. A at 18.

Pricing definitions

The item price is the amount payable by a customer, excluding shipping and handling, as it appears when you list an item.

The total price is the amount payable by a customer as well as all terms of offer/sale.[32]

52.    Prior to 2013, Amazon imposed the same Price Parity Restriction on third-party sellers that sold products on Amazon platforms in Europe.  In 2013, antitrust officials from the United Kingdom's Office of Fair Trading and Germany's Federal Cartel Office launched investigations into Amazon's use of the Price Parity Restriction.[33]  The Federal Cartel Office in Germany made the following findings:

The agreement of a price parity clause constitutes horizontal price-fixing for which an understanding on the pricing of just one part of an agreement (here of the third-party retailer) is sufficient if that retailer is a direct competitor.  A general competitive relationship exists between Amazon and the third-party sellers in the retail markets in all product categories.  Thus, the price parity clause is a hardcore restriction in all product categories.  According to a poll of 2,500 online retailers carried out by the Bundeskartellamt, it has also resulted in significant price increases in e-commerce.

Moreover, the price parity specification not only affects the pricing of online distribution via a seller's own webshop, but also has a direct effect on Internet marketplace operators. Price parity clauses thus act as barriers to market entry for new competitors and hinder the expansion of existing competitors in the market. This is because the major competitive parameter – the fees for platform services – is neutralised by the price parity clause, since more favourable fees cannot be

---

[32]    Archive of Amazon's Fees and Pricing page, Archive.Org, https://web.archive.org/web/20170122160346/https://www.amazon.com/gp/help/customer/display.html?nodeId=1161240 (last visited Nov. 1, 2022).

[33]    *Amazon to Alter Pricing Policy for Traders*, BBC News (Aug. 29, 2013), https://www.bbc.com/news/business-23881202.

translated into more favourable prices for final customers. This prevents competitors from establishing a greater reach.[34]

53.     In response to these investigations, Amazon withdrew the Price Parity Restriction in Europe,[35] but maintained it in the United States.

### F.    Amazon Enforced the Price Parity Restriction

54.     To monitor compliance with the Price Parity Restriction, Amazon employed an automated system that scanned other e-commerce platforms to detect whether third-party sellers were discounting their products relative to prices offered on the Amazon Platform. Upon discovering a violation, "Amazon alerted the company selling the item and then ma[de] the product harder to find and buy on its own marketplace."[36] "The alerts show[ed] the product, the price on Amazon and the price found elsewhere on the web. They [didn't] name the competing site with a lower price; the merchant [was required to] find that themselves."[37]

55.     It was reported that "Amazon even check[ed] [the third-party seller's] listings for similar products that are differently described, by color or size, for example. In other words, there [was] no hiding place."[38]

---

[34]     Case Report: *Amazon Removes Price Parity Obligation for Retailers on Its Marketplace Platform*, Ref.: B6-46/12 (Dec. 9, 2013), https://perma.cc/5VGV-Q9QF ("Federal Cartel Office Report"). The Federal Cartel Office Report is attached as Exhibit 1 to this Complaint.

[35]     *Amazon to Alter Pricing Policy for Traders*, BBC News (Aug. 29, 2013), https://www.bbc.com/news/business-23881202.

[36]     Spencer Soper, *Amazon Squeezes Sellers That Offer Better Prices on Walmart*, Bloomberg (Aug. 5, 2019), https://www.bloomberg.com/news/articles/2019-08-05/amazon-is-squeezing-sellers-that-offer-better-prices-on-walmart?leadSource=uverify%20wall.

[37]     *Id*.

[38]     Rupert Heather, *The Little-Known Amazon Pricing Rule That Could Burn Your Business*, Xsellco, https://www.xsellco.com/resources/amazon-pricing-rule-burn-business/ (last visited Oct. 31, 2022).

56.    The alerts that went to third-party sellers for violating the Price Parity Restriction informed them that their products were ineligible to compete for the Buy Box,[39] leading The New York Times to report in December 2019 that "Amazon punishe[d] businesses if their items are available for even a penny less elsewhere."[40]

57.    For every product sold on the Amazon Platform, there was one product selected for the "Buy Box."  When a consumer clicked "Add to Cart" or "Buy Now" on the Amazon Platform, the consumer was buying from the Buy Box winner.

58.    To determine which product was featured in the Buy Box, Amazon used an algorithm that considered several variables including the price of the product, the seller's rating, the seller's order cancellation rate, and the fulfillment method, i.e., whether the third-party seller was enrolled in the Fulfillment by Amazon program described supra at ¶ 40.[41]

59.    The Buy Box on the website, as shown below, was the white box on the right side of the product details page where shoppers could click "Add to Cart" or "Buy Now."  To view offers from those sellers other than the Buy Box winner, a user needed to click the box below titled, "Other Sellers on Amazon."

---

[39]    Spencer, Soper, *Amazon Squeezes Sellers That Offer Better Prices on Walmart*, Bloomberg (August 5, 2019)  https://www.bloomberg.com/news/articles/2019-08-05/amazon-is-squeezing-sellers-that-offer-better-prices-on-walmart?leadSource=uverify%20wall; Lisa Suttora, *Amazon Ends Price Parity Policy for 3rd Party Sellers*, Lisa Suttora (March 21, 2019), https://lisasuttora.com/amazon-ends-price-parity-policy-for-3rd-party-sellers.

[40]    Karen Weise, *Prime Power: How Amazon Squeezes the Businesses Behind Its Store*, NYT (Dec. 19, 2019), https://www.nytimes.com/2019/12/19/technology/amazon-sellers.html.

[41]    The Buy Box section of the *Expert's Guide to Selling on Amazon*, Buy Box Experts, https://www.buyboxexperts.com/blog/book/the-buy-box/ (last visited Nov. 1, 2022).



60.     On Amazon's mobile application, which was accessed by almost 100 million users per month, the Buy Box appeared directly below the product, and users of the mobile application needed to scroll down to view products sold by "Other sellers," i.e., those sellers that did not win the Buy Box.

61.    A very high percentage of sales on the Amazon Platform, potentially up to 80 percent, were made as a result of the consumer clicking the Buy Box (as opposed to purchasing the product from "Other Sellers").[42]

62.    Therefore, preventing a third-party seller from winning the Buy Box upon discovery of a breach of the Price Parity Restriction was highly injurious to the third-party seller.

63.    Molson Hart, whose company sold toys on the Amazon Platform, found that Amazon penalized third-party sellers for offering lower prices outside of the Amazon Platform, stating, "If we sell our products for less on channels outside Amazon and Amazon detects this, our products will not appear as prominently in search and, if you do find them, they will lose their prime check mark and with that, their sales."[43]

### G.    Amazon's Price Parity Restriction Forced Third-Party Sellers to Incorporate Amazon's Fees Into Prices Across the Online Retail Marketplace

64.    As mentioned above, fees paid by third-party sellers to Amazon could equal up to 30 percent of the product price.

65.    Because Amazon's Price Parity Restriction did not permit third-party sellers to offer cheaper pricing outside of the Amazon Platform, third-party sellers were forced to bake Amazon's high fees into the prices of products sold by third-party sellers throughout the e-commerce market.

---

[42]    *Win the Amazon Buy Box and Watch Your Sales Soar in 2018*, WebProNews, https://www.webpronews.com/win-the-amazon-buy-box-and-watch-your-sales-soar-in-2018/ (last visited Nov. 1, 2022).

[43]    Molson Hart, *How Amazon's Business Practices Harm American Consumers: Why Amazon Needs a Competitor and Why Walmart Ain't It*, Medium (July 19, 2019), https://medium.com/swlh/amazon-needs-a-competitor-and-walmart-aint-it-5997977b77b2.

66.    The uniform incorporation of Amazon's fees into prices for third-party sellers' products across the U.S. online retail market occurred notwithstanding that selling on Amazon was significantly more expensive than on competing online platforms.

67.    For example, eBay's fees were 5% less on average than Amazon's, but the Price Parity Restriction prevented third-party sellers from discounting their products by 5% on eBay.

### H.    Amazon's Price Parity Restriction Suppressed Competition

68.    Amazon's Price Parity Restriction suppressed competition because third-party sellers would have otherwise sold their products for lower prices outside of the Amazon Platform.

69.    A recent article by two well-known economists explained as follows regarding the anticompetitive effects of clauses and policies like the Price Parity Restriction here:

> The potential competitive dangers from platform [Most Favored Nations ("MFN") clauses] call for antitrust scrutiny. . . . The setting we analyze has vendors selling goods or services through online platforms. The vendors set the sales price for their customers and pay the platform a transaction fee built into the price. The platform in turn requires vendors not to sell for less on other sites or platforms. This platform MFN prevents the vendor from allowing its product to be offered at a lower price on its own website (if any) or on a rival platform. As a result, entrants are excluded, allowing the platform . . . imposing the MFN to charge supra-competitive prices.[44]

70.    This economic research, as well as other studies that have reached similar conclusions,[45] is confirmed by real-world experience.

---

[44]    Jonathan Baker & Fiona Scott Morton, *Antitrust Enforcement Against Platform MFNs*, 127 Yale L. J. 2176, 2195 (2018).

