**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TAFARI MBADIWE and RACHEL MILLER
on behalf of themselves and all others similarly
situated,

                              Plaintiffs,

                      v.                                    Civil Action No. 1:22-cv-09542-VSB

AMAZON.COM, INC.,

                              Defendant.

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>DEFENDANT AMAZON.COM INC.'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 4

    A.    Amazon's Retail Store ............................................................................................ 4

    B.    Plaintiffs' Claims Based on Purchases from Retailers off Amazon ........................ 6

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT ....................................................................................................................... 7

I.    Plaintiffs Have Failed to Allege Antitrust Standing. ...................................................... 7

    A.    Plaintiffs' Claims Violate the *AGC* Factors. ......................................................... 8

        1.    Plaintiffs' Claims Do Not Satisfy *AGC*'s First-Step Rule. ................................ 9

        2.    Plaintiffs' Umbrella Theory Violates *AGC*. ..................................................... 10

    B.    The Entire Complaint Fails Because the Named Plaintiffs Do Not Have Antitrust
        Standing Under Their State's Law. ....................................................................... 12

    C.    Plaintiffs' Claims Under 27 State Laws Must Be Dismissed for Lack of Antitrust
        Standing. .............................................................................................................. 14

        1.    Connecticut, Illinois (Antitrust Act), Iowa, Maine, Maryland, Michigan,
            Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota,
            and Wisconsin Have Adopted *AGC*. ............................................................. 14

        2.    Hawaii, Iowa, Kansas, Nebraska, Nevada, New Mexico, Oregon, Rhode Island,
            and West Virginia Require Their Antitrust Laws to Be Read in Harmony with
            Federal Antitrust Law. ................................................................................... 17

        3.    Arkansas, Florida, Illinois (Deceptive Trade Practices), Minnesota,
            Mississippi, North Carolina, and Utah Require Proximate Causation for
            Antitrust Standing. ......................................................................................... 20

        4.    Arizona, North Dakota, and Vermont Prohibit Non-Purchaser Standing. ....... 22

        5.    The New Hampshire Supreme Court Would Also Apply *AGC* and Require
            Proximate Causation. ..................................................................................... 22

II.    Plaintiffs Fail to Allege an Unlawful *Per Se* Horizontal Agreement .............................. 23

III.    Plaintiffs' Claims Fail for Additional Reasons. .............................................................. 26

    A.    The Antitrust Laws of Tennessee, Kansas, and New York Cover Only Concerted
        Action, Not Unilateral Conduct, and Plaintiffs Only Challenge Amazon's
        Unilateral Adoption of the Parity Provision. ......................................................... 27

    B.    The New Hampshire Consumer Protection Act Claim Fails Because Plaintiffs Do
        Not Allege Any Proscribed Conduct That Occurred in New Hampshire. ............. 28

    C.    Plaintiffs Fail to State a Claim Under the Utah Antitrust Act Because They Are
        Not Citizens or Residents of Utah. ....................................................................... 30

D.    Plaintiffs' Arkansas Deceptive Trade Practices Claim Should Be Dismissed to the Extent It Is Based on Purchases After August 1, 2017, When Reliance Became an Essential Element of a Claim, Because They Have Not Alleged Reliance............ 30

E.    The Missouri Merchandising Practices Act Addresses Fraudulent Acts or Practices—Not Alleged Antitrust Violations. ........................................................ 31

IV.    Many of Plaintiffs' Claims Are Completely or Substantially Time-Barred. ................... 31

A.    Plaintiffs' Illinois and New Hampshire (Consumer Protection), and Kansas, Mississippi, and Tennessee (Antitrust) Claims Are Entirely Time-Barred as These States' 3-Year Limitations Period Has Expired, and No Tolling Doctrine Applies…..................................................................................................................... 32

1.    The Discovery Rule Does Not Extend the Limitations Period. ...................... 33

2.    Plaintiffs Do Not Plausibly Allege Fraudulent Concealment. .......................... 34

3.    The Continuing Violation Doctrine Does Not Apply to Plaintiffs' Claims Subject to a Three-Year Limitations Period.................................................... 35

4.    *American Pipe* Tolling Does Not Apply. ....................................................... 36

B.    Plaintiffs' Antitrust Claims under Arizona, Connecticut, Florida, Hawaii, Illinois, Iowa, Maryland, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, and Oregon Law Are Limited to Purchases During the November 8, 2018 to March 2019 Time Period.................................................................... 38

C.    Plaintiffs' Claims under Missouri Law Are Limited to Purchases During the November 8, 2017 to March 2019 Time Period.................................................... 39

D.    Plaintiffs' Claims under Maine, Vermont, and Wisconsin Law Are Limited to Purchases During the November 8, 2016 to March 2019 Time Period. ................ 40

CONCLUSION...................................................................................................................... 40

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2238 Victory Corp.* v. *Fjallraven USA Retail*,
2021 WL 76334 (S.D.N.Y. 2021) ............................................................26

*In re Aluminum Warehousing Antitrust Litig.*,
520 F. Supp. 3d 455 (S.D.N.Y. 2021) ...................................................7, 17

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
19 F.4th 127 (2d Cir. 2021) ........................................................... *passim*

*Am. Pipe & Constr. Co.* v. *Utah*,
414 U.S. 538 (1974) ...........................................................................36

*Apple* v. *Pepper*,
139 S. Ct. 1514 (2019) .........................................................................7

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) .............................................................................6

*Ashley County Ark.* v. *Pfizer Inc.*,
552 F.3d 659 (8th Cir. 2009) ...............................................................20

*Associated Gen. Contractors of Cal., Inc.* v. *Cal. State Council of Carpenters*
("*AGC*"), 459 U.S. 519 (1983) ............................................................2, 7

*Atl. Marine Constr. Co.* v. *U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 (2013) ............................................................................31

*Avery* v. *State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ..................................................................21

*Baar* v. *Jaguar Land Rover N. Am., LLC*,
295 F. Supp.3d 460 (D.N.J. 2018) ........................................................28

*Beane* v. *Dana S. Beane & Co., P.C.*,
7 A.3d 1284 (N.H. 2010) ....................................................................33

*Beckler* v. *Visa U.S.A., Inc.*,
2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004).....................................8

*Beckler* v. *Visa U.S.A., Inc.*,
2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) ..............................17, 22

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)........................................................................................6

*Bellwether Cmty. Credit Union* v. *Chipotle Mexican Grill, Inc.*,
    353 F. Supp. 3d 1070 (D. Colo. 2018)..........................................................22

*In re Bibox Grp. Holdings Ltd. Secs. Litig.*,
    534 F. Supp. 3d 326 (S.D.N.Y. 2021)...........................................................33

*Boone* v. *Citigroup, Inc.*,
    416 F.3d 382 (5th Cir. 2005) ........................................................................37

*Breiding* v. *Eversource Energy*,
    344 F. Supp. 3d 433 (D. Mass. 2018) ...........................................................15

*Broad. Music Inc.* v. *Columbia Broad. Sys., Inc.*,
    441 U.S. 1 (1979)..........................................................................................25

*Brown* v. *McKee*,
    242 So.3d 121 (Miss. 2018)..........................................................................35

*Cahnman* v. *Timber Court LLC*,
    196 N.E.3d 151 (Ill. App. Ct. 2021) .............................................................35

*Cain* v. *Midland Funding, LLC*,
    256 A.3d 765 (Md. 2021) .............................................................................39

*Casey* v. *Merck & Co.*,
    653 F.3d 95 (2d Cir. 2011)............................................................................36

*China Agritech Inc.* v. *Resh*,
    138 S. Ct. 1800 (2018)..................................................................................36

*Clay* v. *Kuhl*,
    727 N.E.2d 217 (Ill. 2000) ...........................................................................33

*Cnty. of Cook* v. *Philip Morris, Inc.*,
    817 N.E.2d 1039 (Ill. App. Ct. 2004) ...........................................................14

*Coe* v. *Philips Oral Healthcare Inc.*,
    2014 WL 5162912 (W.D. Wash. Oct. 14, 2014) ..........................................37

*Coles* v. *City & Cnty. of Honolulu*,
    517 P.3d 750 (Haw. 2022) ............................................................................38

*Consiglio-Tseffos* v. *Visa USA, Inc.*,
    2004 WL 3030043 (Ariz. Super. Ct. Dec. 8, 2004)......................................22

*Contant* v. *Bank of Am.*,
　2018 WL 1353290 (S.D.N.Y. Mar. 15, 2018) ...........................................................8, 13, 21

*Cornelison* v. *Visa U.S.A., Inc.*,
　2004 WL 6331252 (S.D. Cir. Ct. Sept. 28, 2004) ...................................................................17

*Crouch* v. *Crompton Corp.*,
　2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004) ...............................................................16

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
　2015 WL 3988488 (N.D. Ill. June 29, 2015) ..........................................................................16

*De Coster* v. *Amazon.com, Inc.*,
　2023 WL 372377 (W.D. Wash. Jan. 24, 2023)...................................................................24, 26

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
　362 F. Supp. 3d 510 (N.D. Ill. 2019) .....................................................................................15

*Deutsche Bank Nat'l Tr. Co.* v. *Barclays Bank PLC*,
　140 N.E.3d 511 (N.Y. 2019).....................................................................................................32

*Dineen* v. *Pella Corp.*,
　2015 WL 6688040 (D.S.C. Oct. 30, 2015) .............................................................................38

*In re Ditropan XL Antitrust Litig.*,
　529 F. Supp. 2d 1098 (N.D. Cal. 2007) ..................................................................................27

*Doe* v. *Popravak*,
　421 P.3d 760 (Kan. Ct. App. 2017) ........................................................................................34

*Doe* v. *Roman Catholic Diocese of Jackson*,
　947 So.2d 983 (Miss. Ct. App. 2006) .....................................................................................33

*Donovan* v. *Digital Corp.*,
　883 F. Supp. 775 (D.N.H. 1994)..............................................................................................23

*In re Effexor Antitrust Litig.*,
　357 F. Supp. 3d 363 (D.N.J. 2018) .........................................................................................30

*Elkins* v. *Microsoft Corp.*,
　817 A.2d 9 (Vt. 2002)...............................................................................................................22

*Epstein* v. *JPMorgan Chase & Co.*,
　2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ........................................................................14

*ERI Max Entm't, Inc.* v. *Streisand*,
　690 A.2d 1351 (R.I. 1997).......................................................................................................19

*F.T.C.* v. *Mylan Labs.*,
  62 F. Supp. 2d 25 (D.D.C. 1999) ........................................................18

*Fishbein* v. *Miranda*,
  670 F. Supp. 2d 264 (S.D.N.Y. 2009) .................................................3

*Fisher* v. *City of Berkeley, Cal.*,
  475 U.S. 260 (1986) ...........................................................................27

*In re Flonase Antitrust Litig.*,
  610 F. Supp. 2d 409 (E.D. Pa. 2009) .................................................27

*Frame-Wilson v. Amazon.com, Inc.*,
  591 F. Supp. 3d 975 (W.D. Wash. 2022) ......................................24, 26

*Frame-Wilson* v. *Amazon.com, Inc.*,
  2023 WL 2632513 (W.D. Wash. March 24, 2023) .............................24

*Friends Univ.* v. *W. R. Grace & Co.*,
  608 P.2d 936 (Kan. 1980) ...................................................................33

*Fucile* v. *Visa U.S.A., Inc.*,
  2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) .............................22

*Furbush* v. *McKittrick*,
  821 A.2d 1126 (N.H. 2003) ................................................................34

*Gammon* v. *Federated Milk Producers Ass'n, Inc.*,
  360 P.2d 1018 (Utah 1961) .................................................................21

*Gardner* v. *Sensio Inc.*,
  2022 WL 17584273 (S.D.N.Y. Dec. 12, 2022) ..................................35

*Gatt Commc'ns, Inc.* v. *PMC Assocs., LLC*,
  711 F.3d 68 (2d Cir. 2013).....................................................................7

*Global Reinsurance Corp.-U.S. Branch* v. *Equitas Ltd.*,
  969 N.E.2d 187 (N.Y. Ct. App. 2012) ................................................27

*In re Google Digital Advertising Antitrust Litig.*,
  2022 WL 4226932 (S.D.N.Y. 2022) ...................................................26

*Harrington* v. *Toshiba Mach. Co.*,
  562 N.W.2d 190 (Iowa 1977) .............................................................39

*Ho* v. *Visa U.S.A., Inc.*,
  3 Misc. 3d 1105(A) (N.Y. Sup. Ct. Apr. 21, 2004) ...........................13

*Ho* v. *Visa U.S.A., Inc.*,
    16 A.D.3d 256 (N.Y. App. Div. 2005) ........................................................................13, 17

*Illinois Brick Co.* v. *Illinois*,
    431 U.S. 720 (1977).................................................................................................................7

*Indep. Cnty.* v. *Pfizer, Inc.*,
    534 F. Supp. 2d 882 (E.D. Ark. 2008).................................................................................20

*Integrated Sys. & Power, Inc.* v. *Honeywell Int'l, Inc.*,
    713 F. Supp. 2d 286 (S.D.N.Y. 2010)..................................................................................23

*In re Interior Molded Doors Antitrust Litig.*,
    2019 WL 4478734 (E.D. Va. Sept. 18, 2019)................................................................. 30-31

*Iowa Pub. Emps.' Ret. Sys.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    340 F. Supp. 3d  285 (S.D.N.Y. 2018).................................................................................35

*Kanne* v. *Visa U.S.A., Inc.*,
    723 N.W.2d 293 (Neb. 2006)...............................................................................................16

*Kartell* v. *Blue Shield of Mass, Inc.*,
    749 F.2d 922 (1st Cir. 1984)................................................................................................25

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019)......................................................................... *passim*

*Kloth* v. *Microsoft Corp.*,
    444 F.3d 312 (4th Cir. 2006) .................................................................................................8

*Knowles* v. *Visa U.S.A., Inc.*,
    2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) .............................................................15

*Koch* v. *Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012).................................................................................................34

*Kramer* v. *Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991).................................................................................................34

*Kyszenia* v. *Ricoh USA, Inc.*,
    583 F. Supp. 3d 350 (S.D.N.Y. 2022)..................................................................................35

*L-7 Designs, Inc.* v. *Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)...................................................................................................7

*Labella Winnetka, Inc.* v. *Gen. Cas. Ins. Co.*,
    259 F.R.D. 143 (N.D. Ill. 2009)...........................................................................................21

*Laydon* v. *Coop. Rabobank U.A.*,
    55 F.4th 86 (2d Cir. 2022) ...................................................................7

*Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*,
    551 U.S. 877 (2007) .............................................................................24

*Lewis* v. *Archbell*,
    154 S.E. 11 (N.C. 1930) ......................................................................21

*In re Lipitor Antitrust Litig.*,
    336 F. Supp. 3d 395 (D.N.J. 2018) ...................................................27

*Lithium Ion Batteries Antitrust Litig.*,
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ................................ 28-29

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
    332 F. Supp. 3d 885 (S.D.N.Y. 2018) ...............................................20

*Lorix* v. *Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007) ...........................................................21

*Maestras* v. *Sofamor Danek Group, Inc.*,
    33 S.W.3d 805 (Tenn. 2000) ..............................................................37

*McCarthy* v. *Recordex Serv. Inc.*,
    80 F.3d 842 (3d Cir. 1996) ..................................................................8

*Miami Prod. & Chem Co.* v. *Olin Corp.*,
    546 F. Supp. 3d 223 (W.D.N.Y. 2021) ........................................29, 30