[45]    Andre Boik & Kenneth S. Corts, *The Effects of Platform Most-Favored-Nation Clauses on Competition and Entry*, 59 J.L. & Econ. 105, 113-29 (2016), https://www.journals.uchicago.edu/doi/full/10.1086/686971.

71.     For example, one of Amazon's competitors told the House Antitrust Subcommittee that "as Amazon raises the costs to sellers, and requires that Amazon have the lowest prices available, for a seller to be able to make significant sales on [Amazon's] marketplace, these sellers will raise the price on competitor sites to match Amazon's price."[46]

72.     Molson Hart reported that his company would have sold toys at substantially lower prices were it not for the Price Parity Restriction:

> We designed, manufactured, imported, stored, shipped the item, and then we did customer service.  Amazon hosted some images, swiped a credit card, and got $40 [for a $150 toy].  This is the core problem.  Were it not for Amazon, this item would be $40 cheaper.  And this is how Amazon's dominance of the industry hurts consumers.[47]

73.     Bloomberg reported in September 2019 that "Walmart routinely field[ed] requests from merchants to **raise prices** on its marketplace because they worr[ied] a lower price on Walmart will jeopardize their sales on Amazon."[48]

74.     Absent Amazon's Price Parity Restriction, third-party sellers would have set lower prices for their products outside of the Amazon Platform.  Consumers who purchased the same products offered by Amazon's third-party sellers from other e-commerce platforms were injured because they purchased at prices artificially inflated by Amazon's anticompetitive Price Parity Restriction.

---

[46]     House Report, at 296.

[47]     Molson Hart, *How Amazon's Business Practices Harm American Consumers: Why Amazon Needs a Competitor and Why Walmart Ain't It*, Medium (July 19, 2019), https://medium.com/swlh/amazon-needs-a-competitor-and-walmart-aint-it-5997977b77b2.

[48]     Spencer Soper, *Amazon Is Squeezing Sellers That Offer Better Prices On Walmart*, Financial Advisor (Aug. 5, 2019), https://www.fa-mag.com/news/amazon-is-squeezing-sellers-that-offer-better-prices-on-walmart-50909.html (emphasis added).

75.     The Price Parity Restriction insulated Amazon from price competition on the Amazon Platform as a first-party seller.  Amazon was able to sell its own products on the Amazon Platform at supra-competitive prices without risking losing sales because the prices for competing products sold by third-party sellers needed to incorporate Amazon's high fees wherever those products were listed online.

76.     The Price Parity Restriction also protected Amazon's third-party seller fee-generating revenue stream by blunting competing platforms' ability to attract third-party sellers away from Amazon by offering lowering fees.

77.     There is no procompetitive rationale for the Price Parity Restriction.  And, even if a conceivable justification exists, the anticompetitive effects – the inflated prices of products sold on platforms outside of the Amazon Platform – far outweigh any purported procompetitive justification.

I.      **Amazon Abandoned the Price Parity Restriction After Concerns Were Raised That it Violated Antitrust Laws**

78.     In December 2018, U.S. Senator Richard Blumenthal (D-CT) wrote to the U.S. Department of Justice and the Federal Trade Commission urging the "immediate[]" initiation of an antitrust investigation regarding the Price Parity Restriction.[49]

79.     Senator Blumenthal explained as follows regarding the anticompetitive impacts of the Price Parity Restriction:

> Amazon's Price Parity Provision may raise prices for consumers both in the short term and in the long run. In the short term, these clauses prohibit third-party merchants who sell on online marketplaces from passing on any savings to

---

[49]     Letter from Senator Richard Blumenthal to Honorable Makan Delrahim, Assistant Attorney General U.S. Department of Justice (Dec. 19, 2018), https://www.blumenthal.senate.gov/imo/media/doc/12.19.18%20-%20DOJ%20-%20Price%20Parity.pdf.

consumers.  For example, if a competitor to Amazon charges lower commission fees to third-party merchants operating on its site, Amazon's Price Parity Provision will prohibit sellers from reducing their prices to reflect the lower cost of selling through Amazon's competitor.  In the long run, these provisions may permit Amazon to steadily raise the transaction fees it charges third-party merchants, secure in the knowledge that sellers will either have to accept the higher fees or charge all its online customers higher prices across all sales channels.[50]

80.    On the March 2019 Removal Date, Amazon discontinued its use of the Price Parity Restriction.

**J.    Amazon Quietly Withdraws the Price Parity Restriction and Replaces it, in Function, with the Fair Pricing Policy**

81.    After the March 2019 Removal Date, Amazon replaced the Price Parity Restriction with the Fair Pricing Policy.

82.    The BSA, after the Price Parity Restriction was withdrawn, required third-party sellers to agree to be bound to applicable Program Policies, including the Fair Pricing Policy. The Fair Pricing Policy provides, in relevant part:

> Amazon regularly monitors the prices of items on our marketplaces, including shipping costs, and compares them with other prices available to our customers. If we see pricing practices on a marketplace offer that harms customer trust, Amazon can remove the Buy Box, remove the offer, suspend the ship option, or, in serious or repeated cases, suspending [sic] or terminating [sic] selling privileges.

> Pricing practices that harm customer trust include, but are not limited to: . . . setting a price on a product or service [on Amazon's platform] that is significantly higher than recent prices offered on or off Amazon.[51]

---

[50]    *Id*.

[51]    Amazon Seller Central, Amazon Marketplace Fair Pricing Policy, https://sellercentral.amazon.com/gp/help/external/G5TUVJKZHUVMN77V.

83.    Consistent with the position expressed in the Fair Pricing Policy, in November 2021, in a post titled, "Clarification of Amazon's Policy on Rebates, Coupons, and other Marketing Incentives," Amazon stated as follows:

> We have recently received several seller inquiries regarding Amazon's policy on incentives that drive customer discovery and conversion—particularly through rebates, coupons, and other marketing incentives—and are offered outside Amazon as a way of driving a purchase in our store.
>
> We welcome and encourage coupons, discounts, deals, and other tools to lower prices for customers and drive incremental sales—but only when those incentives are part of the product offer made in our store. Amazon offers numerous programs to help you drive discovery of new products and increase sales through lower prices, **and we welcome sellers advertising the same pricing and discounts off-Amazon as they offer in our store**.[52]

84.    The Fair Pricing Policy mirrors the restrictions imposed by the Price Parity Restriction.

85.    Amazon monitored for violations of the Fair Pricing Policy just like it monitored for violations of the Price Parity Restriction.

86.    Amazon levied the same range of sanctions for violations of the Fair Pricing Policy as it did for violations of the Price Parity Restriction.

87.    The Fair Pricing Policy was different only in form, not substance, from the Price Parity Restriction.

---

[52]    Clarification of Amazon's Policy on Rebates, Coupons, and other Marketing Incentives, available at https://sellercentral.amazon.com/forums/t/clarification-of-amazon-s-policy-on-rebates-coupons-and-other-marketing-incentives/926094 (last visited Nov. 8, 2022) (bold added).

88.    The Fair Pricing Policy, like the Price Parity Restriction, is currently enforced by Amazon and prevents price competition by restricting the ability of third-party sellers to offer products for lower prices outside of the Amazon Platform.

### K.    State Attorneys General Have Filed Enforcement Actions Against Amazon Arising, in Part, From the Price Parity Restriction

89.    In May 2021, Karl Racine, the Attorney General for the District of Columbia, filed an enforcement action against Amazon for violating District of Columbia antitrust laws, D.C. Code sections 28-4502 and 28-4503, alleging that the Price Parity Restriction "suppressed competition from other online retail sales platforms" and "artificially raised the price of goods to consumers across the online retail sales market, because [third-party sellers] were forced to incorporate Amazon's high fees and costs into their product prices not only when selling on Amazon, but also when selling across the entire online retail sales market."[53]

90.    In September 2022, Rob Bonta, Attorney General of California, filed an enforcement action against Amazon making similar allegations as alleged herein for violating California's Cartwright Act, Cal. Bus. & Prof. Code sections 16720, *et seq*., and for unfair competition.[54]  Regarding the anticompetitive effects of Amazon's Price Parity Restriction, the Attorney General Bonta alleged:

> Without basic price competition, without different online sites trying to outdo each other with lower prices, prices artificially stabilize at levels higher than would be the case in a competitive market.  Competing sites do not offer lower prices the way they would in a competitive market, not because Amazon competed successfully,

---

[53]    Compl. ¶ 4, May 25, 2021, *District of Columbia v. Amazon.com, Inc.*, District of Columbia Superior Court Civil Action No. 2021 CA 001775B.

[54]    Compl. ¶¶ 214-22, Sept. 15, 2022, *California v. Amazon.com, Inc.*, California Superior Court, County of San Francisco, Case No. CGC-22-601826, ROA No. 1.

not because Amazon is a more efficient retailer and marketplace, but because Amazon forbids it by contract.