*Mid-West Paper Prods. Co.* v. *Cont'l Grp., Inc.*,
    596 F.2d 573 (3d Cir. 1979) ...............................................................11

*Minuteman, LLC* v. *Microsoft Corp.*,
    795 A.2d 833 (N.H. 2002) .............................................................22, 23

*Monsanto Co.* v. *Spray-Rite Service Corp.*,
    465 U.S. 752 (1984) .........................................................................27, 28

*Mueller Co.* v. *U.S. Pipe & Foundry Co.*,
    2003 WL 22272135 (D.N.H. Oct. 2, 2003) .......................................29

*Nanometrics, Inc.* v. *Optical Sols., Inc.*,
    2019 WL 1048253 (N.D. Cal. Mar. 5, 2019) .....................................29

*Nass-Romero* v. *Visa*,
    279 P.3d 772 (N.M. Ct. App. 2012) ...................................................16

*Nw. Wholesale Stationers, Inc.* v. *Pac. Stationery & Printing Co.*,
   472 U.S. 284 (1985) ..................................................................................................24

*Obstetrical & Gynecological Assocs. of Neenah, S.C.* v. *Landig*,
   384 N.W.2d 719 (Wis. Ct. App. 1986) ......................................................................17

*Ohio* v. *Am. Express Co.*,
   138 S. Ct. 2274 (2018) ..............................................................................................24

*Oliver* v. *Am. Express Co.*,
   2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) ...............................................13, 14

*Oliver* v. *Am. Express Co.*,
   2021 WL 386749 (E.D.N.Y. Feb. 1, 2021)................................................... *passim*

*Owens Corning* v. *R.J. Reynolds Tobacco Co.*,
   868 So.2d 331 (Miss. 2004) .....................................................................................21

*Personis* v. *Oiler*,
   889 F.2d 424 (2d Cir. 1989).....................................................................................31

*In re Petroleum Prods. Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982) .................................................................................11

*Picket Fence Preview, Inc.* v. *Zillow, Inc.*,
   2021 WL 3680717 (D. Vt. Aug. 19, 2021)................................................................22

*In re Platinum & Palladium Antitrust Litig.*,
   61 F.4th 242 (2d Cir. 2023) .................................................................................9, 20

*Portwood* v. *Ford Motor Co.*,
   701 N.E.2d 1102 (Ill. 1998) .................................................................................37, 38

*Province Lake Golf Enters., Inc.* v. *Phila. Indem. Ins. Co.*,
   2020 WL 3799229 (D.N.H. July 7, 2020) ................................................................29

*Rader* v. *Greenberg Traurig, LLP*,
   352 P.3d 465 (Ariz. Ct. App. 2015)..........................................................................38

*Recycling & Salvage, Ltd.* v. *Reno Disposal Co.*, *Inc.*,
   423 P.3d 605 (Nev. 2018) .........................................................................................16

*Redwing* v. *Catholic Bishop for Diocese of Memphis*,
   363 S.W.3d 436 (Tenn. 2012)..............................................................................33, 34

*In re Refrigerant Compressors Antitrust Litig.*,
   2013 WL 1431756 (E.D. Mich. Apr. 9, 2013)......................................................23, 29

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*,
    355 F. Supp. 3d 145 (E.D.N.Y. 2008) ................................................................30

*Rolwing* v. *Nestle Holdings, Inc.*,
    437 S.W.3d 180 (Mo. 2014) ................................................................39

*Ross* v. *Am. Express Co.*,
    35 F. Supp. 3d 407 (S.D.N.Y. 2014)................................................................13

*Sambreel Holdings LLC* v. *Facebook, Inc.*,
    906 F. Supp. 2d 1070 (S.D. Cal. 2012)................................................................28

*Schwab Short-Term Bond Mkt. Fund* v. *Lloyds Banking Grp. PLC*,
    22 F.4th 103 (2d Cir. 2021) ................................................................ 9-10, 11, 12

*Seaboard Corp.* v. *March Inc.*,
    284 P.3d 314 (Kan. 2012) ................................................................37

*Seafarers Welfare Plan* v. *Philip Morris*,
    27 F. Supp. 2d 623 (D. Md. 1998) ................................................................15

*Sergeants Benevolent Ass'n Health & Welfare Fund* v. *Actavis, PLC*,
    2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ................................................................30

*Siegel* v. *Shell Co.*,
    612 F.3d 932 (7th Cir. 2010) ................................................................21

*Simon* v. *KeySpan Corp.*,
    2011 WL 2135075 (S.D.N.Y. May 27, 2011) ................................................................13

*SL-X IP S.à.r.l.* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    2023 WL 2620041 (2d Cir. Mar. 24, 2023)................................................................13

*Smith* v. *Philip Morris Cos.*,
    335 P.3d 644 (Kan. Ct. App. 2014) ................................................................27

*Sonterra Capital Master Fund Ltd.* v. *Barclays*,
    366 F. Supp. 3d 516 (S.D.N.Y. 2018)................................................................11

*Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Grp. AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017)................................................................ 35-36

*Southard* v. *Visa U.S.A. Inc.*,
    734 N.W.2d 192 (Iowa 2007) ................................................................15

*Stark* v. *Visa U.S.A. Inc.*,
    2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)................................................................8, 16

*State of Tenn. ex. rel. Leech* v. *Levi Strauss & Co.*,
   1980 WL 4696 (Tenn. Ch. Ct. Sept. 25, 1980) ...................................................... 32

*Stewart Agency, Inc.* v. *Arrigo Enters., Inc.*,
   266 So.3d 207 (Fla. Dist. Ct. App. 2019) ............................................................. 20

*Stop & Shop Supermarket Co.* v. *Blue Cross & Blue Shield of R.I.*,
   373 F.3d 57 (1st Cir. 2004) .................................................................................... 23

*Strang* v. *Visa U.S.A., Inc.*,
   2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ............................................. 8, 17

*Stuart* v. *Am. Cyanamid Co.*,
   158 F.3d 622 (2d Cir. 1998) ............................................................................ 31, 32

*Teague* v. *Bayer AG*,
   671 S.E.2d 550 (N.C. Ct. App. 2009) .................................................................. 16

*Tennessean Truckstop, Inc.* v. *NTS, Inc.*,
   875 F.2d 86 (6th Cir. 1989) .................................................................................. 25

*Toscano* v. *Pro. Golfers Ass'n*,
   258 F.3d 978 (9th Cir. 2001) ................................................................................ 28

*Tremont Pub. Advisors, LLC* v. *Conn. Res. Recovery Auth.*,
   217 A.3d 953 (Conn. 2019) .................................................................................. 14

*Vincent* v. *Money Store*,
   915 F. Supp. 2d 553 (S.D.N.Y. 2013) ...................................................... 32, 36, 37

*In re Vitamins Antitrust Litig.*,
   2001 WL 855463 (D.D.C. July 2, 2001) .............................................................. 11

*Watson* v. *Wells Fargo Home Mortg., Inc.*,
   438 S.W.3d 404 (Mo. 2014) ................................................................................. 31

*Wellmark, Inc.* v. *Iowa Dist. Ct. for Polk Cnty.*,
   890 N.W.2d 636 (Iowa 2017) ............................................................................... 23

*Wilcox Indus. Corp.* v. *Hansen*,
   870 F. Supp. 2d 296 (D.N.H. 2012) ..................................................................... 29

*Wilkins* v. *Genzyme Corp.*,
   2022 WL 4237528 (D. Mass. Sept. 14, 2022) ..................................................... 37

*X.L.O. Concrete Corp.* v. *Rivergate Corp.*,
   634 N.E.2d 158 (N.Y. 1994) ................................................................................ 13

**Statutes**

Ariz. Rev. Stat. Ann. § 44-1410 ................................................................................38

Ark. Code. Ann. § 4-88-113 ...............................................................................20, 30

Conn. Gen. Stat. § 35-40 ........................................................................................38

Fla. Stat. § 95.11 ....................................................................................................38

Fla. Stat. § 95.051 ..................................................................................................38

Haw. Rev. Stat. § 480-3 ..........................................................................................18

Haw. Rev. Stat. § 480-24 ........................................................................................38

740 Ill. Comp. Stat. 10/7 ........................................................................................38

815 Ill. Comp. Stat. Ann. 505/10a .........................................................................32

Iowa Code § 553.2 ..................................................................................................18

Iowa Code § 553.16 ................................................................................................38

Kan. Stat. Ann. § 50-163 ........................................................................................18

Kan. Stat. Ann. § 60-512 ........................................................................................32

Kan. Stat. Ann. § 60-518 ........................................................................................37

Me. Rev. Stat. Ann. tit. 14 § 752 ...........................................................................40

Md. Code Ann. Com. Law. § 11-209 ......................................................................38

Minn. Stat. § 325D.64 ............................................................................................38

Miss. Code Ann. § 15-1-49 .....................................................................................32

Mo. Rev. Stat. § 416.141 ........................................................................................31

Mo. Rev. Stat. § 516.120 ........................................................................................39

Neb. Rev. Stat. § 25-206 .........................................................................................37

Neb. Rev. Stat. § 59-829 .........................................................................................18

Nev. Rev. Stat. § 598.050 .......................................................................................18

Nev. Rev. Stat. § 598A.220 ....................................................................................38

N.H. Rev. Stat. Ann. § 356:12 ........................................................................................38

N.H. Rev. Stat. Ann. § 358-A:2 .......................................................................................28

N.H. Rev. Stat. Ann. § 358-A:3 .......................................................................................32

N.M. Stat. Ann. § 57-1-12 ...............................................................................................38

N.M. Stat. Ann. § 57-1-15 ...............................................................................................19

N.D. Cent. Code § 51-08.1-10 .........................................................................................38

Or. Rev. Stat. § 646.715 ..................................................................................................19

Or. Rev. Stat. § 646.800 ..................................................................................................38

Tenn. Code § 28-3-105 ....................................................................................................32

Utah Code Ann. § 76-10-3109 .........................................................................................30

Vt. Stat. Ann. tit. 12, § 511 .............................................................................................40

W. Va. Code § 47-18-16 ..................................................................................................19

Wis. Stat. § 133.18 ..........................................................................................................40

**Other Authorities**

N.Y. C.P.L.R. 202 ...........................................................................................................31

## PRELIMINARY STATEMENT

In the intensely competitive retail industry, customers shop and compare prices across many options until they find the best value.  One of Amazon's core business objectives is to provide customers a positive shopping experience through low prices, wide selection, and fast and reliable delivery.  This approach earns—and preserves—customer trust, encouraging customers to choose to return to Amazon's store for their next purchases, which in turn benefits all sellers in Amazon's store.  In furtherance of its goal of providing customers a trusted place to shop, until March 2019, Amazon included a Parity Provision in its agreements with third-party sellers offering goods for sale in Amazon's store.  The provision required third-party sellers that chose to sell in Amazon's store not to discriminate against Amazon customers by offering them prices at least as favorable as the prices they offered outside of Amazon's store.  No court has ever condemned a retailer for requiring sellers in its store to offer the store's customers competitive prices, as Plaintiffs ask this Court to do.  Plaintiffs' attack on the Parity Provision defies common sense and the fundamental principles of competition law, perversely subjecting retailers to antitrust scrutiny for conduct that protects consumers, and encourages low prices.

Plaintiffs' First Amended Complaint ("FAC") is based solely on state law, alleging that the Parity Provision violated the laws of 29 states.  Plaintiffs' claims are illogical and unsound, and each is subject to at least one and sometimes multiple grounds for dismissal.

*First*, Plaintiffs are not complaining about the prices they paid for goods they purchased in Amazon's store.  Nor are they alleging that they paid artificially high prices for goods sold by Amazon sellers subject to the Parity Provision in other online or offline stores.  Rather, these Plaintiffs are claiming damages based on the prices for products they purchased from stores like Walmart, Target, and Home Depot, which had no contractual obligations whatsoever to Amazon.  Specifically, Mr. Mbadiwe is complaining about the prices he paid for toothpaste and lotion at

Walmart, and Mrs. Miller is complaining about the price she paid for face cleanser at Sephora. Through a patently implausible multi-step causal chain, Plaintiffs allege that the Parity Provision, which applied only to sellers' offers in Amazon's store, impacted the prices of hundreds of millions of goods sold by retailers outside of Amazon's store.  In order to have antitrust standing to assert their claims, Plaintiffs must therefore rely on the consistently rejected umbrella theory—that a policy applicable to third-party sellers offering goods in Amazon's store supposedly created a price umbrella that caused consumers to pay higher prices for the same goods priced by thousands of other retailers large and small.  In addition to alleging injury unprecedented in scope, affecting nearly every consumer product sold on the internet from televisions to t-shirts to breakfast cereal, this theory violates the Supreme Court's decision in *Associated General Contractors of California, Inc.* v. *California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983).  *AGC* requires a direct causal connection—that is, proximate causation—between the Parity Provision applicable to the prices of goods third-party sellers offer for sale in Amazon's store and the independent pricing decisions of Walmart, Sephora, and the countless other online retailers that do not sell in Amazon's store.  *Id.*  As Plaintiffs concede, this theory "has *never been accepted* by the Second Circuit."  Pls.' Opp. to Mot. to Intervene at 10 n.3, ECF No. 29.[1]  Courts outside this Circuit, as well as courts in the states covered by Plaintiffs' claims, have likewise not accepted it.

*Second*, to proceed as class representatives, plaintiffs must have antitrust standing to pursue the particular state law claim they assert.  Mr. Mbadiwe and Mrs. Miller are New York residents. New York law follows *AGC* and does not recognize umbrella standing.  If plaintiffs do not have antitrust standing to proceed with their claims under New York law, their claims must be

---

[1]     With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

dismissed, and they cannot act as class representatives of persons whose claims arise under the laws of 28 other states.  Because no named plaintiff has antitrust standing, the case must be dismissed.

*Third*, Plaintiffs allege that their claims constitute *per se* violations of state antitrust laws. The default standard is the rule of reason.  Courts reserve *per se* treatment for certain kinds of agreements between horizontal competitors, only after developing considerable judicial experience with the particular restraint that allows courts to predict with confidence that the restraint would always be invalidated under the rule of reason.  Plaintiffs use the words "*per se*," but fail to allege such a claim.  The Amended Complaint describes vertical arrangements—not subject to a *per se* claim—between Amazon, which operates a retail store, and third-party sellers, which sell goods to customers in Amazon's store and purchase services from Amazon to facilitate those sales.  Plaintiffs cite no prior judicial decisions finding that a provision like the Parity Provision is an antitrust violation.  All of these factors require dismissal of Plaintiffs' *per se* claim.

*Finally*, there are legal defects specific to certain state law claims that require those claims to be dismissed or narrowed significantly.  For example, many of Plaintiffs' claims are untimely, in whole or in part, based on the applicable statutes of limitations periods.  Plaintiffs allege those periods are tolled, but such allegations fail as a matter of law because the basis for Plaintiffs' claims—the Parity Provision in Amazon's agreements with third-party sellers until March 2019— was in no way concealed.  As the articles cited in the Complaint demonstrate,[2] as early as 2013 information about the Parity Provision was publicly available, including its removal from Amazon's agreements with third-party sellers in March 2019.  FAC ¶¶ 19, 53 & nn.16, 34, 35.