91.     The California Attorney General's complaint followed an extensive investigation, which found, *inter alia*, that (1) access to the Amazon Platform was critical for third-party sellers even though it was cheaper to sell products on other e-commerce platforms,[55] (2) Amazon robustly enforced the Price Parity Restriction by sending third-party sellers notifications and engaging in Buy Box suppression,[56] and (3) third-party sellers would have reduced the prices listed for their products outside of the Amazon Platform absent the Price Parity Restriction.[57]

### L.     Identity of Class Products

92.     Amazon injured Plaintiffs and members of the Classes when they overpaid for products at prices inflated by Amazon's anticompetitive conduct, namely, Amazon's Price Parity Restriction.

93.     Class Products encompass all products that were protected from price competition by virtue of Amazon's Price Parity Restriction.  To qualify as a Class Product, the product must have been sold through a retail e-commerce channel other than the Amazon Platform, and the product must have been concurrently offered by Amazon's third-party sellers on the Amazon Platform.

94.     Given that "Amazon regularly monitors the prices of items" its third-party sellers offer on the Amazon Platform, "including shipping costs, and compares them with other prices

---

[55]     *Id.* ¶¶ 10, 38-39.

[56]     *Id.* ¶¶ 132, 171.

[57]     *Id.* ¶¶ 191-98, 202.

available to our customers . . . on or off Amazon,"[58] Amazon is expected to maintain pricing data not only for products offered for sale on the Amazon Platform, but also Class Products, i.e. the same products sold through competing retail e-commerce channels.

### M.    Economic Impact of Amazon's Price Parity Restrictions

95.    During the Class Periods, Plaintiffs and members of the Classes purchased Class Products.  Because of Amazon's anticompetitive conduct, to wit, the Price Parity Restriction, Plaintiffs and members of the Classes were forced to pay more for Class Products than they would have if Amazon had permitted its third-party sellers to engage in price competition outside the Amazon Platform.

96.    Amazon therefore has caused Plaintiffs and members of the Classes to suffer overcharge damages.  The full amount of such overcharge damages will be calculated after discovery and upon proof at trial.

### N.    The Relevant Market

97.    For purposes of the antitrust injuries alleged herein for which proof of a relevant market is required, the relevant market is the market for online retail sales of new products that were delivered to a consumer's home or place of business within the respective States (the "State Retail E-Commerce Markets").

98.    Consumers in the State Retail E-Commerce Markets purchased products from: (1) retailer or brand direct-to-consumer websites, (2) online retail platforms like eBay where consumers purchased products offered by third-party sellers, and (3) online retail platforms

---

[58]    Amazon Seller Central, *Amazon Marketplace Fair Pricing Policy*, Amazon, https://sellercentral.amazon.com/gp/help/external/G5TUVJKZHUVMN77V (last visited Nov. 1, 2022).

where consumers purchased products sold by third-party sellers as well as products sold by the platform operator itself as a first-party seller, e.g., Amazon and Walmart.com.

99.     The State Retail E-Commerce Markets do not include sales of used products.

100.     Nor do the State Retail E-Commerce Markets include sales of products sold at brick-and-mortar retail stores.  Physical retail locations and online stores are not reasonably interchangeable substitutes for one another from the perspective of the consumer.  Shopping for products online allows consumers to buy an unlimited range of goods, at all hours of the day, while investing significantly less time than it takes consumers to buy those products at physical retail locations.  For these reasons, courts and the FTC have concluded that markets for products sold online versus at brick-and-mortar stores are separate.[59]

## CLASS ACTION ALLEGATIONS

101.     Plaintiffs bring this action on behalf of themselves, and as a class action under the Federal Rule of Civil Procedure 23, seeking damages pursuant to various state antitrust and consumer protection laws of the states listed below on behalf of the members of the following classes:

- Arkansas class: All persons and entities in Arkansas who, between March 12, 2014 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

---

[59]     *See Distance Learning Co. v. Maynard*, 19 Civ. 03801 (KAW), 2020 WL 2995529, at *7 (N.D. Cal. June 4, 2020) (finding that limiting the "relevant market to online traffic schools," as opposed to including "online and brick and mortar schools" was not "facially unsustainable," because an "individual may be able to use an on-line traffic school located anywhere in California, but would be limited to specific brick and mortar schools in their surrounding area."); *Thompson v. 1-800 Contacts, Inc.*, No. 2:16-CV-1183-TC, 2018 WL 2271024, at *9 (D. Utah May 17, 2018) ("Given the market characteristics set forth in the CAC and the precedent for distinct submarkets of competitors selling identical products, Plaintiffs have plausibly alleged that the relevant product market is the online retail market for contact lenses."); Complaint at 4, *In the Matter of Edgewell Personal Care Co.& Harry's Inc.*, No. 9390 (F.T.C., Feb. 2, 2020), https://www.ftc.gov/system/files/documents/cases/public_p3_complaint_-_edgewell-harrys.pdf (FTC concluded that a "relevant market may be divided by channel of sale, resulting in separate markets for brick-and-mortar sales and online sales.").

- Arizona class: All persons and entities in Arizona who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Connecticut class:  All persons and entities in Connecticut who, between October 1, 2018 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Florida class: All persons and entities in Florida who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Hawaii class: All persons and entities in Hawaii who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Illinois class: All persons and entities in Illinois who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Iowa class: All persons and entities in Iowa who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Kansas class:  All persons and entities in Kansas who, between March 12, 2016 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Maine class: All persons and entities in Maine who, between March 12, 2013 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Maryland class: All persons and entities in Maryland who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel

in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Michigan class: All persons and entities in Michigan who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Minnesota class: All persons and entities in Minnesota who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Mississippi class:  All persons and entities in Mississippi who, between March 12, 2016 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Missouri class: All persons and entities in Missouri who, between March 12, 2014 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Nebraska class: All persons and entities in Nebraska who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Nevada class: All persons and entities in Nevada who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- New Hampshire class: All persons and entities in New Hampshire who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- New Mexico class: All persons and entities in New Mexico who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- New York class: All persons and entities in New York who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- North Carolina class: All persons and entities in North Carolina who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- North Dakota class: All persons and entities in North Dakota who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Oregon class: All persons and entities in Oregon who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Rhode Island class: All persons and entities in Rhode Island who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- South Dakota class: All persons and entities in South Dakota who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Tennessee class: All persons and entities in Tennessee who, between March 12, 2016 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Utah class: All persons and entities in Utah who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Vermont class: All persons and entities in Vermont who, between March 12, 2013 and the March 2019 Removal Date, purchased through any other retail e-commerce channel

in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- West Virginia class: All persons and entities in West Virginia who, between March 12, 2015 and the March 2019 Removal Date, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

- Wisconsin class: All persons and entities in Wisconsin who, between March 12, 2013 and the March 2019 Removal Date on or after 2016, purchased through any other retail e-commerce channel in the United States other than the Amazon Platform one or more products concurrently offered for sale by Amazon's third-party sellers on the Amazon Platform.

102.    The classes identified above are collectively referred to as the "Classes" and the periods of time applicable to the Classes are collectively referred to as the "Class Periods."

103.    Specifically excluded from these classes are Amazon; the officers, directors or employees of Amazon; any entity in which Amazon has a controlling interest; and any affiliate, legal representative, heir, or assign of Amazon.  Also excluded from these classes are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

104.    Class Identity:  The Classes are readily identifiable and are ones for which records should exist.

105.    Numerosity: Plaintiffs do not know the exact number of class members because such information presently is in the exclusive control of Amazon and competing e-commerce platforms.  Plaintiffs believe that due to the nature of the trade and commerce involved, there are thousands of class members geographically dispersed throughout the United States, such that joinder of all class members is impracticable.

106.    Typicality: Plaintiffs' claims are typical of the claims of the members of the

Classes because Plaintiffs purchased Class Products from Walmart.com and Sephora.com,

competing e-commerce platforms, and therefore Plaintiffs' claims arise from the same common

course of conduct giving rise to the claims of the Classes and the relief sought is common to the

Classes.

107.    Common Questions Predominate: There are common questions of law and fact

specific to the Classes that predominate over any questions affecting individual members,

including:

(a) Whether, by reason of the Price Parity Restriction, Amazon and its third-party
sellers unlawfully contracted, combined, or conspired to unreasonably restrain
trade in violation of state antitrust and consumer protection laws;

(b) Whether Plaintiffs and members of the Classes have been damaged by
Amazon's conduct; and

(c) The amount of any damages.

108.    Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes

in that Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members

of the Classes who purchased Class Products and Plaintiffs have retained counsel competent and

experienced in the prosecution of class actions and antitrust litigation to represent themselves

and the Classes.

109.    Superiority:  A class action is superior to other available methods for the fair and

efficient adjudication of this controversy since individual joinder of all damaged members of the

classes is impractical.  Prosecution as a class action will eliminate the possibility of duplicative

litigation.  The relatively small damages suffered by individual members of the Classes

compared to the expense and burden of individual prosecution of the claims asserted in this

litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

110.    The prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Amazon.

## STATUTES OF LIMITATIONS

111.    The claims of Plaintiffs and members of the Classes are timely brought under the respective state statutes of limitations, including but not limited to because of the application of the discovery rule, the continuing violation doctrine, and the equitable tolling doctrine.

112.    Plaintiffs did not discover, nor could have discovered through reasonable diligence, that Amazon was engaged in the unlawful conduct alleged herein until shortly before this litigation was commenced.