---

[2]     "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer to documents attached to the complaint as an exhibit or incorporated in it by reference" or to documents "of which plaintiffs had knowledge and relied on in bringing suit."  *Fishbein* v. *Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass* v. *Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

Based on the publicly available information, other plaintiffs filed a federal antitrust class action complaint challenging the Parity Provision in March 2020, almost three years before Plaintiffs here filed their initial Complaint in November 2022. Plaintiffs could have filed their Complaint earlier and within the applicable limitations periods with the exercise of even minimal due diligence. Plaintiffs also seek tolling based on a doctrine only applicable to federal claims, the *American Pipe* doctrine, that many states have rejected, and federal courts should not recognize a doctrine as a matter of first impression that no court in a state has adopted.

The bases for dismissal for each of Plaintiffs' claims are summarized in Appendix A.

## **BACKGROUND**[3]

### A.      **Amazon's Retail Store**

Amazon operates a retail store in which it sells products directly to consumers. FAC ¶ 3. Besides selling approximately 12 million products directly to consumers, Amazon invites independent, third-party sellers to sell in its store. *Id.* Over the years, Amazon has made significant investments in tools and services designed to assist these sellers. One such investment is Fulfillment by Amazon ("FBA"), whereby Amazon provides third-party sellers the option to have Amazon "store products, pack and ship products to customers, and manage customer service and returns," which "many third-party sellers" have taken advantage of because it is "cost effective." *Id.* ¶ 41. Due to Amazon's investments, third-party sales in Amazon's store have steadily grown over the past two decades, accounting for more than half of all Amazon store sales as of 2019. *Id.* ¶¶ 4, 49. With more than 2.3 million third-party sellers, along with Amazon's own direct offerings, consumers in Amazon's store have access to over 500 million products. *Id.* ¶ 3.

---

[3]      Many of the FAC's allegations are inaccurate, but Amazon assumes their truth for purposes of this motion to dismiss.

As the FAC recognizes, consumers have multiple retail options. The FAC identifies prominent retailers and online stores with which Amazon competes, including the largest retailer in the United States (and the world): Walmart. *Id.* ¶¶ 66, 86, 117 (Walmart, Target, Sephora). Further, 80 percent of the 2.3 million third-party sellers who sell their products in Amazon's store sell on "competing online retail platforms, such as Walmart or eBay." *Id.* ¶ 6. Regardless of the FAC's allegation that Amazon is the largest online retailer, it is undisputed that consumers have many options for shopping in a dynamic, robust retail environment. *Id.* ¶¶ 6, 29, 86, 117.

In a highly competitive and dynamic retail environment, Amazon has earned customers' trust by consistently offering products at competitive, low prices delivered with the best service. Customer trust is essential to success in retail because customers readily switch among countless options and margins are incredibly slim. Even a single bad experience in Amazon's store—such as paying an uncompetitive price—can damage customer trust, causing Amazon and its third-party sellers to lose sales. Amazon invests time, money, and effort into earning—and then preserving—customers' trust, benefiting all sellers in Amazon's store. Plaintiffs challenge one step Amazon took to maintain customer trust, a "Price Parity Restriction" (the "Parity Provision"). *Id.* ¶ 20.

The Parity Provision was a provision in Amazon's Business Solutions Agreement ("BSA") that required third-party sellers not to discriminate against Amazon customers by offering products in Amazon's store at an all-in price that was "at least as favorable to Amazon Site users as the most favorable terms upon which a product is offered or sold" directly by the third-party seller elsewhere online. Decl. of Ella Irwin ("Irwin Decl.") ¶ 4, Ex. A at 18, July 13, 2018, *Kangaroo Manufacturing, Inc.* v. *Amazon.com, Inc.*, No. 17-cv-01806-SPL (D. Ariz.), ECF No. 75-1 (cited at FAC ¶ 7 n.11). To the extent Amazon enforced the Parity Provision in the event of a violation, the third-party seller was required to "promptly compensate adversely affected customers." *Id.*

Plaintiffs do not identify any instance where Amazon enforced the Parity Provision by requiring a third-party seller to provide such compensation, or allege any other facts demonstrating Amazon's enforcement of the policy.  Amazon removed the provision from the BSA in March 2019, more than three years before Plaintiffs filed suit in November 2022.  FAC ¶ 19.

### B.    Plaintiffs' Claims Based on Purchases from Retailers off Amazon

Although Plaintiffs allege higher prices in Amazon's store, they do not base their claims on any purchase from Amazon's store.  FAC ¶ 76.  Plaintiffs complain about prices they paid for products purchased directly from other countless retailers outside Amazon's store.  Mr. Mbadiwe purchased toothpaste and moisturizing lotion from Walmart, allegedly at a supracompetitive price due to the Parity Provision, and Mrs. Miller purchased face cleanser from Sephora, allegedly at a supracompetitive price due to the Parity Provision.  *Id.* ¶¶ 25-26.  Plaintiffs seek to represent a class of persons who purchased any retail products from online retailers other than Amazon.  *Id.* ¶¶ 1, 20, 112-14.  Plaintiffs do not allege that Amazon colluded with Walmart, Sephora, or any of the thousands of other retailers in the United States to set the prices for those products.  Amazon had no control, contractual or otherwise, over the prices those retailers set for the products sold in their stores and purchased by Plaintiffs.

### LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A claim is plausible only when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This inquiry "depends on a host of considerations: the full factual picture

presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

## ARGUMENT

## I.   Plaintiffs Have Failed to Allege Antitrust Standing.

"To state an antitrust claim, a plaintiff must first show antitrust standing." *Laydon* v. *Coop. Rabobank U.A.*, 55 F.4th 86, 98 (2d Cir. 2022).   Whether a plaintiff has antitrust standing is "a threshold, pleading-stage inquiry," and a court "must dismiss" a complaint "as a matter of law" if a plaintiff fails to establish this requirement. *Gatt Commc'ns, Inc.* v. *PMC Assocs., LLC*, 711 F.3d 68, 75 (2d Cir. 2013).   In order to have antitrust standing, a plaintiff must first show that it (1) has suffered antitrust injury; and (2) is an "efficient enforcer" of the antitrust laws. *Id.* at 76.   In *AGC*, 459 U.S. at 540-44, the Supreme Court identified multiple factors to guide courts in determining whether a plaintiff is an efficient enforcer.   One of those factors—proximate causation between the challenged conduct and a plaintiff's claimed injury—"must be met in every case." *In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 474 (S.D.N.Y. 2021).

Based on the Supreme Court's decision in *Illinois Brick*, federal law recognizes antitrust standing only for "direct purchasers," *i.e.*, individuals who made purchases directly from a defendant alleged to have committed an antitrust violation, but not for "indirect purchasers," *i.e.*, individuals who purchase from an entity that is further down the supply chain than the antitrust defendant. *Apple* v. *Pepper*, 139 S. Ct. 1514, 1520 (2019); *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720, 745-46 (1977).   The antitrust laws of many states do not follow the direct versus indirect purchaser distinction, and have adopted what are called "*Illinois Brick* repealer" statutes allowing indirect purchasers to assert antitrust claims under state law.

Plaintiffs and the proposed classes here are neither direct nor indirect purchasers from Amazon's store.  They purchased from retailers that compete with Amazon.  However Plaintiffs purchases are characterized, to have antitrust standing, they must plead and prove that they are "efficient enforcers" of the antitrust laws under *AGC*, which is an "analytically distinct" inquiry from whether a plaintiff is a direct or indirect purchaser.  *Contant* v. *Bank of Am.*, 2018 WL 1353290, at *3 (S.D.N.Y. Mar. 15, 2018) (quoting *Blue Shield of Va.* v. *McCready*, 457 U.S. 465, 476 (1982)).  *AGC* focuses on "whether a particular plaintiff's injury was too remote from an antitrust injury to warrant providing that plaintiff" a remedy whereas *Illinois Brick* "focuses exclusively on the risk of duplicative recovery and the potential for overly-complex damages and apportionment calculations."  *McCarthy* v. *Recordex Serv. Inc.*, 80 F.3d 842, 851 n.14 (3d Cir. 1996); *accord Kloth* v. *Microsoft Corp.*, 444 F.3d 312, 323 (4th Cir. 2006) ("Although courts sometimes blend the indirect purchaser rule of *Illinois Brick*" and the requirements under *AGC*, the "question of which persons have been injured by an illegal overcharge" is "analytically distinct" from "which persons have sustained injuries too remote to give them standing").  Because whether a plaintiff has antitrust standing based on the *AGC* efficient enforcer inquiry is "analytically distinct" from whether a plaintiff has antitrust standing under *Illinois Brick*, courts apply *AGC* to state antitrust claims even where the state has adopted an *Illinois Brick* repealer statute.  *E.g.*, *Strang* v. *Visa U.S.A., Inc.*, 2005 WL 1403769, at *2-5 (Wis. Cir. Ct. Feb. 8, 2005); *Stark* v. *Visa U.S.A. Inc.*, 2004 WL 1879003, at *3-4 (Mich. Cir. Ct. July 23, 2004); *Beckler* v. *Visa U.S.A., Inc.*, 2004 WL 2115144, at *2-3 (N.D. Dist. Ct. Aug. 23, 2004).

### A.   Plaintiffs' Claims Violate the *AGC* Factors.

Applying the first *AGC* factor—proximate causation between the alleged antitrust violation and Plaintiffs' claimed injury—the claims under 27 of the 29 states covered by Plaintiffs' Amended Complaint fail for lack of antitrust standing.  As the Second Circuit has held, proximate

causation requires injury at the first-step of a causal chain.  Plaintiffs' claims depend on an umbrella theory—that the Parity Provision applicable to the prices of goods offered in Amazon's store caused the prices of goods offered outside of Amazon's store, anywhere on the internet, to be higher than they otherwise would be.  The Second Circuit has repeatedly rejected an umbrella theory because it depends on a multi-step causal chain, with multiple intervening and independent causes, with no injury alleged until the final step.  Courts in 27 of the states covered by Plaintiffs' claims would likewise reject such a theory because they have expressly adopted *AGC*, have a statutory mandate to construe their states' antitrust laws "in harmony" with the federal antitrust laws, have a proximate causation requirement identical to the first *AGC* factor, and/or prohibit non-purchaser standing—all of which preclude Plaintiffs' claims.  Plaintiffs' claims under the laws of the other two states fail for other reasons discussed below.

The Court need not go beyond New York law to dismiss the entire Complaint. Mr. Mbadiwe and Mrs. Miller are both residents of New York, and the New York courts have expressly adopted *AGC*.  Because the named plaintiffs' umbrella theory fails to satisfy the *AGC* factors, both named plaintiffs lack antitrust standing under New York law.  This case cannot proceed with no named plaintiff having antitrust standing.  This defect cannot be cured by replacing the named plaintiffs with plaintiffs who are residents from any of the other 26 states addressed below because plaintiffs from those states would likewise lack antitrust standing.

### 1.      Plaintiffs' Claims Do Not Satisfy *AGC*'s First-Step Rule.

Proximate causation under the *AGC* efficient enforcer factors "is demarcated by the 'first step' rule, which limits liability to parties injured at the first step of the causal chain of the defendants' actions." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 134-35 (2d Cir. 2021); *see also In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 259 (2d Cir. 2023) ("Our court has repeatedly followed the first-step rule in the antitrust context."); *Schwab*

*Short-Term Bond Mkt. Fund* v. *Lloyds Banking Grp. PLC*, 22 F.4th 103, 116 (2d Cir. 2021) (under the first step rule, "injuries that happen at the first step following the harmful behavior are considered proximately caused by that behavior").   "The first-step rule requires some direct relation between the injury asserted and the injurious conduct alleged.  Under the rule, injuries that happen at the first step following the harmful behavior are considered proximately caused by that behavior.  Accordingly, directness in the antitrust context means close in the chain of causation." *In re Am. Express*, 19 F.4th at 139-40.

The Complaint does not allege injury to Plaintiffs at the first step or steps in the purported chain of causation because the first steps involve fees that third-party sellers offering products in Amazon's store pay to Amazon and prices that third-party sellers set for the goods they offer in Amazon's store, and Plaintiffs' alleged injuries do not occur until they make purchases outside of Amazon's store—in the case of Mr. Mbadiwe from Walmart and in the case of Mrs. Miller from Sephora.   The alleged causal chain between the fees paid by sellers in Amazon's store and Plaintiffs' claimed injury at the time of purchase outside of Amazon's store include the following steps.  *First*, Amazon allegedly charges third-party sellers excessive fees and commissions.  FAC ¶¶ 12, 40-44.  *Second*, Amazon's fees and commissions cause third-party sellers to charge higher prices in Amazon's store.  *Id.* ¶¶ 12, 69-70.  *Third*, through the Parity Provision, Amazon allegedly prohibits third-party sellers from charging higher prices to Amazon customers than they do to customers in other stores.  *Id.* ¶¶ 50-52.  *Fourth*, because of the higher prices charged by third-party sellers in Amazon's store, other retailers, like Walmart and Sephora, charge higher prices than they would otherwise charge.  *Id.* ¶¶ 11-16, 95.

### 2.      Plaintiffs' Umbrella Theory Violates *AGC.*

Plaintiffs' antitrust standing necessarily depends on what is called an umbrella theory— that is, "a plaintiff injured by dealing with a non-defendant by virtue of a defendant's raising of

prices in the market as a whole." *Sonterra Capital Master Fund Ltd.* v. *Barclays*, 366 F. Supp. 3d 516, 533 (S.D.N.Y. 2018).[4]   The Second Circuit has made clear that a claim dependent on an umbrella theory violates the first-step rule because the chain of causation that is required for such a claim is too attenuated.   *In re Am. Express*, 19 F.4th at 141; *Schwab*, 22 F.4th at 116 (affirming dismissal of claims dependent on umbrella standing because of "attenuated nature of the causal chain").   Even Plaintiffs admit this theory "has *never been accepted* by the Second Circuit."   Pls.' Opp. to Mot. to Intervene at 10 n.3, ECF No. 29.   The weight of out-of-circuit authority likewise requires dismissal.   *E.g.*, *In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1340-41 (9th Cir. 1982) (rejecting umbrella theory); *Mid-West Paper Prods. Co.* v. *Cont'l Grp., Inc.*, 596 F.2d 573, 584-85 (3d Cir. 1979) (same); *In re Vitamins Antitrust Litig.*, 2001 WL 855463, at *4 (D.D.C. July 2, 2001) ("The overwhelming majority of recent court decisions that have addressed the viability of the 'umbrella' theory after [*AGC*] have rejected 'umbrella' claims").

---

[4]      In *Frame-Wilson* v. *Amazon.com, Inc.*, No. 2:20-cv-00424-RAJ (W.D. Wash.), a putative class action by purchasers outside of Amazon's store asserting federal antitrust claims, the court has not addressed umbrella standing because the plaintiffs in that case allege that they purchased from third-party sellers—alleged co-conspirators—outside of Amazon's store.   For antitrust standing in that case, the court therefore relied on the co-conspirator exception to *Illinois Brick*.   Here, Plaintiffs have distinguished their claims from those in *Frame*-Wilson, disclaiming that their claims are based on purchases from alleged co-conspirators.   As they explained:

> Finally, this action and *Frame-Wilson* seek recovery for different classes of purchasers. To qualify as a State Law Class Member, a person must have purchased a product from a "retail e-commerce channel other than the Amazon Platform *or the third-party seller's own website*," such as Walmart, and the product "must have been concurrently offered by an Amazon third-party seller on the Amazon Platform at substantially the same price as the product was offered on [said] retail e-commerce channel." FAC ¶ 97 (emphasis added). In *Frame-Wilson*, however, the FW National Class has been narrowed by the district court there to include only purchasers from allegedly conspiring third-party sellers, *see* FW SAC ¶ 3 ("the Court's order recognized that Plaintiffs who purchased directly from Amazon's alleged co-conspirator sellers had standing"); *Frame-Wilson v. Amazon.com, Inc*., 591 F. Supp. 3d 975, 984 (W.D. Wash. 2022), reconsideration denied, 20 Civ. 00424 (RAJ), 2022 WL 4240826 (W.D. Wash. Aug. 2, 2022), and not purchasers from non-conspiring retail platforms."