113.    By entering into and enforcing the Price Parity Restriction, and by establishing and enforcing the Fair Pricing Policy, Amazon has engaged in a continuing violation of the state antitrust and consumer protection laws identified below. Each purchase by a member of the Classes of a Class Product at a supra-competitive price because of the unlawful conduct alleged herein restarted the applicable state statute of limitations.

114.    Amazon fraudulently concealed the Price Parity Restriction until the March 2019 Removal Date at the earliest, such that any applicable state statutes of limitations affecting the rights to recovery by Plaintiffs and members of the Classes are subject to equitable tolling.

**FIRST CAUSE OF ACTION**
**VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**ARK. CODE ANN. § 4-88-101, *ET SEQ.***
**(ON BEHALF OF THE ARKANSAS CLASS)**

115.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

116.    Arkansas Class members purchased Class Products within the State of Arkansas for personal, family, or household purposes between March 12, 2014 and the March 2019 Removal Date.

117.    Amazon entered into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, to unreasonably restrain trade and regulate or fix the prices of Class Products sold within Arkansas in violation of the Arkansas Deceptive Trade Practices Act.

118.    Amazon's conduct was unfair, unconscionable, or deceptive, and substantially affected Arkansas's trade and commerce.

119.    Amazon's conduct was willful.

120.    As a direct and proximate result of Amazon's conduct, members of the Arkansas Class were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

121.    Arkansas Class members have standing to sue as individuals harmed, directly or indirectly, by Amazon's conduct. *See In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1072 (S.D. Cal. 2017).

122.    By reason of the foregoing, members of the Arkansas Class are entitled to seek all forms of relief available under Ark. Code Ann. § 4-88-113, including actual damages and reasonable attorney's fees.

## SECOND CAUSE OF ACTION
## VIOLATION OF ARIZONA'S UNIFORM STATE ANTITRUST ACT
## ARIZ. REV. STAT. §§ 44-1401, *ET SEQ.*
## (ON BEHALF OF THE ARIZONA CLASS)

123.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

124.    Amazon entered into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, in restraint of trade or commerce within Arizona in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*

125.    Amazon's violations of Arizona law were flagrant.

126.    Arizona Class Members purchased Class Products within the State of Arizona between March 12, 2015 and the March 2019 Removal Date.

127.    Amazon's unlawful conduct substantially affected Arizona's trade and commerce as follows: (a) competition in the Arizona retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Arizona; (c) Arizona Class members were deprived of free and open competition; and (d) Arizona Class members paid artificially inflated prices for Class Products purchased in Arizona.

37

128.    As a direct and proximate result of Amazon's conduct, members of the Arizona Class were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

129.    Arizona Class members have standing to sue as persons injured by Amazon's conduct, directly or indirectly, under Ariz. Rev. Stat. §§ 44-1408.  *See Bunker's Glass Co. v. Pilkington PLC*, 206 Ariz. 9, 75 P.3d 99, 102 (2003).

130.    By reason of the foregoing, members of the Arizona Class are entitled to seek all forms of relief available under Arizona Revised Statute § 44-1408, including actual damages, treble damages for a flagrant violation, and reasonable attorneys' fees.

131.    In accordance with the requirements of Ariz. Rev. Stat. Ann. § 44-1415(A), a copy of this complaint was served on the Arizona Attorney General contemporaneously with the filing of this Complaint in this Court.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE CONNECTICUT ANTITRUST ACT**
**CONN. GEN. STAT. ANN. §§ 35-24, *ET SEQ.***
**(ON BEHALF OF THE CONNECTICUT CLASS)**

132.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

133.    Amazon entered into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, to unreasonably restrain trade or commerce within Connecticut, in violation of the Connecticut Antitrust Act, Conn. Gen. Stat. Ann. §§ 35-24, *et seq.*

134.    Connecticut Class Members purchased Class Products within the State of Connecticut between October 1, 2018 and the March 2019 Removal Date.

135.    Amazon's unlawful conduct substantially affected Connecticut's trade and commerce as follows: (a) competition in the Connecticut retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Connecticut; (c) Connecticut Class members were deprived of free and open competition; and (d) Connecticut Class members paid artificially inflated prices for Class Products purchased in Connecticut.

136.    As a direct and proximate result of Amazon's conduct, members of the Connecticut Class were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

137.    Connecticut Class members have standing to sue as individuals harmed, directly or indirectly, by Amazon's actions under Conn. Gen. Stat. Ann. § 35-46a.

138.    By reason of the foregoing, members of the Connecticut Class are entitled to seek all forms of relief available under Conn. Gen. Stat. Ann. § 35-35, including treble damages and reasonable attorney's fees and costs.

139.    In accordance with the requirements of Conn. Gen. Stat. Ann. § 35-37, a copy of this complaint was provided to the Connecticut Attorney General contemporaneously with the filing of this Complaint in this Court.

## FOURTH CAUSE OF ACTION
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### FLA. STAT. §§ 501.201(2), *ET SEQ.*
### (ON BEHALF OF THE FLORIDA CLASS)

140.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

141.    The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, *et seq.* (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" under Florida Stat. § 501.204(1).

142.    Amazon engaged in unfair methods of competition and unfair or deceptive acts or practices between March 12, 2015 and the March 2019 Removal Date by entering into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, to unreasonably restrain trade and regulate or fix the prices of Class Products sold within Florida in violation of the FDUTPA.

143.    Florida Class members purchased Class Products within the State of Florida between March 12, 2015 and the March 2019 Removal Date.

144.    Amazon's unlawful conduct substantially affected Florida's trade and commerce as follows: (a) competition in the Florida retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Florida; (c) Florida Class members were deprived of free and open competition; and (d) Florida Class members paid artificially inflated prices for Class Products purchased in Florida.

145.    As a direct and proximate result of Amazon's conduct alleged in this Complaint, Florida Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

146.    Florida Class members have standing to sue under the FDUTPA as individuals aggrieved by Amazon's violation of the FDUTPA under Fla. Stat. § 501.211(a).

147.    By reason of the foregoing, Florida Class members are entitled to seek all forms of relief under Florida Stat. § 501.211, including actual damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE HAWAII'S UNFAIR COMPETITION LAWS**
**HAW. REV. STAT. ANN. §§ 480-1, *ET SEQ*.**
**(ON BEHALF OF HAWAII CLASS)**

148.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

149.    Amazon entered into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, to unreasonably restrain trade or commerce within Hawaii.

150.    Amazon has engaged in unfair competition, or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

151.    Hawaii Class members purchased Class Products within the State of Hawaii between March 12, 2015 and the March 2019 Removal Date.

152.    Amazon's unlawful conduct substantially affected Hawaii's trade and commerce as follows: (a) competition in the Hawaii retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Hawaii; (c) Hawaii Class members were deprived of free and open competition; and (d) Hawaii Class members paid artificially inflated prices for Class Products purchased in Hawaii.

153.    As a direct and proximate result of Amazon's conduct, Hawaii Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

154.    Hawaii Class members have standing to sue under Haw. Rev. Stat. Ann. § 480-13(a)(1).

155.    By reason of the foregoing, Hawaii Class members are entitled to seek all forms of relief under Haw. Rev. Stat. Ann. § 480-13, including compensatory damages, costs of suit, and reasonable attorney's fees.

156.    A copy of this complaint was served on the Hawaii Attorney General contemporaneously with the filing of this Complaint in this Court.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE ILLINOIS ANTITRUST ACT
## 740 ILL. COMP. STAT. ANN. 10/3(1), *ET SEQ*.
## (ON BEHALF OF THE ILLINOIS CLASS)

157.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

158.    Amazon entered into a contract, combination, or conspiracy between two or more persons, including persons that would have been competitors but for their prior agreement, namely, the Price Parity Restriction, to unreasonably restrain trade or commerce within Illinois, in violation of 740 ILCS 10/1, *et seq*.

159.    Illinois Class members purchased Class Products within the State of Illinois between March 12, 2015 and the March 2019 Removal Date.

160.    Amazon's unlawful conduct substantially affected Illinois's trade and commerce as follows: (a) competition in the Illinois retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Illinois; (c) Illinois Class members were deprived of free and open competition; and (d) Illinois Class members paid artificially inflated prices for Class Products purchased in Illinois.

161.    As a direct and proximate result of Amazon's conduct, Illinois Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

162.    Illinois Class members have standing to sue as any person who, directly or indirectly, was injured by Amazon's conduct has standing to maintain an action for damages under 740 ILCS 10/7(2).

163.    By reason of the foregoing, Illinois Class members are entitled to all forms of relief, including actual damages, treble damages for a willful violation, reasonable attorneys' fees, and costs.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILL. COMP. STAT. ANN. 505/10A, *ET SEQ.*
### (ON BEHALF OF THE ILLINOIS CLASS)

164.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

165.    Amazon has engaged in unfair, unconscionable or deceptive acts or practices by entering into contracts or combinations between two or more persons in restraint of trade or commerce in Illinois, in violation of 815 Ill. Comp. Stat. Ann. 505/2, *et seq.*

166.    Amazon established or maintained its unfair or unlawful contracts or combinations for the purpose of excluding competition or controlling or maintaining prices for Class Products within Illinois.