Pls.' Opp. to Mot. to Intervene at 5, ECF No. 29 (emphasis in original).   Plaintiffs' antitrust standing in this case therefore must depend on an umbrella theory.

The breathtaking scope of what Plaintiffs seek under their umbrella theory in this case magnifies the fatal defect. Plaintiffs assert that they have umbrella standing for over 500 million products sold in ecommerce by countless online retailers. FAC ¶¶ 3, 97. Under their theory, it is other online retailers—like Walmart, Target, Costco, Home Depot, Dollar Tree, and countless others—that choose to charge Plaintiffs supracompetitive prices, in the last step of the alleged multi-step chain. The speculative nature of Plaintiffs' theory of liability is based on millions of online sellers selling hundreds of millions of products, each with independent pricing, suppliers, costs and other conditions affecting the prices each seller charges for its products. Walmart, for example, set a price for the toothpaste and lotion that Mr. Mbadiwe purchased, *id.* ¶ 25, and Sephora set a price for the face cleanser that Mrs. Miller purchased, *id.* ¶ 26. Of course, the notion that a third-party seller's price on Amazon would determine Walmart's independent pricing decision itself is absurd. But even were it not, there are numerous steps and intervening factors—including the independent pricing decisions of Walmart and Sephora—that occurred between the Parity Provision that was applicable to goods that third-party sellers offered in Amazon's store and the prices that Mr. Mbadiwe paid Walmart for his toothpaste and lotion and Mrs. Miller paid Sephora for her face cleanser. For this reason, courts in this Circuit have consistently dismissed antitrust claims dependent on umbrella standing. *E.g.*, *In re Am. Express*, 19 F.4th at 141 (rejecting umbrella standing where plaintiffs were "allegedly injured when Amex's competitors, covered by Amex's price umbrella, raised their own prices"); *Schwab*, 22 F.4th at 116 (affirming dismissal of claims dependent on umbrella standing because of "attenuated nature of the causal chain").

### B. The Entire Complaint Fails Because the Named Plaintiffs Do Not Have Antitrust Standing Under Their State's Law.

Both named plaintiffs are residents of New York, FAC ¶¶ 25-26, and New York's second highest court has upheld a trial court decision adopting and applying the *AGC* factors to a claim

under the New York antitrust law, the Donnelly Act. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 260 (S.D.N.Y. 2019) (concluding New York would follow *AGC*, citing *Ho* v. *Visa U.S.A., Inc.*, 3 Misc. 3d 1105(A) (N.Y. Sup. Ct. Apr. 21, 2004), *aff'd* 16 A.D.3d 256 (N.Y. App. Div. 2005)); *accord Oliver* v. *Am. Express Co.*, 2020 WL 2079510, at *14 (E.D.N.Y. Apr. 30, 2020) (holding that "*AGC* factors apply to Plaintiffs' claim under New York's Donnelly Act" and dismissing for lack of antitrust standing); *Contant*, 2018 WL 1353290, at *4 (applying *AGC* factors to antitrust claim under New York law, explaining "New York's Supreme Court, Appellate Division, its second-highest court, endorsed the lower court's application of the *AGC* factors in an indirect-purchaser case").

The application of the *AGC* factors is also consistent with the requirement that the Donnelly Act "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *X.L.O. Concrete Corp.* v. *Rivergate Corp.*, 634 N.E.2d 158, 161 (N.Y. 1994); *accord SL-X IP S.à.r.l.* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2023 WL 2620041, at *4 n.4 (2d Cir. Mar. 24, 2023).

Because, as explained above, *AGC* does not permit umbrella standing, the named plaintiffs lack antitrust standing to pursue their claims under New York law.  "The fact that this action was brought as a putative class action does not salvage plaintiff's lack of antitrust standing." *Simon* v. *KeySpan Corp.*, 2011 WL 2135075, at *7 (S.D.N.Y. May 27, 2011).  The named plaintiffs must still individually have antitrust standing.  *Ross* v. *Am. Express Co.*, 35 F. Supp. 3d 407, 432-33 (S.D.N.Y. 2014) ("To maintain this suit, Plaintiffs must have both Article III standing and antitrust standing").  Without antitrust standing in their own right, the named plaintiffs cannot pursue claims on behalf of non-resident, putative class members under the laws of 28 other states, and thus the

Amended Complaint must be dismissed in its entirety.  *E.g.*, *Oliver*, 2020 WL 2079510, at *1, 14,

20 (dismissing New York resident plaintiff from case because claim arose under New York law

and plaintiff failed to show antitrust standing); *Epstein* v. *JPMorgan Chase & Co.*, 2014 WL

1133567, at *9 (S.D.N.Y. Mar. 21, 2014) ("If Plaintiff cannot establish standing, he cannot seek

relief on behalf of himself or any other member of the class.").

### C.   Plaintiffs' Claims Under 27 State Laws Must Be Dismissed for Lack of Antitrust Standing.

Courts in all but two of the states covered by Plaintiffs' claims would not accept the

umbrella theory on which their claims depend.  These states have either expressly adopted *AGC*,

have statutory mandates that their antitrust laws be interpreted in accordance with the federal

antitrust laws, have made proximate causation (an aspect of *AGC*) an element of antitrust standing,

and/or prohibit standing by non-purchasers.  Accordingly, Counts 1-14, 16-18, 20-26, and 28-31

must be dismissed.  *See* Appendix A.

### 1.   Connecticut, Illinois (Antitrust Act), Iowa, Maine, Maryland, Michigan, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, and Wisconsin Have Adopted *AGC*.

Courts in these 13 states in addition to New York have adopted *AGC*, and would therefore

reject Plaintiffs' reliance on an umbrella theory dependent on a multi-step causal chain, with

alleged injury at the last step, in violation of *AGC*'s first-step rule.

Connecticut. *Tremont Pub. Advisors, LLC* v. *Conn. Res. Recovery Auth.*, 217 A.3d 953,

964-66 (Conn. 2019): "to bring a claim under the antitrust act, a plaintiff must adequately plead

both that it has suffered an antitrust injury and that it is an efficient enforcer of the antitrust act."

Illinois (Antitrust Act).  *Cnty. of Cook* v. *Philip Morris, Inc.*, 817 N.E.2d 1039, 1047 (Ill.

App. Ct. 2004): quoting *AGC* and holding "the remoteness doctrine applies to the plaintiffs' second

amended complaint."

<u>Iowa</u>.  *Southard* v. *Visa U.S.A. Inc.*, 734 N.W.2d 192, 198 (Iowa 2007): "We think the *AGC* test is more reflective of the legal context within which the Iowa legislature enacted Iowa's competition law.  Therefore, we apply the *AGC* factors to determine whether the plaintiffs may recover under Iowa law."

<u>Maine</u>.  In *Knowles* v. *Visa U.S.A., Inc.*, 2004 WL 2475284, at *5-6 (Me. Super. Ct. Oct. 20, 2004), the court applied the *AGC* factors, except the directness factor (in light of Maine's *Illinois Brick* repealer), in a case involving indirect purchasers.  In *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510 (N.D. Ill. 2019), the court concluded that it did not "see any basis for concluding that the Maine Supreme Judicial Court would apply *AGC* so narrowly" and applied all of the *AGC* factors to plaintiffs' claim.  *Id.* at 543; *accord Breiding* v. *Eversource Energy*, 344 F. Supp. 3d 433, 459 (D. Mass. 2018) (applying *AGC* factors to Maine antitrust claim).[5]

<u>Maryland</u>.  *Seafarers Welfare Plan* v. *Philip Morris*, 27 F. Supp. 2d 623, 633 (D. Md. 1998): for claims under Maryland's antitrust statute, "Absent some direct relation between the injury asserted and the allegedly unlawful conduct, the requirements of proximate cause are not satisfied."  *Accord Oliver* v. *Am. Express Co.*, 2021 WL 386749, at *3 (E.D.N.Y. Feb. 1, 2021) ("Maryland courts would apply the *AGC* factors to claims brought under Maryland's antitrust law.").

---

[5]       In *In re Keurig*, this Court determined that *Knowles*'s "application of *AGC* is not in lockstep with federal precedents" because *Knowles* disregarded the directness factor as a result of Maine's *Illinois Brick* repealer and concluded: "Given that the directness factor weighs particularly heavily against the IPPs' antitrust standing under *AGC*, I am unable to conclude that the highest court in Maine would apply *AGC* to preclude the IPPs' antitrust standing under Maine law."  383 F. Supp. 3d at 259-60.  The portion of *Keurig* addressing the interplay between *Illinois Brick* and *AGC* does not apply here because Plaintiffs' claims are not based on direct or indirect purchases from Amazon; they are based on purchases from retailers other than Amazon.  Amazon is not aware of any Maine case affording non-purchasers of a defendant with antitrust standing.

Michigan.  *In re Keurig*, 383 F. Supp. 3d at 260: concluding Michigan Supreme Court would apply *AGC*, citing *Stark* v. *Visa*, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004).

Nebraska.  *Kanne* v. *Visa U.S.A., Inc.*, 723 N.W.2d 293, 297-301 (Neb. 2006): applying *AGC* and concluding: "Because appellants' injuries are derivative and remote, they lack standing to bring their antitrust claims."

Nevada.  *Recycling & Salvage, Ltd.* v. *Reno Disposal Co.*, *Inc.*, 423 P.3d 605, 607-08 (Nev. 2018): concluding "appellants' alleged harm is insufficient to demonstrate antitrust standing" based on the *AGC* factors.

New Mexico.  *In re Keurig*, 383 F. Supp. 3d at 260: "the New Mexico Supreme Court would apply the *AGC* factors," citing *Nass-Romero* v. *Visa*, 279 P.3d 772, 778-81 (N.M. Ct. App. 2012).

North Carolina.  *Crouch* v. *Crompton Corp.*, 2004 WL 2414027, at *18 (N.C. Super. Ct. Oct. 28, 2004): "North Carolina courts would apply a multifactor test to determine standing in indirect purchaser cases.  The requirements would recognize indirect purchaser standing, but engraft upon the statute the requirements of standing enunciated in *AGC*, modified to recognize the right to recover for injury created by statute for indirect purchasers."[6]

---

[6]      In *Teague* v. *Bayer AG*, 671 S.E.2d 550 (N.C. Ct. App. 2009), the court held that, in that case, the "*AGC* factors do not apply in determining which indirect purchasers have standing to sue under the North Carolina antitrust statutes." *Id.* at 557.  Significantly, the court distinguished cases applying *AGC*, where—as here—the plaintiffs were not indirect purchasers "in that the plaintiffs did not end up with a product supplied by the defendants." *Id.* at 556. Following *Teague*, in *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *15 (N.D. Ill. June 29, 2015), the court explained that "*Teague* cannot be interpreted as a wholesale rejection of *AGC*," and that the "densely-packed and well-supported opinion" in *Crouch* is "more persuasive."  The court concluded: "Based predominantly on *Crouch* and the distinguishing facts of *Teague*, the Court is persuaded that the North Carolina Supreme Court would adopt and apply the *AGC* factors, at least in modified form." *Id.*

North Dakota.  *Beckler* v. *Visa U.S.A., Inc.*, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004): "Plaintiffs' alleged injuries do not satisfy antitrust standing principles identified in [*AGC*]."  *Accord Oliver*, 2021 WL 386749, at *7.[7]

South Dakota.  *In re Keurig*, 383 F. Supp. 3d at 261-62: holding that "the South Dakota Supreme Court would apply *AGC* to determine antitrust standing under South Dakota law," citing *Cornelison* v. *Visa U.S.A., Inc.*, 2004 WL 6331252 (S.D. Cir. Ct. Sept. 28, 2004).

Wisconsin.  *Oliver*, 2021 WL 386749, at *5, citing *Strang* v. *Visa U.S.A., Inc.*, 2005 WL 1403769, at *2-5 (Wis. Cir. Ct. Feb. 8, 2005): "*Strang* . . . gives a reasoned analysis for why the *AGC* factors apply, and the court sees no reason to doubt that other Wisconsin courts would follow suit."[8]

### 2. Hawaii, Iowa, Kansas, Nebraska, Nevada, New Mexico, Oregon, Rhode Island, and West Virginia Require Their Antitrust Laws to Be Read in Harmony with Federal Antitrust Law.

The following nine states require that their antitrust laws be construed in harmony with judicial interpretations of federal antitrust law.  Because no rule of decision permits umbrella standing in these states, courts in these states would adopt and apply *AGC* and federal law on

---

[7]     In *In re Keurig*, 383 F. Supp. 3d at 260-61, this Court did not follow *Beckler* because the decision only referenced the factors "in passing," with the decision turning on the alleged injury being "too remote."  As explained above, the first *AGC* factor, which asks "whether the violation was a direct or remote cause of the injury," *In re Am. Express*, 19 F.4th at 139, is the one *AGC* factor which "must be met in every case," *In re Aluminum Warehousing*, 520 F. Supp. 3d at 474.  Because the court in *Beckler* concluded that the plaintiffs did not satisfy this first factor, it was not necessary to reach the other factors.

[8]     In *In re Keurig*, 383 F. Supp. 3d at 262-63, this Court did not follow *Strang* because it did not address *Obstetrical & Gynecological Assocs. of Neenah, S.C.* v. *Landig*, 384 N.W.2d 719 (Wis. Ct. App. 1986).  The court in *Oliver* explained that *Landig* involved a different provision of the antitrust laws (which is also not at issue in this case)—regarding rebates—and the court in *Landig* did not address *AGC*, but rather whether a "target area" test applied. 2021 WL 386749, at *5.  In concluding that the target area test did not apply, the *Landig* court explained that under federal law "only persons directly injured by reason of intent to restrain competition can seek damages," but there "is no need to make the direct-indirect distinction under" Wisconsin law, which "explicitly allows any person injured directly *or indirectly* to sue upon this statute."  *Landig*, 384 N.W.2d at 723-24 (emphasis in original).  As explained *supra* at page 7-8, that a plaintiff is an indirect purchaser does not eliminate the proximate causation requirement for antitrust standing; courts therefore apply the *AGC* factors to indirect purchaser claims.  *E.g.*, *Ho*, 16 A.D.3d at 257.  Here, Plaintiffs are not indirect purchasers of goods from Amazon's store; they are non-purchasers.

umbrella standing.  *E.g.*, *In re Keurig*, 383 F. Supp. 3d at 264 (concluding state court would apply *AGC* factors in accordance with federal precedent where harmonization provision included "mandatory language" and there was a "lack of any contravening state authority"); *F.T.C.* v. *Mylan Labs.*, 62 F. Supp. 2d 25, 42 (D.D.C. 1999) ("Because the States do not suggest an independent state law approach to the 'umbrella standing' theory and because state statutes refer to federal antitrust law for guidance, this portion of defendants' motion is granted under the state laws for the same reasons that it is granted under federal law").

Hawaii.   The antitrust law of Hawaii "shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, except that lawsuits by indirect purchasers may be brought as provided in this chapter."  Hawaii Rev. Stat. § 480-3.