167.    Amazon's unfair, deceptive, or illegal conduct substantially affected Illinois's trade and commerce as follows: (a) competition in the Illinois retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high

levels throughout Illinois; (c) Illinois Class members were deprived of free and open

competition; and (d) Illinois Class members paid artificially inflated prices for Class Products

purchased in Illinois.

168.    As a direct and proximate result of Amazon's conduct, Illinois Class members

were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

169.    By reason of the foregoing, Illinois Class members are entitled to all forms of

relief under 815 Ill. Comp. Stat. Ann. 505/2, *et seq*.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE IOWA COMPETITION LAW**
**IOWA CODE §§ 553.1, *ET SEQ*.**
**(ON BEHALF OF THE IOWA CLASS)**

170.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

allegation set forth in the preceding paragraphs of this Complaint.

171.    Amazon entered into a contract, combination, or conspiracy between two or more

persons, namely, the Price Parity Restriction, to unreasonably restrain trade or commerce within

Iowa in violation of Iowa Code §§ 553.1, *et seq*.

172.    Iowa Class Members purchased Class Products within the State of Iowa between

March 12, 2015 and the March 2019 Removal Date.

173.    Amazon's unlawful conduct substantially affected Iowa's trade and commerce as

follows: (a) competition in the Iowa retail e-commerce market was restrained, suppressed, or

eliminated; (b) prices of Class Products were raised to artificially high levels throughout Iowa;

(c) Iowa Class members were deprived of free and open competition; and (d) Iowa Class

members paid artificially inflated prices for Class Products purchased in Iowa.

174.    As a direct and proximate result of Amazon's conduct, Iowa Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

175.    Iowa Class members have standing to sue as individuals who have been injured, directly or indirectly, by Amazon's conduct under Iowa Code Ann. § 553.12.

176.    By reason of the foregoing, Iowa Class members are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorneys' fees and costs, and injunctive relief.

### NINTH CAUSE OF ACTION
### VIOLATION OF THE KANSAS RESTRAINT OF TRADE ACT
### KAN. STAT. ANN. §§ 50-101, *ET SEQ.*
### (ON BEHALF OF THE KANSAS CLASS)

177.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

178.    Amazon combined capital, skill, or acts, including entering into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, for the purposes of creating restrictions in trade or commerce of Class Products, increasing the price of Class Products, or preventing competition in the sale of Class Products, in a manner that established the price of Class Products and precluded free and unrestricted competition among themselves in the sale of Class Products in the Kansas retail e-commerce market, in violation of Kan. Stat. Ann. §§ 50-101, *et seq*.

179.    Kansas Class Members purchased Class Products within the State of Kansas between March 12, 2016 and the March 2019 Removal Date.

180.    Amazon's unlawful conduct substantially affected Kansas's trade and commerce as follows: (a) competition in the Kansas retail e-commerce market was restrained, suppressed,

or eliminated; (b) prices of Class Products were raised to artificially high levels throughout

Kansas; (c) Kansas Class members were deprived of free and open competition; and (d) Kansas

Class members paid artificially inflated prices for Class Products purchased in Kansas.

181.    As a direct and proximate result of Amazon's conduct, Kansas Class members

were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

182.    Kansas Class members have standing to sue as individuals harmed, directly or

indirectly, by Amazon's conduct under Kan. Stat. Ann § 50-161(b).

183.    By reason of the foregoing, Kansas Class members are entitled to all forms of

relief, including actual damages, reasonable attorneys' fees and costs, and injunctive relief.

## TENTH CAUSE OF ACTION
## VIOLATION OF THE MAINE'S ANTITRUST STATUTE
## ME. REV. STAT. ANN. TIT. 10 §§ 1101, *ET SEQ.*
## (ON BEHALF OF THE MAINE CLASS)

184.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

allegation set forth in the preceding paragraphs of this Complaint.

185.    Amazon contracted, combined, or conspired in restraint of trade or commerce

within Maine and fixed the prices of Class Products within the intrastate commerce of Maine by

entering into and enforcing the Price Parity Restriction, in violation of Me. Rev. Stat. Ann. Tit.

10, §§ 1101, *et seq.*

186.    Maine Class members purchased Class Products within the State of Maine

between March 12, 2013 and the March 2019 Removal Date.

187.    Amazon's unlawful conduct substantially affected Maine's trade and commerce

as follows: (a) competition in the Maine retail e-commerce market was restrained, suppressed, or

eliminated; (b) prices of Class Products were raised to artificially high levels throughout Maine;

46

(c) Maine Class members were deprived of free and open competition; and (d) Maine Class members paid artificially inflated prices for Class Products purchased in Maine.

188.    As a direct and proximate result of Amazon's conduct, Maine Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

189.    Maine Class members have standing to sue as individuals harmed, directly or indirectly, by Amazon's conduct under Me. Rev. Stat. Ann. Tit. 10, § 1104(1).

190.    By reason of the foregoing, members of the Maine Class are entitled to all forms of relief, including treble of damages sustained, reasonable experts' fees, and reasonable attorneys' fees.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF MARYLAND'S ANTITRUST STATUTE
## MD. CODE ANN., COM. LAW §§ 11-201, *ET SEQ.*
## (ON BEHALF OF THE MARYLAND CLASS)

191.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

192.    Amazon entered into a contract, combination, or conspiracy with one or more persons, namely, the Price Parity Restriction, to unreasonably restrain trade or commerce in the Maryland retail e-commerce market, in violation of Md. Code Ann., Com. Law §§ 11-201, *et seq*.

193.    Maryland Class members purchased Class Products within the State of Maryland between March 12, 2015 and the March 2019 Removal Date.

194.    Amazon's unlawful conduct substantially affected Maryland's trade and commerce as follows: (a) competition in the Maryland retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels

throughout Maryland; (c) Maryland Class members were deprived of free and open competition; and (d) Maryland Class members paid artificially inflated prices for Class Products purchased in Maryland.

195.    As a direct and proximate result of Amazon's conduct, members of the Maryland Class were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

196.    Maryland Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under Md. Com. Law Code Ann.§ 11-209(b)(2)(i).

197.    By reason of the foregoing, members of the Maryland Class are entitled to seek all forms of relief available under Md. Code Ann., Com. Law § 11-209, including an injunction, actual damages, treble damages, costs, and reasonable attorney's fees.

**TWELFTH CAUSE OF ACTION**
**VIOLATION OF THE MICHIGAN ANTITRUST REFORM ACT**
**MICH. COMP. LAWS §§ 445.771, *ET SEQ.***
**(ON BEHALF OF THE MICHIGAN CLASS)**

198.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

199.    Amazon entered into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, in restraint of trade or commerce in the Michigan retail e-commerce market, in violation of Mich. Comp. Laws §§ 445.772, *et seq.*

200.    Amazon's violations of Michigan law were flagrant.

201.    Michigan Class members purchased Class Products within the State of Michigan March 12, 2015 and the March 2019 Removal Date.

202.    Amazon's unlawful conduct substantially affected Michigan's trade and commerce as follows: (a) competition in the Michigan retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Michigan; (c) Michigan Class members were deprived of free and open competition; and (d) Michigan Class members paid artificially inflated prices for Class Products purchased in Michigan.

203.    As a direct and proximate result of Amazon's conduct, Michigan Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

204.    Michigan Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under Mich. Comp. Laws § 452.778(2).

205.    By reason of the foregoing, members of the Michigan Class are entitled to seek all forms of relief available under Mich. Comp. Laws § 452.778(2), including an actual damages, interest, treble damages, costs, and reasonable attorney's fees.

**THIRTEENTH CAUSE OF ACTION
VIOLATION OF THE MINNESOTA ANTITRUST LAW
MINN. STAT. §§ 325D.49, *ET SEQ.*
(ON BEHALF OF THE MINNESOTA CLASS)**

206.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

207.    Amazon entered into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, to unreasonably restrain trade or commerce in the Minnesota retail e-commerce market, in violation of Minn. Stat. Ann. §§ 325D.50, *et seq.*

208.     Minnesota Class Members purchased Class Products within the State of Minnesota between March 12, 2015 and the March 2019 Removal Date.

209.     Amazon's unlawful conduct substantially affected Minnesota's trade and commerce as follows: (a) competition in the Minnesota retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Minnesota; (c) Minnesota Class members were deprived of free and open competition; and (d) Minnesota Class members paid artificially inflated prices for Class Products purchased in Minnesota.

210.     As a direct and proximate result of Amazon's conduct, Minnesota Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

211.     Minnesota Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under Minn. Stat. § 325D.56.

212.     By reason of the foregoing, members of the Minnesota Class are entitled to seek all forms of relief available under Minn. Stat. § 325D.57, including treble damages, costs and disbursements, reasonable attorneys' fees, and injunctive relief.