Iowa.   Iowa's antitrust law "shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter."  Iowa Code § 553.2.

Kansas.   Kan. Stat. Ann. §50-163(b) provides that "the Kansas restraint of trade act shall be construed in harmony with ruling judicial interpretations of federal antitrust law by the United States Supreme Court."

Nebraska.   "When any provision of sections 59-801 to 59-831 and sections 84-211 to 84-214 or any provision of Chapter 59 is the same as or similar to the language of a federal antitrust law, the courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts."  Neb. Rev. Stat. § 59-829.

Nevada.   "The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."  Nev. Rev. Stat. § 598.050; *In re Keurig*, 383 F. Supp. 3d at 264 ("Given the mandatory language of Nevada's harmonization provision and

the lack of any contravening state authority, I conclude that the Supreme Court of Nevada would apply the AGC factors in accordance with federal precedent.").

New Mexico.  "Unless otherwise provided in the Antitrust Act, the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws.  This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices."  N.M. Stat. Ann. § 57-1-15.

Oregon.  "The decisions of federal courts in construction of federal law relating to the same subject shall be persuasive authority in the construction of ORS 646.705 to 646.805 and 646.990."  Or. Rev. Stat. § 646.715(2).

Rhode Island.  The "Rhode Island Antitrust Act *must* be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable, except where provisions of this chapter are expressly contrary to applicable federal provisions as construed." *ERI Max Entm't, Inc.* v. *Streisand*, 690 A.2d 1351, 1335 n.1 (R.I. 1997) (emphasis in original).  Courts have applied "federal antitrust standing analysis to a state antitrust claim under Rhode Island law."  *Oliver*, 2021 WL 386749, at *4.

West Virginia.  The West Virginia Antitrust Act provides: "This article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes."  W. Va. Code § 47-18-16.[9]

---

[9]     In *In re Keurig*, 383 F. Supp. 3d at 364, this Court concluded that, notwithstanding West Virginia's harmonization statute, the West Virginia legislature's adoption of an *Illinois Brick* repealer statute and its mandate that the West Virginia antitrust statute be "liberally construed" "suggests that the Supreme Court of West Virginia would apply *AGC* more liberally than federal precedent would require."  As explained above, the *AGC* factors are "analytically distinct" from *Illinois Brick*.  Construing the West Virginia Antitrust Act in harmony with federal interpretations of the Sherman Act would require that Plaintiffs allege and establish proximate causation—the one essential *AGC* factor.

**3.     Arkansas, Florida, Illinois (Deceptive Trade Practices), Minnesota, Mississippi, North Carolina, and Utah Require Proximate Causation for Antitrust Standing.**

Although courts under these seven state laws have not expressly adopted or applied *AGC*, the laws in each of them require a plaintiff to establish that their alleged injury was proximately caused by the defendant's anticompetitive conduct.  Proximate causation is, as explained above, the first of the efficient enforcer factors set forth in *AGC.  E.g.*, *In re Platinum & Palladium*, 61 F.4th at 259-60.  Plaintiffs' umbrella theory—dependent on a multi-step causal chain, involving the intervening pricing decisions of third-party sellers and retailers outside of Amazon's store— does not satisfy the proximate causation requirement.  *E.g.*, *In re London Silver Fixing, Ltd. Antitrust Litig.*, 332 F. Supp. 3d 885, 907 (S.D.N.Y. 2018)  ("The fact that Plaintiffs are umbrella purchasers makes the causal connection between their injury and Defendants' manipulation even less clear.").  Umbrella standing would therefore not be recognized in these states.

Arkansas.  The Arkansas Deceptive Trade Practices Act ("ADTPA") requires that "a claimant must prove individually that he or she suffered an actual financial loss proximately caused by his or her reliance on the use of a practice declared unlawful under this chapter."  Ark. Code. Ann. § 4-88-113(f)(2).  Before this 2017 amendment, courts construed the prior statutory language as requiring proximate causation.  *E.g.*, *Ashley County Ark.* v. *Pfizer Inc.*, 552 F.3d 659, 666 (8th Cir. 2009) (ADPTA "necessarily includes a proximate cause element"); *Indep. Cnty.* v. *Pfizer, Inc.*, 534 F. Supp. 2d 882, 888 (E.D. Ark. 2008) (dismissing claim under ADTPA based on causation issues and overall remoteness of the injury where there was "no *direct link* between Defendants' products and Plaintiffs' damages" (emphasis in original)).

Florida.  Causation under the Florida Deceptive and Unfair Trade Practices Act "must be direct, rather than remote or speculative."  *Stewart Agency, Inc.* v. *Arrigo Enters., Inc.*, 266 So.3d 207, 213 (Fla. Dist. Ct. App. 2019).

20

Illinois (Deceptive Trade Practices Act).  *Labella Winnetka, Inc.* v. *Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 150 (N.D. Ill. 2009): deception must be "the proximate cause of the claimant's alleged injury."  *Accord Siegel* v. *Shell Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("to prevail under ICFA, a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury"); *Avery* v. *State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the Act.").

Minnesota.  "Standing under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law."  *Lorix* v. *Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007).  The *Lorix* court also cited, as an example of a plaintiff who is "most likely too remote and speculative to afford standing," consumers who alleged "that the overcharges forced upon merchants by Visa and Mastercard were passed on to consumers in the form of higher prices on essentially every good sold in the state of Minnesota, even those purchased with cash."  *Id.* at 632 ("we do not believe that the legislature intended to create 'consumer standing' by allowing every person in the state to sue for an antitrust violation simply by virtue of his or her status as a consumer").

Mississippi.  In dismissing antitrust claims, the court held: "We are not persuaded by Owens Corning's argument that proximate cause is found under the *Holmes* test in the present case."  *Owens Corning* v. *R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 337-40 (Miss. 2004).

North Carolina.  "The North Carolina Supreme Court has likewise held that proximate cause is required to recover under the state's antitrust law."  *Contant*, 2018 WL 1353290 at *7 (citing *Lewis* v. *Archbell*, 154 S.E. 11, 12 (N.C. 1930)).

Utah.  *Gammon* v. *Federated Milk Producers Ass'n, Inc.*, 360 P.2d 1018, 1021 (Utah 1961), *rejected on other grounds by Leigh Furniture & Carpet Co.* v. *Isom*, 657 P.2d 293, 303

(Utah 1982): "In order to recover treble damages, not only must a violation of the anti-trust provisions of the law be established, but also that the acts constituting such a violation proximately caused the damages of which complaint is made."

### 4. Arizona, North Dakota, and Vermont Prohibit Non-Purchaser Standing.

Arizona, North Dakota, and Vermont law all provide that a plaintiff lacks antitrust standing where, as here, the plaintiff is a non-purchaser—*i.e.*, not a direct or indirect purchaser of the defendant. *Oliver*, 2021 WL 386749, at *7 (citing *Consiglio-Tseffos* v. *Visa USA, Inc.*, 2004 WL 3030043, at *1 (Ariz. Super. Ct. Dec. 8, 2004); *Beckler*, 2004 WL 2475100, at *4); *Fucile* v. *Visa U.S.A., Inc.*, 2004 WL 3030037, at *3 (Vt. Super. Ct. Dec. 27, 2004).[10]

### 5. The New Hampshire Supreme Court Would Also Apply *AGC* and Require Proximate Causation.

While the New Hampshire Antitrust Act does not have a provision that mandates it be construed in harmony with federal law, the New Hampshire Supreme Court has stated: "While judicial review of our antitrust law is sparse, both we and the United States District Court for the District of New Hampshire have looked to federal law when construing RSA chapter 356." *Minuteman, LLC* v. *Microsoft Corp.*, 795 A.2d 833, 836 (N.H. 2002). The court further explained: "By including RSA 356:14 in the statute, the legislature expressly encouraged a uniform

---

[10]       In *In re Keurig*, 383 F. Supp. 3d at 262, this Court did not follow the *Fucile* court's adoption of the *AGC* factors based on *Elkins* v. *Microsoft Corp.*, 817 A.2d 9 (Vt. 2002)), which held that "indirect purchasers of a good or service from the defendant" had standing to assert an antitrust claim under the Vermont Consumer Fraud Act ("VCFA"). *Elkins*, 817 A.2d at 20. Unlike in *Keurig*, where, as here, the defendant plays no role at any level of the distribution chain, courts have rejected VCFA claims. *E.g.*, *Picket Fence Preview, Inc.* v. *Zillow, Inc.*, 2021 WL 3680717, at *5 n.2 (D. Vt. Aug. 19, 2021) ("Plaintiff's reliance on *Elkins* v. *Microsoft Corp.* for the proposition that it need not purchase a product from Defendant to bring a VCPA claim is misplaced. . . . Plaintiff does not allege that it is an indirect consumer or that it purchased, leased, contracted for, or otherwise agreed to pay consideration for any of Defendant's goods or services."); *Bellwether Cmty. Credit Union* v. *Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1098 (D. Colo. 2018) (dismissing VCFA claim where, "unlike *Elkins*, Bellwether does not suggest that Chipotle is merely a company further up the supply chain, or that Bellwether's members were a mere intermediary in the purchase of a good or service that flowed from Chipotle to Bellwether").

construction with federal antitrust law." *Id.* In *Minuteman*, the New Hampshire Supreme Court favorably cited *Donovan* v. *Digital Corp.*, 883 F. Supp. 775, 785 (D.N.H. 1994), as an example of the federal district court in New Hampshire looking to federal precedent. 795 A.2d at 836. In *Donovan*, the court applied the *AGC* factors to an antitrust claim under the New Hampshire Antitrust Act, explaining that "the court applies the federal antitrust standing requirements as this promotes the uniform construction of antitrust laws as contemplated by RSA § 356:14." 883 F. Supp. at 785. The New Hampshire Supreme Court would therefore most likely look to *AGC* in deciding whether antitrust standing exists and, on that basis, hold that Plaintiffs fail to satisfy the *AGC* factors. *E.g.*, *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10 (E.D. Mich. Apr. 9, 2013) (applying *AGC* factors to New Hampshire antitrust claim).[11]

## II.    Plaintiffs Fail to Allege an Unlawful *Per Se* Horizontal Agreement.

Plaintiffs allege in conclusory fashion that the Parity Provision constituted a *per se* unlawful horizontal agreement. FAC ¶ 17.[12] Allegations of a *per se* violation are merely a "legal conclusion that the Court does not accept as true on a motion to dismiss." *Integrated Sys. & Power, Inc.* v. *Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 290 (S.D.N.Y. 2010). Plaintiffs must plausibly allege the existence of a *per se* Section 1 violation in order to survive a motion to dismiss. *Id.*; *see also Stop & Shop Supermarket Co.* v. *Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004) ("Whether a plaintiff's alleged facts comprise a per se claim is normally a question of legal

---

[11]    Although the claims under Tennessee and Missouri law do not fail for lack of antitrust standing, they fail for other reasons addressed in Section III below.

[12]    Although Plaintiffs bring only state law claims, they rely almost exclusively on federal precedent for their *per se* allegations. *E.g.*, FAC ¶¶ 99-101. They likewise do not identify specifically *which* state antitrust laws recognize *per se* violations. *Id.* ¶ 102 (alleging "certain state antitrust laws" recognize *per se* violations). And the one state case Plaintiffs cite looks to federal precedent for *per se* analysis. *E.g.*, *Wellmark, Inc.* v. *Iowa Dist. Ct. for Polk Cnty.*, 890 N.W.2d 636, 639 (Iowa 2017) (quoting *Texaco Inc.* v. *Dagher*, 547 U.S. 1, 5 (2006)). Accordingly, federal case law is dispositive of this issue.

characterization that can often be resolved by the judge on a motion to dismiss").  Plaintiffs fail to do so, which is another, separate reason to dismiss all of their Complaint.

The Parity Provision does not fit the narrow category of agreements that the caselaw condemns as *per se* unlawful.  As two courts have already held, Amazon's agreements with third-party sellers may not be judged under *per se* liability.  *Frame-Wilson* v. *Amazon.com, Inc.*, 591 F. Supp. 3d 975, 984-88 (W.D. Wash. 2022) (dismissing plaintiffs' section 1 *per se* claim because relationship between online marketplace and its third-party sellers is vertical and vertical relationships are subject to rule of reason); *De Coster* v. *Amazon.com, Inc.*, 2023 WL 372377, at *4 (W.D. Wash. Jan. 24, 2023) (same)*; Frame-Wilson* v. *Amazon.com, Inc.*, 2023 WL 2632513, at *4-5 (W.D. Wash. March 24, 2023) (dismissing Section 1 *per se* claim in plaintiffs' further amended complaint without leave to amend for failure to allege a *per se* claim).

Courts have identified a narrow category of agreements with no "redeeming virtue," *Nw. Wholesale Stationers, Inc.* v. *Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985), including naked agreements "among competitors to fix prices," *Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*, 551 U.S. 877, 886 (2007).  These kinds of agreements are unlawful *per se*, that is, unlawful without the need to prove anticompetitive effects in a defined market.  *Ohio* v. *Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018).  All other agreements "are judged under the rule of reason," which requires an "assessment of market power and market structure to assess the restraint's actual effect on competition." *Id.* at 2284.  Further, courts decide that certain categories of agreements are *per se* unlawful only after developing "considerable experience with the type of restraint at issue" that allows the court to "predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin*, 551 U.S. at 886-87 (2007); *see also*

*Broad. Music Inc.* v. *Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9-10 (1979).  There is no record of any condemnation by courts of the type of provision at issue in this case.

Rather, courts that have considered competitive price provisions favoring consumers, sometimes referred to as a type of most favored nation provision ("MFN"), have held that, as a matter of law, such provisions do not violate the antitrust laws.  In *Kartell* v. *Blue Shield of Mass, Inc.*, for example, then-Judge Stephen Breyer upheld as a matter of law a type of MFN, an insurer's competitive price provision called "balance billing," that prohibited doctors from charging consumers fees in addition to what the insurer paid the doctor.  749 F.2d 922, 928-29 (1st Cir. 1984).  The court held that such a provision that protects consumers from higher prices could not be a violation of the antitrust laws: "how can it be unlawful for [a buyer] to insist that no additional charge be made" to the insured consumer?  *Id.*  As Judge Breyer further noted, "it is not surprising the courts have unanimously upheld contracts analogous in various degrees to the one at issue here—contracts in which those who directly provide goods or services to insureds have agreed to cap or forego completely additional charges to those" consumers.  *Id.* at 925-26; *see also Tennessean Truckstop, Inc.* v. *NTS, Inc.*, 875 F.2d 86, 90 (6th Cir. 1989) (granting motion to dismiss where credit card company's policy "merely sought to limit the differential between the prices quoted to its customers and the prices quoted to [other] customers," which was "obviously a proconsumer device").