**FOURTEENTH CAUSE OF ACTION**
**VIOLATION OF THE MISSISSIPPI ANTITRUST STATUTE**
**MISS. CODE ANN. §§ 74-21-1, ET SEQ.**
**(ON BEHALF OF THE MISSISSIPPI CLASS)**

213.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

214.     Amazon created, entered into, and became a member of a trust or combine in a manner inimical to public welfare, with the effect of restraining trade, increasing the price of

Class Products, and hindering competition in the sale of Class Products in Mississippi, in violation of Miss. Code Ann. §§ 75-21-1, et seq.

215.    Mississippi Class Members purchased Class Products within the State of Mississippi between March 12, 2016 and the March 2019 Removal Date.

216.    Amazon's unlawful conduct substantially affected Mississippi's trade and commerce as follows: (a) competition in the Mississippi retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Mississippi; (c) Mississippi Class members were deprived of free and open competition; and (d) Mississippi Class members paid artificially inflated prices for Class Products purchased in Mississippi.

217.    As a direct and proximate result of Amazon's conduct, Mississippi Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

218.    Mississippi Class members have standing to sue as persons who have been injured, directly or indirectly, by Amazon's conduct under Miss. Code Ann. § 75-21-9.

219.    By reason of the foregoing, members of the Mississippi Class are entitled to all forms of relief available under Miss. Code Ann. § 75-21-9, including actual damages and a penalty of $500 per instance of injury.

### FIFTEENTH CAUSE OF ACTION
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT,
### MO. ANN. STAT. §§ 407.010, *ET SEQ.*
### (ON BEHALF OF THE MISSOURI CLASS)

220.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

221.    Amazon used or employed unfair business practices in connection with the sale of Class Products in or from the state of Missouri.  Specifically, Amazon contracted, combined, or conspired in restraint of trade or commerce within Missouri and fixed the prices of Class Products within the intrastate commerce of Missouri, in violation of Mo. Ann. Stat. §§ 407.010, *et seq.*

222.    Missouri Class Members purchased Class Products in or from the State of Missouri between March 12, 2014 and the March 2019 Removal Date.

223.    Amazon's unlawful conduct substantially affected Missouri's trade and commerce as follows: (a) competition in the Missouri retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Missouri; (c) Missouri Class members were deprived of free and open competition; and (d) Missouri Class members paid artificially inflated prices for Class Products purchased in Missouri.

224.    Under Missouri law, Missouri Class members have standing to maintain an action under the MMPA because they acted as a reasonable consumer would in light of all circumstances, Amazon's unfair business practices would cause a reasonable person to enter into the transactions that resulted in the Missouri Class members' damages, and Missouri Class members have been injured in an amount that may be calculated with a reasonable degree of certainty.

225.    As a direct and proximate result of Amazon's conduct, Missouri Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

226. By reason of the foregoing, members of the Missouri Class are entitled to all forms of relief, including actual damages, punitive damages, reasonable attorneys' fees, and injunctive relief.

**SIXTEENTH CAUSE OF ACTION**
**VIOLATION OF THE NEBRASKA JUNKIN ACT,**
**NEB. REV. STAT. §§ 59-801, *ET SEQ.***
**(ON BEHALF OF THE NEBRASKA CLASS)**

227. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

228. Amazon contracted, combined, or conspired in restraint of trade or commerce, by entering into and enforcing the Price Parity Restriction, within the intrastate commerce of Nebraska, in violation of Neb. Rev. Stat. §§ 59-801, *et seq.*

229. Nebraska Class Members purchased Class Products within the State of Nebraska between March 12, 2015 and the March 2019 Removal Date.

230. Amazon's unlawful conduct substantially affected Nebraska's trade and commerce as follows: (a) competition in the Nebraska retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Nebraska; (c) Nebraska Class members were deprived of free and open competition; and (d) Nebraska Class members paid artificially inflated prices for Class Products purchased in Nebraska.

231. As a direct and proximate result of Amazon's conduct, Nebraska Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

232.     Nebraska Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under Neb. Rev. Stat. § 59-821.

233.     By reason of the foregoing, members of the Nebraska Class are entitled to seek all forms of relief available under Neb. Rev. Stat. Ann.§§ 59-819 and 59-821, including actual damages, as well as reasonable attorneys' fees and costs.

## SEVENTEENTH CAUSE OF ACTION
### VIOLATION OF THE NEVADA UNFAIR TRADE PRACTICES ACT, NEV. REV. STAT. §§ 598A.010, *ET SEQ.* (ON BEHALF OF THE NEVADA CLASS)

234.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

*235.*     Amazon entered into contract, combination or conspiracy, namely, the Price Parity Restriction, in restraint of trade by fixing prices for Class Products in Nevada in violation of Nev. Rev. Stat. Ann. §§ 598A.060, *et seq.*

236.     Nevada Class Members purchased Class Products within the State of Nevada between March 12, 2015 and the March 2019 Removal Date.

237.     Amazon's unlawful conduct substantially affected Nevada's trade and commerce as follows: (a) competition in the Nevada retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Nevada; (c) Nevada Class members were deprived of free and open competition; and (d) Nevada Class members paid artificially inflated prices for Class Products purchased in Nevada.

238.     As a direct and proximate result of Amazon's conduct, Nevada Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

54

239.     Nevada Class members have standing to sue as individuals directly or indirectly harmed by Amazon's conduct under Nev. Rev. Stat. Ann. § 598A.210(2).

240.     By reason of the foregoing, members of the Nevada Class are entitled to all forms of relief under Nev. Rev. Stat. § 598A.210, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

241.     In accordance with the requirements of Nev. Rev. Stat. Ann. § 598A.210(3), notice of this action was mailed to the Nevada Attorney General by Plaintiff.

**EIGHTEENTH CAUSE OF ACTION**
**VIOLATION OF NEW HAMPSHIRE'S ANTITRUST STATUTE,**
**N.H. REV. STAT. ANN. TIT. XXXI, §§ 356, *ET SEQ.***
**(ON BEHALF OF THE NEW HAMPSHIRE CLASS)**

242.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

243.     Amazon entered into a contract, combination, or conspiracy, namely, the Price Parity Restriction, with the purpose or effect of fixing, controlling, or maintaining prices, rates, quotations or fees in any part of trade or commerce in New Hampshire, in violation of N.H. Rev. Stat. Ann. §§ 356:1, *et seq.*

244.     Amazon's violations of New Hampshire law were flagrant.

245.     New Hampshire Class members purchased Class Products within the State of New Hampshire between March 12, 2015 and the March 2019 Removal Date.

246.     Amazon's unlawful conduct substantially affected New Hampshire's trade and commerce as follows: (a) competition in the New Hampshire retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout New Hampshire; (c) New Hampshire Class members were deprived of free

and open competition; and (d) New Hampshire Class members paid artificially inflated prices for Class Products purchased in New Hampshire.

247.    New Hampshire Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under N.H. Rev. Stat. Ann. § 356:11(II).

248.    As a direct and proximate result of Amazon's conduct, New Hampshire Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

249.    By reason of the foregoing, members of the New Hampshire Class are entitled to all forms of relief available under N.H. Rev. Stat. §§ 356:11, including actual damages sustained, treble damages for willful or flagrant violations, reasonable attorneys' fees, and costs of suit.

## NINETEENTH CAUSE OF ACTION
## VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
## N.H. REV. STAT. ANN. TIT. XXXI, §§ 358-A, *ET SEQ.*
## (ON BEHALF OF THE NEW HAMPSHIRE CLASS)

250.    Plaintiffs incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

251.    Amazon has engaged in unfair competition or unfair, unconscionable or deceptive acts or practices in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq*.

252.    Amazon marketed, sold, or distributed Class Products in New Hampshire, and Amazon's illegal conduct substantially affected New Hampshire commerce and consumers.

253.    Amazon's conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

56

254.    Amazon's conduct was willful and knowing.

255.    Amazon's unfair and unlawful conduct had the following effects: (a) competition in the New Hampshire retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout New Hampshire; (c) New Hampshire Class members were deprived of free and open competition; and (d) New Hampshire Class members paid artificially inflated prices for Class Products purchased in New Hampshire.

256.    As a direct and proximate result of Amazon's unlawful conduct, members of the New Hampshire Class have been injured.

257.    Amazon has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. §§ 358-A:1, et seq., and, accordingly, seek all relief available under that statute, including damages, up to treble damages, costs of suit, and reasonable attorney's fees.

## TWENTIETH CAUSE OF ACTION
### VIOLATION OF THE NEW MEXICO ANTITRUST ACT, N.M. STAT. ANN. §§ 57-1-1, *ET SEQ.* (ON BEHALF OF THE NEW MEXICO CLASS)

258.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

259.    Amazon entered into a contract, combination, or conspiracy, namely, the Price Parity Restriction, in restraint of trade or commerce in New Mexico, in violation of N.M. Stat. Ann. §§ 57-1-1, *et seq.*

260.    New Mexico Class members purchased Class Products within the State of New Mexico between March 12, 2015 and the March 2019 Removal Date.

261.    Amazon's unlawful conduct substantially affected New Mexico's trade and commerce as follows: (a) competition in the New Mexico retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout New Mexico; (c) New Mexico Class members were deprived of free and open competition; and (d) New Mexico Class members paid artificially inflated prices for Class Products purchased in New Mexico.