The allegation that Amazon sells products to consumers as a retailer, while also providing services to third-party sellers, does not bring the challenged provision within the scope of any *per se* rule.[13]  Similar to the related cases pending in the Western District of Washington, Plaintiffs are

---

[13]     FAC ¶ 17 ("Amazon and its third-party sellers were competitors in the online retail markets in the States because Amazon sold millions of its own products as a first-party seller directly in competition with the products sold by the third-party sellers both on and off the Amazon Platform.").

challenging a "vertical agreement between third-party sellers and their host platform, Amazon.com," *Frame-Wilson*, 591 F. Supp. 3d at 986, which "connotes a vertical relationship, one in which Amazon is not competing with third-party sellers, but rather setting requirements as a condition for platform access." *Id.* at 987.[14]  Even if the Parity Provision constituted some sort of "hybrid arrangement," the proper analysis is rule of reason, not *per se*.  *Id.*; *see also De Coster*, 2023 WL 372377, at *4 ("Plaintiffs allege an unfavorable agreement between Amazon and third-party retailers who use its marketplace, not between Amazon and competing marketplaces.  That Amazon and the third-party retailers sometimes compete within the Amazon marketplace adds a layer of complexity, it does not clarify liability.  *Per se* liability is not available on these facts."); *accord In re Google Digital Advertising Antitrust Litig.*, 2022 WL 4226932, at *16 (S.D.N.Y. 2022) ("The Court concludes that this hybrid relationship between Google and Facebook is predominately vertical and properly scrutinized under the rule of reason."); *2238 Victory Corp.* v. *Fjallraven USA Retail*, 2021 WL 76334, at *5 (S.D.N.Y. 2021) ("Because the Complaint describes a mixed vertical and horizontal relationship between Fjallraven and Netrush, any agreement between them is scrutinized under the rule of reason and is not categorized as *per se* unlawful under the Sherman Act.").

### III.   Plaintiffs' Claims Fail for Additional Reasons.

The claims under the laws of several states—Tennessee, Kansas, New York, New Hampshire (Consumer Protection Act claim), Utah, Arkansas, and Missouri—all fail for reasons other than antitrust standing.

---

[14]      FAC ¶ 95 ("Absent the Price Parity Restriction, rival platforms would have been incented to compete and would have competed with Amazon by lowering fees charged to third-party sellers, thus allowing third-party sellers to lower their prices relative to the prices listed for their products on the Amazon Platform.").

A.   **The Antitrust Laws of Tennessee, Kansas, and New York Cover Only Concerted Action, Not Unilateral Conduct, and Plaintiffs Only Challenge Amazon's Unilateral Adoption of the Parity Provision.**

The Sherman Act addresses both agreements that unreasonably restrain trade (Section 1) and single-firm monopolization or attempted monopolization (Section 2).  Pleading an agreement in restraint of trade requires allegations of a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co.* v. *Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984).  "Even where a single firm's restraints directly affect prices and have the same economic effect as concerted action might have, there can be no liability under § 1 in the absence of agreement." *Fisher* v. *City of Berkeley, Cal.*, 475 U.S. 260, 266 (1986).

Not all state antitrust laws address both concerted action (agreements in restraint of trade) and single-firm conduct (monopolization and attempted monopolization).  The antitrust laws of Tennessee, Kansas, and New York only address concerted action that unreasonably restrains trade—not monopolization or attempted monopolization.  *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 415-16 (E.D. Pa. 2009) (dismissing claim under Tennessee antitrust law based on unilateral conduct); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1108-09 (N.D. Cal. 2007) (same); *Smith* v. *Philip Morris Cos*., 335 P.3d 644, 662-67 (Kan. Ct. App. 2014) (under Kansas law, "a plaintiff must show more than unilateral pricing activities"); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 421 (D.N.J. 2018) ("The case law as well as the plain language of the Kansas, New York, and Tennessee antitrust statutes require concerted action between two parties"; dismissing claims under these laws based on "unilateral conduct"); *Global Reinsurance Corp.- U.S. Branch* v. *Equitas Ltd.*, 969 N.E.2d 187, 192 (N.Y. Ct. App. 2012) ("An antitrust claim under the Donnelly Act . . . must allege both concerted action by two or more entities and a consequent restraint of trade within an identified relevant product market.").

27

While the Parity Provision was contained in Amazon's Business Solutions Agreements with third-party sellers, that is not enough to allege an "agreement" constituting concerted action. It is the substance of the agreement that matters.  The Business Solutions Agreements, by their terms, are not agreements between Amazon and each third-party seller reflecting a "conscious commitment to a common scheme to achieve an unlawful objective." *Monsanto*, 465 U.S. at 752. They reflect nothing more than the assent by third-party sellers to Amazon's terms and conditions for offering goods in Amazon's store.  Courts routinely find no concerted action where, as here, the claim rests only on one party's establishment or enforcement of contract terms that another party is required to follow.  *E.g.*, *Baar* v. *Jaguar Land Rover N. Am., LLC*, 295 F. Supp.3d 460, 465 (D.N.J. 2018) (dismissing restraint of trade claim where car manufacturer "unilaterally implemented" no-export policy and "required their dealers to enforce it" or face termination as a dealer); *Sambreel Holdings LLC* v. *Facebook, Inc.*, 906 F. Supp. 2d 1070, 1076 (S.D. Cal. 2012) (holding provision in Facebook's agreements with app developers requiring them to use only approved advertising partners was insufficient "to support the allegation that there was a concerted effort among the Application Developers and Facebook," "as opposed to unilateral action on the part of Facebook").  The FAC alleges, as anticompetitive conduct, nothing more than the "establishment or enforcement" of terms by Amazon.  *Toscano* v. *Pro. Golfers Ass'n*, 258 F.3d 978, 984 (9th Cir. 2001).  It does not allege an agreement in restraint of trade, and Counts 9, 21, and 27 must be dismissed.

### B.  The New Hampshire Consumer Protection Act Claim Fails Because Plaintiffs Do Not Allege Any Proscribed Conduct That Occurred in New Hampshire.

The New Hampshire Consumer Protection Act ("CPA") makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce *within this state*."  N.H. Rev. Stat. Ann. § 358-A:2.  In *Lithium Ion*

*Batteries Antitrust Litig.*, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014), the defendants moved to dismiss the CPA claim based on price-fixing allegations on the ground that "the CPA proscribes only conspiratorial conduct occurring within the territorial limits of New Hampshire." *Id.* at *21. In granting the motion to dismiss the CPA claim, the court explained that "the CPA requires the proscribed conduct to occur within the state; merely selling a good in New Hampshire is not enough when the proscribed conduct occurs elsewhere." *Id.* at *22 (collecting cases).   Here, Plaintiffs allege only that there are class members residing in New Hampshire who purchased products at prices that were higher than they otherwise would have been because of the Parity Provision, but they do not allege any facts linking those prices to any "conspiratorial conduct" in the state of New Hampshire. *Id.* at *21.   Because Plaintiffs do not allege any proscribed conduct in New Hampshire, Count 19 must be dismissed. *E.g.*, *Province Lake Golf Enters., Inc.* v. *Phila. Indem. Ins. Co.*, 2020 WL 3799229, at *6 (D.N.H. July 7, 2020) (dismissing CPA claim where the complaint "merely states that meetings occurred and communications were received in New Hampshire, but it does not identify any specific conduct that occurred in New Hampshire that PLG claims was in violation of the" CPA); *Wilcox Indus. Corp.* v. *Hansen*, 870 F. Supp. 2d 296, 305 (D.N.H. 2012) (dismissing CPA claim with "simply no allegation that any offending conduct occurred in New Hampshire"); *Mueller Co.* v. *U.S. Pipe & Foundry Co.*, 2003 WL 22272135, at *6  (D.N.H. Oct. 2, 2003) (same).[15]

---

[15]       *Accord Miami Prod. & Chem Co.* v. *Olin Corp.*, 546 F. Supp. 3d 223, 240 (W.D.N.Y. 2021) (dismissing CPA claim where New Hampshire was not the "locus of the offending conduct"); *Nanometrics, Inc.* v. *Optical Sols., Inc.*, 2019 WL 1048253, at *7 (N.D. Cal. Mar. 5, 2019) (dismissing CPA claim because "most if not all of the relevant conduct is alleged to have occurred in California," not New Hampshire); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *18 (dismissing CPA claim where single New Hampshire plaintiff made purchases there, but the complaint failed to "allege that any unfair or deceptive act or practice took place in New Hampshire").

C.   **Plaintiffs Fail to State a Claim Under the Utah Antitrust Act Because They Are Not Citizens or Residents of Utah.**

"Under the Utah Antitrust Act [the "UAA"], 'a person who is a *citizen* of this state or a *resident* of this state' can bring a claim." *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 393 (D.N.J. 2018) (quoting Utah Code Ann. § 76-10-3109(1)(a)) (emphasis in original). "The majority of courts that have been presented with this statute require at least one Utah citizen or resident be a named plaintiff." *Id.*; *Miami Prods. & Chems.*, 546 F. Supp. 3d at 247 (dismissing claim under UAA where no named plaintiff was a Utah citizen or resident); *Sergeants Benevolent Ass'n Health & Welfare Fund* v. *Actavis, PLC*, 2018 WL 7197233, at *24 (S.D.N.Y. Dec. 26, 2018) (same). Because Plaintiffs do not allege that they are citizens or residents of Utah, Count 28 must be dismissed.

D.   **Plaintiffs' Arkansas Deceptive Trade Practices Claim Should Be Dismissed to the Extent It Is Based on Purchases After August 1, 2017, When Reliance Became an Essential Element of a Claim, Because Plaintiffs Have Not Alleged Reliance.**

An amended version of the ADTPA went into effect on August 1, 2017. Ark. Code Ann. § 4-88-113(f)(2). "Under this version, a plaintiff must prove that he or she suffered an actual financial loss proximately caused by his or her reliance on the use of a practice declared unlawful under this chapter." *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 152 (E.D.N.Y. 2008). "Reliance, however, was not an element of the prior version of the ADTPA." *Id.* at 153. The amendment to the ADTPA was prospective; accordingly, for purchases that took place after August 1, 2017, reliance is an essential element of an ADTPA claim. Plaintiffs have failed to allege any reliance on the use of a practice declared unlawful under the ADTPA. If the Court does not dismiss Plaintiffs' ADTPA claim (Count 2) for lack of antitrust standing, the ADTPA claim, to the extent it is based on purchases on or after August 1, 2017, must be dismissed. *E.g.*, *In re Interior Molded Doors Antitrust Litig.*, 2019 WL 4478734, at * 20 (E.D.

Va. Sept. 18, 2019) (dismissing ADTPA claims based on purchases occurring after August 1, 2017 for failure to allege reliance).

E.     **The Missouri Merchandising Practices Act Addresses Fraudulent Acts or Practices—Not Alleged Antitrust Violations.**

The Missouri Merchandising Practices Act ("MMPA") "protects consumers by expanding the common law definition of fraud to preserve fundamental honesty, fair play and right dealings in public transactions." *Watson* v. *Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 407 (Mo. 2014) (en banc). Unfair and deceptive practices subject to the MMPA must be "*in connection with the sale or advertisement*" of merchandise. *Id.* (emphasis in original). Plaintiffs do not allege any unfair or deceptive practice by Amazon in connection with the sale or advertisement of merchandise to Plaintiffs. Nor is Amazon aware of any Missouri court allowing an antitrust claim under the MMPA.[16] Accordingly, Count 15 under the MMPA must be dismissed.

IV.    **Many of Plaintiffs' Claims Are Completely or Substantially Time-Barred.**

"State statutes of limitations govern the timeliness of state law claims under federal diversity jurisdiction."[17] *Personis* v. *Oiler*, 889 F.2d 424, 426 (2d Cir. 1989). Therefore, state law governs the timeliness of Plaintiffs' claims, including what events commence or toll the limitations periods. *Id.* Because a federal court sitting in diversity "ordinarily must follow the choice-of-law rules of the State in which it sits," *Atl. Marine Constr. Co.* v. *U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013), the Court here must apply New York's choice-of-law rules, *e.g.*, *Stuart* v. *Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) ("a federal court sitting in New York must apply the New York choice-of-law rules"). New York's "borrowing" statute provides that, "when

---

[16]     It would be futile to grant Plaintiffs leave to amend to add a claim under the Missouri Antitrust Act. Mo. Rev. Stat. § 416.141 provides: "Sections 416.011 to 416.161 shall be construed in harmony with ruling judicial interpretations of comparable federal statutes." An antitrust claim would therefore fail for lack of antitrust standing.

[17]     Plaintiffs invoke this court's subject matter jurisdiction on the basis of diversity of citizenship under the Class Action Fairness Act ("CAFA"). FAC ¶ 21.

a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court *must apply the shorter limitations period*, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued."  *Stuart*, 158 F.3d at 627 (discussing N.Y. C.P.L.R. § 202).[18]  A "cause of action accrues where the plaintiff resides and sustains the economic impact of the loss, rather than where the defendant committed the wrongful acts."  *Vincent* v. *Money Store*, 915 F. Supp. 2d 553, 568 (S.D.N.Y. 2013).  Here, after including any potential tolling periods, 19 of Plaintiffs' claims—asserted on behalf of non-resident members of the alleged class—accrued in states with a shorter statute of limitations period than for a claim under New York's Donnelly Act.

> **A.** **Plaintiffs' Illinois and New Hampshire (Consumer Protection), and Kansas, Mississippi, and Tennessee (Antitrust) Claims Are Entirely Time-Barred as These States' 3-Year Limitations Period Has Expired, and No Tolling Doctrine Applies.**

Plaintiffs' claims under the consumer protection laws of Illinois and New Hampshire (Counts 7 and 19)[19] and the antitrust laws of Kansas, Mississippi, and Tennessee law (Counts 9, 14, and 27)[20] are subject to a three-year limitations period.  Amazon removed the Parity Provision from its agreements with third-party sellers in March 2019; accordingly, all claims with respect to the Parity Provision arose no later than March 2019, and the time period for filing claims relating to the Parity Provision expired in March 2022.  FAC ¶ 19.  Plaintiffs did not file suit until

---

[18]   "Put another way, CPLR 202 calls for a comparison of New York's 'net' limitations period, integrating all relevant New York extensions and tolls, and the foreign state's 'net' limitations period, with all foreign tolls and extensions integrated, and if the foreign limitations period is shorter, the foreign net period determines the timeliness of the action."  *Deutsche Bank Nat'l Tr. Co.* v. *Barclays Bank PLC*, 140 N.E.3d 511, 519 (N.Y. 2019).

[19]   815 Ill. Comp. Stat. Ann. 505/10a(e); N.H. Rev. Stat. Ann. § 358-A:3(IV-a).

[20]   Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49(1); *State of Tenn. ex. rel. Leech* v. *Levi Strauss & Co.*, 1980 WL 4696 (Tenn. Ch. Ct. Sept. 25, 1980) (holding antitrust actions are subject to the three-year statute of limitations in Tenn. Code §28-3-105(3)).  The relevant language from these statutory provisions is attached at Appendix B.

November 2022—eight months after the expiration of the applicable limitations period, so these counts must be dismissed as time-barred.

Plaintiffs try to get around this outcome by alleging that the limitations period was tolled based on the discovery rule, the continuing violation doctrine, fraudulent concealment, or the *American Pipe* doctrine, but none of these exceptions toll the limitations period.  FAC ¶ 122.

### 1.    The Discovery Rule Does Not Extend the Limitations Period.

"Under a discovery rule, the claim accrues when the plaintiff learns of the critical <u>facts</u> that he had been hurt and who has inflicted the injury."  *In re Bibox Grp. Holdings Ltd. Secs. Litig.*, 534 F. Supp. 3d 326, 339 (S.D.N.Y. 2021) (emphasis in original).   "By contrast, a plaintiff's ignorance of his legal rights does not receive identical treatment."  *Id.*[21]

Plaintiffs make no allegations explaining why they could not have discovered the factual basis for their claims within the limitations period with the exercise of even minimal diligence. This is an incurable defect.  The Parity Provision was in no way concealed; the provision was in Amazon's agreements with all third-party sellers until March 2019, and the existence of the Parity Provision was publicized in articles as early as 2013.  FAC ¶¶ 19, 53 & nn.16, 34, 35.   Plaintiffs also include allegations of a congressional investigation in or about 2019 during which the Parity Provision was discussed, FAC ¶ 19, and a 2018 letter from Senator Blumenthal to the U.S.