262.    New Mexico Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under N.M. Stat. Ann. § 57-1-3.

263.    As a direct and proximate result of Amazon's conduct, New Mexico Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

264.    By reason of the foregoing, members of the New Mexico Class are entitled to all forms of relief under N.M. Stat. Ann. § 57-1-3, including actual damages, treble damages, reasonable attorneys' fees, and costs.

### TWENTY-FIRST CAUSE OF ACTION
### VIOLATION OF SECTION 340 OF THE NEW YORK GENERAL BUSINESS LAW
### (ON BEHALF OF THE NEW YORK CLASS)

265.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

266.    Amazon entered into a contract, combination, or conspiracy, namely, the Price Parity Restriction, whereby it restrained competition for Class Products in New York and the

free exercise of activity in the conduct of business, trade, or commerce in New York, in violation of N.Y. Gen. Bus. Law §§ 340, *et seq.*

267.     Plaintiffs and New York Class members purchased Class Products within the State of New York between March 12, 2015 and the March 2019 Removal Date.

268.     Amazon's unlawful conduct substantially affected New York's trade and commerce as follows: (a) competition in the New York retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout New York; (c) New York Class members were deprived of free and open competition; and (d) New York Class members paid artificially inflated prices for Class Products purchased in New York.

269.     As a direct and proximate result of Amazon's conduct, Plaintiffs and New York Class Members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

270.     Plaintiffs and New York Class members have standing to sue as individuals who have sustained damages as a result of Amazon's conduct under N.Y. Gen. Bus. Law § 340(6).

271.     By reason of the foregoing, Plaintiffs and members of the New York Class are entitled to all forms of relief available under N.Y. Gen. Bus. Law § 340, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorneys' fees.

272.     In accordance with the requirements of N.Y. Gen. Bus. Law § 340(5), Plaintiffs provided a copy of this Complaint to the New York Attorney General contemporaneously with the filing of this Complaint in this Court.

**TWENTY-SECOND CAUSE OF ACTION**
**VIOLATION OF THE NORTH CAROLINA GENERAL STATUTES**
**N.C. GEN. STAT. §§ 75-1, *ET SEQ*.**
**(ON BEHALF OF THE NORTH CAROLINA CLASS)**

273.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

274.    Amazon entered into a contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, namely, the Price Parity Restriction, a substantial part of which occurred within North Carolina, in violation of N.C. Gen. Stat. Ann. §§ 75-1, *et seq*.

275.    North Carolina Class members purchased Class Products within the State of North Carolina between March 12, 2015 and the March 2019 Removal Date.

276.    Amazon's unlawful conduct substantially affected North Carolina's trade and commerce as follows: (a) competition in the North Carolina retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout North Carolina; (c) North Carolina Class members were deprived of free and open competition; and (d) North Carolina Class members paid artificially inflated prices for Class Products purchased in North Carolina.

277.    As a direct and proximate result of Amazon's conduct, North Carolina Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

278.    North Carolina Class members have standing to sue as individuals who have been injured, directly or indirectly, by Amazon's conduct under N.C. Gen. Stat. Ann. § 75-16. *See Hyde v. Abbott Lab'ys, Inc.*, 123 N.C. App. 572, 473 S.E.2d 680 (1996).

279.    By reason of the foregoing, North Carolina Class members are entitled to seek all forms of relief available under N.C. Gen. Stat. §§ 75-1, *et seq.*, including treble damages.

**TWENTY-THIRD CAUSE OF ACTION**
**VIOLATION OF THE NORTH DAKOTA UNIFORM STATE ANTITRUST ACT**
**N.D. CENT. CODE §§ 51-08.1, *ET SEQ.***
**(ON BEHALF OF THE NORTH DAKOTA CLASS)**

280.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

281.    Amazon entered into a contract, combination, or conspiracy between two or more people, namely, the Price Parity Restriction, in restraint of trade or commerce in North Dakota, in violation of N.D. Cent. Code §§ 51-08.1, *et seq.*

282.    Amazon's violations of North Dakota law were flagrant.

283.    North Dakota Class members purchased Class Products within the State of North Dakota between March 12, 2015 and the March 2019 Removal Date.

284.    Amazon's unlawful conduct substantially affected North Dakota's trade and commerce as follows: (a) competition in the North Dakota retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout North Dakota; (c) North Dakota Class members were deprived of free and open competition; and (d) North Dakota Class members paid artificially inflated prices for Class Products purchased in North Dakota.

285.    As a direct and proximate result of Amazon's conduct, North Dakota Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

286.    North Dakota Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under N.D. Cent. Code Ann. § 51-08.1-08.

287.    By reason of the foregoing, members of the North Dakota Class are entitled to all forms of relief under N.D. Cent. Code Ann. § 51-08.1-08, including actual damages, treble damages for flagrant violations, costs, reasonable attorneys' fees, and injunctive or other equitable relief.

**TWENTY-FOURTH CAUSE OF ACTION**
**VIOLATION OF OREGON'S ANTITRUST ACT**
**OR. REV. STAT. ANN. §§ 646.715, *ET SEQ.***
**(ON BEHALF OF THE OREGON CLASS)**

288.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

289.    Amazon entered into a contract, combination, or conspiracy, namely, the Price Parity Restriction, in restraint of intrastate trade or commerce in Oregon in violation of Or. Rev. Stat. §§ 646.715, *et seq.*

290.    Oregon Class Members purchased Class Products within the State of Oregon between March 12, 2015 and the March 2019 Removal Date.

291.    Amazon's unlawful conduct substantially affected Oregon's trade and commerce as follows: (a) competition in the Oregon retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Oregon; (c) Oregon Class members were deprived of free and open competition; and (d) Oregon Class members paid artificially inflated prices for Class Products purchased in Oregon.

292.    Oregon Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under Or. Rev. Stat.§ 646.780(l)(a).

293.    As a direct and proximate result of Amazon's conduct, members of the Oregon Class were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

294.    By reason of the foregoing, members of the Oregon Class are entitled to seek all forms of relief available under Or. Rev. Stat. Ann. § 646.770 and § 646.780, including treble damages, cost of suit, investigative costs, reasonable experts' fees, reasonable attorneys' fees, and equitable relief.

### TWENTY-FIFTH CAUSE OF ACTION
### VIOLATION OF THE RHODE ISLAND ANTITRUST ACT
### R.I. *GEN LAWS* §§ 6-36-1, *ET SEQ.*
### (ON BEHALF OF THE RHODE ISLAND CLASS)

295.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

296.    Amazon contracted, combined, and conspired in restraint of trade or commerce of Class Products, a substantial part of which occurred within Rhode Island, and entered into a contract for the fixing of prices charged for the Class Products in Rhode Island where the effect was to lessen competition, in violation of R.I. Gen. Laws §§ 6-36-1, *et seq*.

297.    Rhode Island Class members purchased Class Products within the State of Rhode Island between March 12, 2015 and the March 2019 Removal Date.

298.    Amazon's unlawful conduct substantially affected Rhode Island's trade and commerce as follows: (a) competition in the Rhode Island retail e-commerce market was

restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Rhode Island; (c) Rhode Island Class members were deprived of free and open competition; and (d) Rhode Island Class members paid artificially inflated prices for Class Products purchased in Rhode Island.

299.    As a direct and proximate result of Amazon's conduct, Rhode Island Class Members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

300.    Rhode Island Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under R.I. Gen. Laws § 6-36-11(a).

301.    By reason of the foregoing, members of the Rhode Island Class are entitled to all forms of relief, including treble damages, reasonable costs, reasonable attorneys' fees, and injunctive relief.

302.    In accordance with the requirements of R.I. Gen. Laws Ann. § 6-36-21, Plaintiff mailed a notice of this action to the Rhode Island Attorney General.

**TWENTY-SIXTH CAUSE OF ACTION**
**VIOLATION OF SOUTH DAKOTA'S ANTITRUST ACT**
**S.D. CODIFIED LAWS § 37-1-3.1, *ET SEQ.***
**(ON BEHALF OF THE SOUTH DAKOTA CLASS)**

303.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

304.    Amazon entered into a contract, combination, or conspiracy between two or more persons, namely, the Price Parity Restriction, in restraint of trade or commerce within South Dakota in violation of S.D. Codified Laws §§ 37-1-3.1, *et seq.*

305.    South Dakota Class members purchased Class Products within the State of South Dakota between March 12, 2015 and the March 2019 Removal Date.

306.    Amazon's unlawful conduct substantially affected South Dakota's trade and commerce as follows: (a) competition in the South Dakota retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout South Dakota; (c) South Dakota Class members were deprived of free and open competition; and (d) South Dakota Class members paid artificially inflated prices for Class Products purchased in South Dakota.

307.    As a direct and proximate result of Amazon's conduct, members of the South Dakota Class were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

308.    South Dakota Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct under S.D. Codified Laws§ 37-1-33.

309.    By reason of the foregoing, members of the South Dakota Class are entitled to seek all forms of relief available under S.D. Codified Laws § 37-1-14.3, including injunctive relief, damages sustained, taxable costs, reasonable attorneys' fees, and treble damages.