---

[21]     *See also Clay* v. *Kuhl*, 727 N.E.2d 217, 220 (Ill. 2000) ("Under the discovery rule, a party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused."); *Beane* v. *Dana S. Beane & Co., P.C.*, 7 A.3d 1284, 1289 (N.H. 2010) ("the discovery rule exception does not apply unless the plaintiff did not discover, and could not reasonably have discovered, either the alleged injury or its causal connection to the alleged negligent act"); *Redwing* v. *Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) ("Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of wrongful conduct."); *Friends Univ.* v. *W. R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980) ("Where the defendant does not occupy a fiduciary or confidential relationship toward the plaintiff, neither affirmative nor passive conduct of the defendant will constitute such a concealment as to prevent the running of the statute of limitations, where through reasonable diligence on his part he could have learned of the existence of his cause of action.").   "In order to claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury."  *Doe* v. *Roman Catholic Diocese of Jackson*, 947 So.2d 983, 986 (Miss. Ct. App. 2006).

Department of Justice and the Federal Trade Commission raising the Parity Provision, which he posted on the internet, *id.* ¶¶ 21 n.15, 77-78; the Complaint also cites articles from 2018 and 2019 describing the Parity Provision and its removal from Amazon's Business Solutions Agreements with third-party sellers, *id.* ¶¶ 19 n.16, 66 n.43.   Based on this and other publicly available information, a federal antitrust class action based on the Parity Provision was filed in March 2020—two and one-half years before Plaintiffs filed their original complaint.   Decl. of Steve Berman in Supp. of Mot. to Intervene, Ex. A (Class Action Complaint in *Frame-Wilson* v. *Amazon.com*, Inc.), ECF No. 21-1.   The Court can take judicial notice of this earlier-filed complaint.   *E.g.*, *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts").   This earlier-filed complaint, as well as the existence of publicly-available information about the Parity Provision as far back as 2013, foreclose tolling the limitations period based on the discovery rule.

## 2.     Plaintiffs Do Not Plausibly Allege Fraudulent Concealment.

In order to plead fraudulent concealment, Plaintiffs must allege facts demonstrating that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiffs seeks to have tolled."   *Koch* v. *Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012).[22]

---

[22]        The same requirements apply under state law.   *E.g.*, *Furbush* v. *McKittrick*, 821 A.2d 1126, 1130 (N.H. 2003) ("The fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of due diligence."); *Redwing* v. *Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 463 (Tenn. 2012) ("The plaintiff invoking the fraudulent concealment doctrine must allege and prove: (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by "withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry."); *Doe* v. *Popravak*, 421 P.3d 760, 769 (Kan. Ct. App. 2017) ("For fraudulent concealment to toll a statute of limitations or repose, the plaintiff must establish affirmative conduct by the defendant, distinct from any

"Where a plaintiff pleads fraudulent concealment, those allegations are subject to the particularity pleading requirements set for in Federal Rule of Civil Procedure 9(b)." *Gardner* v. *Sensio Inc.*, 2022 WL 17584273, at *8 (S.D.N.Y. Dec. 12, 2022). "To comply with Rule 9(b)'s heightened pleading standard in the context of alleging fraudulent concealment, a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Kyszenia* v. *Ricoh USA, Inc.*, 583 F. Supp. 3d 350 (S.D.N.Y. 2022).

Plaintiffs have not plausibly alleged fraudulent concealment, much less with the required specificity. This is also an incurable defect because, as explained above, there are no facts that could support a claim of concealment here and there is no reason why Plaintiffs could not have discovered with the exercise of minimal due diligence the alleged facts essential to their claims during the limitations period.

> **3.     The Continuing Violation Doctrine Does Not Apply to Plaintiffs' Claims Subject to a Three-Year Limitations Period.**

If a "defendant engages in a continuing violation, each new overt act that is part of the violation *restarts* the period of limitations" but "does not *permit* the plaintiff to recover for injuries *caused by acts that occurred before the limitations period*." *Iowa Pub. Emps.' Ret. Sys.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 340 F. Supp. 3d 285, 333 (S.D.N.Y. 2018). In other words, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Sonterra Capital Master Fund*

---

conduct supporting the cause of action itself, that prevented the plaintiff from bringing a timely lawsuit."); *Brown* v. *McKee*, 242 So.3d 121, 128 (Miss. 2018) (fraudulent concealment requires "two things—(1) some affirmative act or conduct that was done and prevented discovery of a claim, and (2) [] due diligence was performed on their part to discover it."); *Cahnman* v. *Timber Court LLC*, 196 N.E.3d 151, 167 (Ill. App. Ct. 2021) (fraudulent concealment not sufficiently alleged "when the plaintiff could have discovered the concealed information through ordinary diligence").

*Ltd.* v. *Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 566 (S.D.N.Y. 2017).  Because Amazon removed the Parity Provision from its agreements with third-party sellers in March 2019, there were no alleged overt acts during the limitations period; accordingly, the continuing violation doctrine does not apply.

### 4.   *American Pipe* **Tolling Does Not Apply.**

*American Pipe* tolling[23] provides that "the commencement of the original class suit tolls the running of the statute of limitations for all purported members of the class who make timely motions to intervene after the court has found the suit appropriate for class action status."  *China Agritech Inc.* v. *Resh*, 138 S. Ct. 1800, 1806 (2018).  In *China Agritech*, the Supreme Court held that, if class certification is denied, individual suits, but not class suits, may be filed thereafter with the benefit of *American Pipe* tolling.  Importantly for this case, the Court did not address whether a subsequent class action suit may be filed outside the limitations period and with the benefit of tolling before class certification is decided in the first-filed suit.  That is the situation here because, in the original federal class action suit filed in March 2020, a class certification motion has not yet been filed or decided.

Second, the "*American Pipe* case concerned the tolling of claims under a federal statute, the Sherman Act.  It did not purport to announce a rule that would apply to state law claims." *Vincent*, 915 F. Supp. 2d at 560.  Therefore, "a federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative action in another jurisdiction." *Casey* v. *Merck & Co.*, 653 F.3d 95, 100 (2d Cir. 2011).

---

[23]    The doctrine is based on the Supreme Court's decision in *Am. Pipe & Constr. Co.* v. *Utah*, 414 U.S. 538 (1974).

Illinois, Kansas, Mississippi, and Tennessee have expressly rejected class action cross-jurisdictional tolling.

Illinois.  *Portwood* v. *Ford Motor Co.*, 701 N.E.2d 1102, 1105 (Ill. 1998): "The Illinois statute of limitations is not tolled during the pendency of a class action in federal court."

Kansas.  *Seaboard Corp.* v. *March Inc.*, 284 P.3d 314, 322 (Kan. 2012): "Kansas does not have any tolling provisions that apply during the pendency of an action."[24]

Mississippi.  *Boone* v. *Citigroup*, *Inc.*, 416 F.3d 382, 393 (5th Cir. 2005): holding limitations period was not tolled as to Mississippi statutory and common law claims based on class action commenced against same defendants in Arizona.  *American Pipe* tolling would also be contrary to Mississippi law, which does not recognize class actions.  *Id.*

Tennessee.  *Maestras* v. *Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000): holding action in federal court in Pennsylvania did not toll Tennessee limitations period and declining "to adopt cross-jurisdictional tolling in Tennessee."

New Hampshire has not addressed cross-jurisdictional or *American Pipe*-style tolling.  Federal courts generally do not "import cross-jurisdictional tolling into the law of a state that has not ruled on the issue."  *Vincent*, 915 F. Supp. 2d 553, 569-70; *Wilkins* v. *Genzyme Corp.*, 2022 WL 4237528, at *14 (D. Mass. Sept. 14, 2022) (same); *Coe* v. *Philips Oral Healthcare Inc.*, 2014 WL 5162912, at *2 (W.D. Wash. Oct. 14, 2014) ("When a state legal system is unclear on cross-jurisdictional tolling, federal courts do not generally introduce a rule.").  The Court should likewise be reluctant to import cross-jurisdictional class action tolling into the law of New Hampshire.

---

[24]     Kan. Stat. Ann. § 60-518 provides: "If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if the plaintiff die, and the cause of action survive, his or her representatives may commence a new action within six (6) months after such failure."

Plaintiffs' claims subject to a three-year limitations period—the consumer protection claims under Illinois and New Hampshire law and the antitrust claims under Kansas, Mississippi, and Tennessee law (Counts 7, 9, 14, 19, and 27)—are time-barred because they were filed outside the limitations period and are not subject to tolling.

**B.**   **Plaintiffs' Antitrust Claims under Arizona, Connecticut, Florida, Hawaii, Illinois, Iowa, Maryland, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, and Oregon Law Are Limited to Purchases During the November 8, 2018 to March 2019 Time Period.**

Plaintiffs' antitrust claims under 14 states' laws (Counts 1, 3-6, 8, 11, 13, 16-18, 20, 23-24) are all subject to a four-year limitations period.[25]  Any purchases prior to November 8, 2018 fall outside the limitations period.  For the reasons explained above, Plaintiffs have not alleged a basis to toll the limitations period for these claims under the discovery rule, fraudulent concealment, or the continuing violation doctrine.

Further, six of these states (Arizona, Florida, Hawaii, Illinois, Iowa, and Maryland) have rejected *American Pipe* tolling as applied to a cross-jurisdictional later-filed class action.  *E.g.*, *Rader* v. *Greenberg Traurig, LLP*, 352 P.3d 465, 471 (Ariz. Ct. App. 2015) ("Appellants have not shown that Arizona should adopt cross-jurisdictional tolling"); *Dineen* v. *Pella Corp.*, 2015 WL 6688040, at *3 (D.S.C. Oct. 30, 2015) (Fla. Stat. § 95.051 identifies "an exclusive list of conditions that can toll the running of the statute of limitations" that does not include tolling based on the commencement of a class action); *Coles* v. *City & Cnty. of Honolulu*, 517 P.3d 750, 755 (Haw. 2022) (holding class action complaint tolled limitations period only for later-filed *individual* actions); *Portwood* v. *Ford Motor Co.*, 701 N.E.2d 1102, 1104 (Ill. 1998) (declining to adopt cross-

---

[25]     Ariz. Rev. Stat. Ann. § 44-1410(b); Conn. Gen. Stat. § 35-40; Fla. Stat. § 95.11(3)(e); Haw. Rev. Stat. § 480-24; 740 Ill. Comp. Stat. 10/7(2); Iowa Code § 553.16(2); Md. Code Ann. Com. Law. § 11-209(d)(1); Minn. Stat. § 325D.64; Neb. Rev. Stat. § 25-206; Nev. Rev. Stat. § 598A.220(2)(a); N.H. Rev. Stat. Ann. § 356:12(II); N.M. Stat. Ann. § 57-1-12(B); N.D. Cent. Code § 51-08.1-10(2); Or. Rev. Stat. § 646.800(2).  The relevant language of these statutory provisions is attached as Appendix B.

jurisdictional class action tolling); *Harrington* v. *Toshiba Mach. Co.*, 562 N.W.2d 190, 192 (Iowa 1977) ("the tolling of a statute of limitations is purely statutory"); *Cain* v. *Midland Funding, LLC*, 256 A.3d 765, 800-01 (Md. 2021) (applying *American Pipe* tolling only to individual claims).

For the eight other states (Connecticut, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, and Oregon), we are unaware of any decisions addressing cross-jurisdictional class action tolling. As explained above, federal courts generally do not adopt cross-jurisdictional class action tolling when applicable state law does not recognize such tolling.

To the extent the Court does not dismiss these claims (and it should), it must limit the claims under these state laws to purchases during the time period November 2018 to March 2019.

### C. Plaintiffs' Claims under Missouri Law Are Limited to Purchases During the November 8, 2017 to March 2019 Time Period.

Plaintiffs' claim under Missouri law (Count 15) is subject to a five-year limitations period.[26] Any purchases prior to November 8, 2017 fall outside the limitations period. For the reasons explained above, Plaintiffs have not alleged a basis to toll the limitations period for this claim under the discovery rule, fraudulent concealment, or the continuing violation doctrine. And Missouri does not recognize cross-jurisdictional class action tolling. *Rolwing* v. *Nestle Holdings, Inc.*, 437 S.W.3d 180, 183-84 (Mo. 2014) (en banc) (holding time for filing class action in Missouri was not tolled by the filing of a class action complaint in Ohio). To the extent the Court does not dismiss the claim under Missouri law, it must limit the claim to purchases during the time period November 8, 2017 to March 2019.

---

[26]     Mo. Rev. Stat. § 516.120(2).

### D.     Plaintiffs' Claims under Maine, Vermont, and Wisconsin Law Are Limited to Purchases During the November 8, 2016 to March 2019 Time Period.

Plaintiffs' claims under Maine, Vermont, and Wisconsin law (Counts 10, 29, and 31) are subject to a six-year limitations period.[27]  Any purchases prior to November 8, 2016 fall outside the limitations period.  For the reasons explained above, Plaintiffs have not alleged a basis to toll the limitations period for these claims under the discovery rule, fraudulent concealment, or the continuing violation doctrine, and Amazon is unaware of any decisions by the courts in these states adopting cross-jurisdictional class action tolling.  To the extent the Court does not dismiss the claims under Maine, Vermont, and Wisconsin law, it must limit the claims to purchases during the time period November 8, 2016 to March 2019.

### <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

---

[27]     Me. Rev. Stat. Ann. tit. 14 § 752; Vt. St. Ann. tit. 12, § 511; Wis. Stat. § 133.18(2).