**TWENTY-SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE TENNESSEE TRADE PRACTICES ACT,**
**TENN. CODE, §§ 47-25-101, *ET SEQ.***
**(ON BEHALF OF THE TENNESSEE CLASS)**

310.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

311.    Amazon entered into an arrangement, contract, agreement, or combination with one or more persons, namely, the Price Parity Restriction, to lessen, or which tended to lessen, full and free competition of the sale of Class Products in Tennessee or which tended to control the price of Class Products to the consumer in Tennessee, in violation of Tenn. Code, §§ 47-25-101, *et seq.*

312.    Amazon's unlawful conduct substantially affected Tennessee's trade and commerce as follows: (a) competition in the Tennessee retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Tennessee; (c) Tennessee Class members were deprived of free and open competition; and (d) Tennessee Class members paid artificially inflated prices for Class Products purchased in Tennessee.

313.    Tennessee Class members purchased Class Products within the State of Tennessee between March 12, 2016 and the March 2019 Removal Date.

314.    As a direct and proximate result of Amazon's conduct, Tennessee Class Members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

*315.*    Tennessee Class members have standing to sue as individuals whose businesses or property have been injured, directly or indirectly, by Amazon's conduct.  *See Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 515-17 (Tenn. 2005).

316.    By reason of the foregoing, members of the Tennessee Class are entitled to all forms of relief available under Tenn. Code Ann. § 47-25-106, including the full consideration or sum paid by the injured person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

66

**TWENTY-EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE UTAH ANTITRUST ACT**
**UTAH CODE ANN. §§ 76-10-911, *ET SEQ.***
**(ON BEHALF OF THE UTAH CLASS)**

317.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

318.     Amazon contracted, combined or conspired in restraint of trade or commerce of in Utah, by entering into and enforcing the Price Parity Restriction, in violation of Utah Code Ann. §§ 76-10-3101, *et seq.*

319.     Utah Class Members purchased Class Products within the State of Utah between March 12, 2015 and the March 2019 Removal Date.

320.     Amazon's unlawful conduct substantially affected Utah's trade and commerce as follows: (a) competition in the Utah retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Utah; (c) Utah Class members were deprived of free and open competition; and (d) Utah Class members paid artificially inflated prices for Class Products purchased in Utah.

321.     As a direct and proximate result of Amazon's conduct, Utah Class Members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

322.     Utah Class members, who are either Utah residents or Utah citizens, have standing to sue as individuals who have been injured, directly or indirectly, by Amazon's conduct under Utah Code Ann. § 76-10-3109(1)(a).

323.     By reason of the foregoing, members of the Utah Class are entitled to all forms of relief under Utah Code Ann. § 76-10-3109(1)(a)-(b), including actual damages, treble damages, costs of suit, reasonable attorneys' fees, and injunctive relief.

324.    In accordance with the requirements of Utah Code Ann. § 76-10-3109(9), notice

of this action was provided to the Utah Attorney General by Plaintiff.

**TWENTY-NINTH CAUSE OF ACTION**
**VIOLATION OF VERMONT'S CONSUMER FRAUD ACT**
**VT. STAT. ANN. TIT. 9, §§ 2451, *ET SEQ*.**
**(ON BEHALF OF THE VERMONT CLASS)**

325.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

allegation set forth in the preceding paragraphs of this Complaint.

326.    Amazon entered into a contract, combination, or conspiracy between two or more

persons, namely, the Price Parity Restriction, in restraint of trade or commerce within Vermont,

in violation of Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*

327.    Vermont Class members purchased Class Products within the State of Vermont

between March 12, 2013 and the March 2019 Removal Date.

328.    Amazon's unlawful conduct substantially affected Vermont's trade and commerce

as follows: (a) competition in the Vermont retail e-commerce market was restrained, suppressed,

or eliminated; (b) prices of Class Products were raised to artificially high levels throughout

Vermont; (c) Vermont Class members were deprived of free and open competition; and (d)

Vermont Class members paid artificially inflated prices for Class Products purchased in

Vermont.

329.    As a direct and proximate result of Amazon's conduct, members of the Vermont

Class were injured, in that they overpaid for Class Products, in an amount to be determined at

trial.

330.    Vermont Class members have standing to sue as individuals who sustained

damages or injuries as a result of Amazon's conduct under Vt. Stat. Ann. tit. 9, § 2465(6).

68

331.    By reason of the foregoing, members of the Vermont Class are entitled to seek all forms of relief available under Vt. Stat. Ann. tit. 9, § 2465(a), including actual damages, consideration or value of consideration given, reasonable attorney's fees, and exemplary damages.

**THIRTIETH CAUSE OF ACTION**
**VIOLATION OF THE WEST VIRGINIA ANTITRUST ACT,**
**W. VA. CODE §§ 47-18-1, *ET SEQ.***
**(ON BEHALF OF THE WEST VIRGINIA CLASS)**

332.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

333.    Amazon engaged in a continuing contract, combination or conspiracy, namely, the Price Parity Restriction, in restraint of trade and commerce in West Virginia and for the purpose of or with the effect of fixing, controlling, or maintaining the market prices of Class Products, in violation of W. Va. Code §§ 47-18-1, *et seq.*

334.    West Virginia Class members purchased Class Products within the State of West Virginia between March 12, 2015 and the March 2019 Removal Date.

335.    Amazon's unlawful conduct substantially affected West Virginia's trade and commerce as follows: (a) competition in the West Virginia retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout West Virginia; (c) West Virginia Class members were deprived of free and open competition; and (d) West Virginia Class members paid artificially inflated prices for Class Products purchased in West Virginia.

336.    As a direct and proximate result of Amazon's conduct, West Virginia Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

337.    West Virginia Class members have standing to sue as individuals whose business or property has been injured, directly or indirectly, by Amazon's conduct under W. Va. Code Ann. § 47-18-9.

338.    By reason of the foregoing, members of the West Virginia Class are entitled to seek all forms of relief available under W. Va. Code Ann. § 47-18-9, including treble damages and their cost of suit, including reasonable attorneys' fees.

**THIRTY-FIRST CAUSE OF ACTION**
**VIOLATION OF THE WISCONSIN ANTITRUST ACT,**
**WIS. STAT. ANN. §§ 133.01, *ET SEQ.***
**(ON BEHALF OF THE WISCONSIN CLASS)**

339.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

340.    Amazon entered into a contract, combination, or conspiracy, namely, the Price Parity Restriction, in restraint of trade or commerce of Class Products in Wisconsin in violation of Wis. Stat. Ann. §§ 133.01, *et seq*.

341.    Wisconsin Class members purchased Class Products within the State of New Wisconsin between March 12, 2013 and the March 2019 Removal Date.

342.    Amazon's unlawful conduct substantially affected Wisconsin's trade and commerce as follows: (a) competition in the Wisconsin retail e-commerce market was restrained, suppressed, or eliminated; (b) prices of Class Products were raised to artificially high levels throughout Wisconsin; (c) Wisconsin Class members were deprived of free and open

competition; and (d) Wisconsin Class members paid artificially inflated prices for Class Products purchased in Wisconsin.

343.    As a direct and proximate result of Amazon's conduct, Wisconsin Class members were injured, in that they overpaid for Class Products, in an amount to be determined at trial.

344.    Wisconsin Class members have standing to sue as individuals who have been injured, directly or indirectly, by Amazon's conduct under Wis. Stat. Ann. § 133.18.

345.    By reason of the foregoing, members of the Wisconsin Class are entitled to all forms of relief under Wis. Stat. Ann. § 133.18, including treble damages, together with reasonable attorneys' fees and the cost of suit.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the above-described Classes of others so similarly situated, respectfully request judgment against Amazon as follows:

A.    The Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as representatives of the Classes and their counsel of record as counsel to the Classes, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Classes, once certified;

B.    The Court adjudge and decree the unlawful restraint, conspiracy, or combination alleged herein as violating the above-identified state antitrust laws and consumer protection laws;

C.    Plaintiffs and the Classes recover damages, to the maximum extent allowed under the applicable state laws, and that a judgment in favor of Plaintiffs and the members of the Classes be entered against Amazon in an amount to be trebled to the extent such laws permit;

D.     The Court permanently enjoin and restrain Amazon, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them from in any manner renewing the restraint, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

E.     Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

F.     Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

G.     Plaintiffs and the members of the Classes be granted such other and further relief as the case may require and the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.

By:  */s/ Daniel Goldman*
Daniel Goldman
dgoldman@bklwlaw.com

Thomas Bienert, Jr. (*pro hac vice forthcoming*)
tbienert@bklwlaw.com

Nancy Sandoval (*pro hac vice forthcoming*)
nsandoval@bklwlaw.com

Bienert Katzman Littrell Williams LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Tel: (949) 369-3700

By:  */s/ Gordon Ball*
Gordon Ball (*pro hac vice forthcoming*)
gball@gordonball.com

Gordon Ball, PLLC
3728 West End Avenue
Nashville, Tennessee 37205
Tel: (865) 525-7028

By:  */s/ Times Wang*
Times Wang (*pro hac vice forthcoming*)
North River Law, PLLC
1300 I Street NW, Suite 400E
Washington, DC 20005
(202) 838-6489

*Counsel for Plaintiffs*