Dated: April 12, 2023                          Respectfully submitted,

                                               */s/ Karen L. Dunn*
                                               Karen L. Dunn (*pro hac vice*)
                                               William A. Isaacson (*pro hac vice*)
                                               Amy J. Mauser (*pro hac vice*)
                                               Martha L. Goodman
                                               PAUL, WEISS, RIFKIND, WHARTON &
                                                 GARRISON LLP
                                               2001 K Street, NW
                                               Washington, DC 20006
                                               Tel: (202) 223-7300
                                               Fax: (202) 223-7420
                                               kdunn@paulweiss.com
                                               wisaacson@paulweiss.com
                                               amauser@paulweiss.com
                                               mgoodman@paulweiss.com

                                               *Attorneys for Defendant Amazon.com, Inc.*

41

# APPENDIX A

**Summary of Amazon's Arguments for Dismissal**

| Count | State | Statute | Basis/es for Dismissal | Brief Section |
|---|---|---|---|---|
| 1 | Arizona | Arizona Uniform State Antitrust Act (Ariz. Rev. Stat. §§ 44-1401, *et seq.*) | **No Antitrust Standing: Non-Purchaser Standing Prohibited** | I.C.4 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| 2 | Arkansas | Arkansas Deceptive Trade Practices Act (Ark. Code. Ann. §§ 4-88-101, *et seq.*) | **No Antitrust Standing: Proximate Causation Required** | I.C.3 |
| | | | **Fail to Allege Reliance as Required by Statutory Amendment** | III.D |
| | | | | |
| 3 | Connecticut | Connecticut Antitrust Act (Conn. Gen. Stat. Ann. §§ 35-24, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| 4 | Florida | Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201(2) , *et seq.*) | **No Antitrust Standing: Proximate Causation Required** | I.C.3 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| 5 | Hawaii | Hawaii Unfair Competition Laws (Haw. Rev. Stat. §§ 480-1, *et seq.*) | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| 6 | Illinois | Illinois Antitrust Act (740 Ill. Comp. Stat. Ann. 10/3(1)) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |

| Count | State | Statute | Basis/es for Dismissal | Brief Section |
|---|---|---|---|---|
| | | | | |
| **7** | | Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. 505/10A) | **No Antitrust Standing: Proximate Causation Required** | I.C.3 |
| | | | **Statute of Limitations: Completely Time-Barred By 3-Year Limitations Period** | IV.A |
| | | | | |
| **8** | **Iowa** | Iowa Competition Law (Iowa Code §§ 553.1, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| **9** | **Kansas** | Kansas Restraint of Trade Act (Kan. Stat. Ann. §§ 50-101, *et seq.*) | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
| | | | **No Concerted Action: Statute Does Not Cover Unilateral Conduct** | III.A |
| | | | **Statute of Limitations: Completely Time-Barred By 3-Year Limitations Period** | IV.A |
| | | | | |
| **10** | **Maine** | Maine Antitrust Statute (Me. Rev. Stat. Ann. Tit. 10 §§ 1101, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **Statute of Limitations: Claims limited to November 8, 2016 to March 2019** | IV.D |
| | | | | |
| **11** | **Maryland** | Maryland Antitrust Statute (Md. Code Ann. Com. Law §§ 11-201, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| **12** | **Michigan** | Michigan Antitrust Reform Act (Mich. Comp. Laws §§ 445.771, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |

| Count | State | Statute | Basis/es for Dismissal | Brief Section |
|---|---|---|---|---|
| | | | | |
| **13** | **Minnesota** | Minnesota Antitrust Law (Minn. Stat. §§ 325D.49, *et seq.*) | **No Antitrust Standing: Proximate Causation Required** | I.C.3 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| **14** | **Mississippi** | Mississippi Antitrust Statute (Miss. Code Ann. §§ 75-21-1, *et seq.*) | **No Antitrust Standing: Proximate Causation Required** | I.C.3 |
| | | | **Statute of Limitations: Completely Time-Barred By 3-Year Limitations Period** | IV.A |
| | | | | |
| **15** | **Missouri** | Missouri Merchandising Practices Act (Mo. Ann. Stat. §§ 407.010, *et seq.*) | **Antitrust Claims are not Actionable** | III.E |
| | | | **Statute of Limitations: Claims limited to November 8, 2017 to March 2019** | IV.C |
| | | | | |
| **16** | **Nebraska** | Nebraska Junkin Act (Neb. Rev. Stat. §§ 59-801, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| **17** | **Nevada** | Nevada Unfair Trade Practices Act (Nev. Rev. Stat. §§ 598A.010, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| **18** | **New Hampshire** | New Hampshire Antitrust Statute (N.H. Rev. Stat. Ann. Tit. XXXI, §§ 356, *et seq.*) | **No Antitrust Standing: *AGC* Most Likely Applies** | I.C.5 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |

| Count | State | Statute | Basis/es for Dismissal | Brief Section |
|---|---|---|---|---|
| | | | | |
| 19 | | New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. Tit. XXXI, § 358-A, *et seq.*) | **No Intrastate Conduct: No Allegations of Unlawful Conduct Occurring in State** | III.B |
| | | | **Statute of Limitations: Completely Time-Barred By 3-Year Limitations Period** | IV.A |
| | | | | |
| 20 | **New Mexico** | New Mexico Antitrust Act (N.M. Stat. Ann. §§ 57-1-1, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| 21 | **New York** | New York General Business Law (N.Y. Gen. Bus. Law §§ 340, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.B |
| | | | **No Concerted Action: Statute Does Not Cover Unilateral Conduct** | III.A |
| | | | | |
| 22 | **North Carolina** | North Carolina General Statutes (N.C. Gen. Stat. §§ 75-1, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **No Antitrust Standing: Proximate Causation Required** | I.C.3 |
| | | | | |
| 23 | **North Dakota** | North Dakota Uniform State Antitrust Act (N.D. Cent. Code §§ 51-08.1, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
| | | | **No Antitrust Standing: Non-Purchaser Standing Prohibited** | I.C.4 |
| | | | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
| | | | | |
| 24 | **Oregon** | Oregon Antitrust Act | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |

| Count | State | Statute | Basis/es for Dismissal | Brief Section |
|---|---|---|---|---|
|  |  | (Or. Rev. Stat. Ann. §§ 646.715, *et seq.*) | **Statute of Limitations: Claims limited to November 8, 2018 to March 2019** | IV.B |
|  |  |  |  |  |
| 25 | **Rhode Island** | Rhode Island Antitrust Act (R.I. Gen. Laws. §§ 6-36-1, *et seq.*) | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
|  |  |  |  |  |
| 26 | **South Dakota** | South Dakota's Antitrust Act (S.D. Codified Laws § 37-1-3.1, *et seq.*) | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |
|  |  |  |  |  |
| 27 | **Tennessee** | Tennessee Trade Practices Act (Tenn. Code §§ 47-25-101, *et seq.*) | **No Concerted Action: Statute Does Not Cover Unilateral Conduct** | III.A |
|  |  |  | **Statute of Limitations: Completely Time-Barred By 3-Year Limitations Period** | IV.A |
|  |  |  |  |  |
| 28 | **Utah** | Utah Antitrust Act (Utah Code §§ 76-10-911, *et seq.*) | **No Antitrust Standing: Proximate Causation Required** | I.C.3 |
|  |  |  | **No Resident: Out-of-State Plaintiffs Barred from Bringing Claims Under Statute** | III.C |
|  |  |  |  |  |
| 29 | **Vermont** | Vermont Consumer Fraud Act (Vt. Stat. Ann. Tit. 9 §§ 2451, *et seq.*) | **No Antitrust Standing: Non-Purchaser Standing Prohibited** | I.C.4 |
|  |  |  | **Statute of Limitations: Claims limited to November 8, 2016 to March 2019** | IV.D |
|  |  |  |  |  |
| 30 | **West Virginia** | West Virginia Antitrust Act (W. Va. Code §§ 47-18-1, *et seq.*) | **No Antitrust Standing: Antitrust Law Harmonized with Federal Law** | I.C.2 |
|  |  |  |  |  |
| 31 | **Wisconsin** | Wisconsin Antitrust Act | **No Antitrust Standing: Adopted *AGC*** | I.C.1 |

| Count | State | Statute | Basis/es for Dismissal | Brief Section |
|-------|-------|---------|------------------------|---------------|
|       |       | (Wis. Stat. Ann. §§ 133.01, *et seq.*) | **Statute of Limitations: Claims limited to November 8, 2016 to March 2019** | IV.D |

| Count | State | No Antitrust Standing | Additional Reasons | Statute of Limitations |
|-------|-------|----------------------|-------------------|----------------------|
| 1 | Arizona | No Non-Purchaser Standing | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 2 | Arkansas | Proximate Cause Required | Claims after 8/1/17 require reliance | |
| 3 | Connecticut | Adopted *AGC* | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 4 | Florida | Proximate Cause Required | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 5 | Hawaii | Follows Federal Law | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 6 | Illinois (Antitrust) | Adopted *AGC* | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 7 | Illinois (Consumer Protection) | Proximate Cause Required | | Time-barred (3 year SOL) |
| 8 | Iowa | Adopted *AGC* Follows Federal Law | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 9 | Kansas | Follows Federal Law | No concerted action | Time-barred (3 year SOL) |
| 10 | Maine | Adopted *AGC* | | Limited to 11/2016 – 3/2019 (6 year SOL) |
| 11 | Maryland | Adopted *AGC* | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 12 | Michigan | Adopted *AGC* | | |
| 13 | Minnesota | Proximate Cause Required | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 14 | Mississippi | Proximate Cause Required | | Time-barred (3 year SOL) |
| 15 | Missouri | | Statute does not reach alleged conduct | Limited to 11/2017 – 3/2019 (5 year SOL) |
| 16 | Nebraska | Adopted *AGC* Follows Federal Law | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 17 | Nevada | Adopted *AGC* Follows Federal Law | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 18 | New Hampshire (Antitrust) | N.H. Supreme Court Likely to Apply *AGC* | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 19 | New Hampshire (Consumer Protection) | | No proscribed conduct alleged | Time-barred (3 year SOL) |
| 20 | New Mexico | Adopted *AGC* Follows Federal Law | | Limited to 11/2018 – 3/2019 (4 year SOL) |

| Count | State | No Antitrust Standing | Additional Reasons | Statute of Limitations |
|---|---|---|---|---|
| 21 | New York | Adopted *AGC* | No concerted action | |
| 22 | North Carolina | Adopted *AGC* Proximate Cause Required | | |
| 23 | North Dakota | Adopted *AGC* No Non-Purchaser Standing | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 24 | Oregon | Follows Federal Law | | Limited to 11/2018 – 3/2019 (4 year SOL) |
| 25 | Rhode Island | Follows Federal Law | | |
| 26 | South Dakota | Adopted *AGC* | | |
| 27 | Tennessee | | No concerted action | Time-barred (3 year SOL) |
| 28 | Utah | Proximate Cause Required | Named plaintiffs not Utah citizens | |
| 29 | Vermont | No Non-Purchaser Standing | | Limited to 11/2016 – 3/2019 (6 year SOL) |
| 30 | West Virginia | Follows Federal Law | | |
| 31 | Wisconsin | Adopted *AGC* | | Limited to 11/2016 – 3/2019 (6 year SOL) |

# APPENDIX B

**Summary of Statute of Limitations**

| State | Statutory Language |
|---|---|
| **Three-Year Statute of Limitations** | |
| **Illinois (Consumer Protection)** | "Any action for damages under this Section shall be forever barred unless commenced within 3 years after the cause of action accrued . . ." <br><br> 815 Ill. Comp. Stat. Ann. 505/10a(e). |
| **Kansas** | "The following actions shall be brought within three (3) years: . . . An action upon a liability created by a statute other than a penalty or forfeiture." <br><br> Kan. Stat. Ann. § 60-512(2); *see also Four B Corp.* v. *Daicel Chem. Indus., Ltd.*, 253 F. Supp. 2d 1147, 1155-56 (D. Kan. 2003). |
| **Mississippi** | "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." <br><br> Miss. Code. Ann. § 15-1-49(1); *see also Carder* v. *BASF Corp.*, 919 So.2d 258, 261-62 (Miss. Ct. App. 2005). |
| **New Hampshire (Consumer Protection)** | "The following transactions shall be exempt from the provisions of this chapter: . . . Transactions entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of this chapter . . ." <br><br> N.H. Rev. Stat. Ann. § 358-A:3(IV-a); *see also Laura* v. *Great Lakes Higher Educ. Guar. Corp.*, 2018 WL 671174, at *4 (D.N.H. Feb. 1, 2018). <br><br> "Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of." <br><br> N.H. Rev. Stat. § 508:4(I). |

| State | Statutory Language |
|---|---|
| **Tennessee** | "The following actions shall be commenced within three (3) years from the accruing of the cause of action: … Civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefore, when no other time of limitation is fixed by the statute creating such liability."<br><br>Tenn. Code Ann. § 28-3-105(3); *see also State ex rel. Leech* v. *Levi Strauss & Co.*, 1980 WL 4696, at *3 (Tenn. Ch. Ct. Sept. 25, 1980). |
| **Four-Year Statute of Limitations** | |
| **Arizona** | "An action under § 44-1408 to recover damages is barred if it is not commenced within four years after the cause of action accrues . . . ."<br><br>Ariz. Rev. Stat. Ann. § 44-1410(b). |
| **Connecticut** | "Any action under sections 35-34 and 35-35, shall be forever barred unless commenced within four years after the cause of action shall have accrued . . . ."<br><br>Conn. Gen. Stat. § 35-40. |
| **Florida** | "An action founded on a statutory liability" must be commenced within four years.<br><br>Fla. Stat. § 95.11(3)(e); *see also Brown* v. *Nationscredit Fin. Servs. Corp.*, 32 So.3d 661, 662 n.1 (Fla. Dist. Ct. App. 2010). |
| **Hawaii** | "Any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues . . . ."<br><br>Haw. Rev. Stat. § 480-24. |
| **Illinois (Antitrust)** | "Any action for damages under this subsection is forever barred unless commenced within 4 years after the cause of action accrued . . . ."<br><br>740 Ill. Comp. Stat. 10/7(2). |

| State | Statutory Language |
|---|---|
| **Iowa** | "Suit under section 553.12 must be commenced within four years after the cause of action accrues . . . ."<br><br>Iowa Code § 553.16(2). |
| **Maryland** | "An action brought to enforce this subtitle shall be commenced within 4 years after the cause of action accrues."<br><br>Md. Code Ann. Com. Law. § 11-209(d)(1). |
| **Minnesota** | "An action under sections 325D.49 to 325D.66, shall be forever barred unless commenced within four years of the date upon which the cause of action arose."<br><br>Minn. Stat. § 325D.64. |
| **Nebraska** | "[A]n action upon a liability created by statute, other than a forfeiture or penalty, can only be brought within four years."<br><br>Neb. Rev. Stat. § 25-206; *see also In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 WL 4796528, at *10 (W.D. Mo. Aug. 21, 2019). |
| **Nevada** | "An action brought under NRS 598A.160 or 598A.210 is barred if it is not commenced: Within 4 years after the cause of action accrues . . ."<br><br>Nev. Rev. Stat. § 598A.220(2)(a). |
| **New Hampshire (Antitrust)** | "An action commenced pursuant to . . . RSA 356:11 to recover damages is barred if it is not commenced within 4 years after the cause of action accrues . . . ."<br><br>N.H. Rev. Stat. Ann. § 356:12(II). |
| **New Mexico** | "An action brought under the provisions of Section 57-1-3 . . . to recover damages is barred if it is not commenced within four years after the cause of action accrues . . . ."<br><br>N.M. Stat. Ann. § 57-1-12(B). |

| State | Statutory Language |
|---|---|
| **North Dakota** | "An action under section 51-08.1-08 to recover damages is barred if it is not commenced within four years after the claim for relief accrues . . . ."<br><br>N.D. Cent. Code § 51-08.1-10(2). |
| **Oregon** | "An action under ORS 646.780 to recover damages shall be commenced within four years after the cause of action accrued . . . ."<br><br>Or. Rev. Stat. § 646.800(2). |
| **Five-Year Statute of Limitations** | |
| **Missouri** | "An action upon a liability created by a statute other than a penalty or forfeiture" must be brought "[w]ithin five years."<br><br>Mo. Rev. Stat. § 516.120(2); *see also Huffman* v. *Credit Union of Tex.*, 758 F.3d 963, 967 (8th Cir. 2014). |
| **Six-Year Statute of Limitations** | |
| **Maine** | "All civil actions shall be commenced within 6 years after the cause of action accrues . . . ."<br><br>Me. Rev. Stat. Ann. Tit. 14, § 752; *see also McKinnon* v. *Honeywell Int'l, Inc.*, 977 A.2d 420, 424 (Me. 2009). |
| **Vermont** | "A civil action . . . shall be commenced within six years after the cause of action accrues and not thereafter."<br><br>Vt. Stat. Ann. Tit. 12, § 511; *Kaplan* v. *Morgan Stanley & Co.*, 987 A.2d 258, 262 (Vt. 2009). |
| **Wisconsin** | "A civil action for damages or recovery of payments under this chapter is barred unless commenced within 6 years after the cause of action accrued."<br><br>Wis. Stat. § 133.18(2). |