**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TAFARI MBADIWE and RACHEL MILLER
on behalf of themselves and all others similarly
situated,

                                  Plaintiffs,

                    v.                                          Civil Action No. 1:22-cv-09542-VSB

AMAZON.COM, INC.,

                                  Defendant.

## REPLY IN SUPPORT OF DEFENDANT
## AMAZON.COM, INC.'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      Collateral Estoppel Does Not Apply Because *Frame-Wilson* Did Not Decide
Standing of Non-Purchasers from Amazon or Alleged Co-Conspirators. ...........................2

II.     As Non-Purchasers from the Defendant or Alleged Co-Conspirators, Plaintiffs
Lack Antitrust Standing. ...............................................................................................5

        A.      Plaintiffs Lack Antitrust Standing Under New York Law...................................... 6

        B.      The Non-New York Claims Must Be Dismissed for Lack of Antitrust
Standing. ....................................................................................................... 8

III.    Plaintiffs' Claims Are Subject to the Rule of Reason.........................................................12

        A.      The Illinois Antitrust Statute Provides that Only Horizontal Agreements
Between Competitors Are *Per Se* Unlawful. ....................................................... 13

        B.      Hawaii, Minnesota, New Hampshire, Nevada, Tennessee, West Virginia, and
Maryland Law Provide the Parity Provision Is Subject to the Rule of Reason. ... 13

IV.    Three of Plaintiffs' Claims Fail For State-Specific Reasons. ...........................................15

        A.      Plaintiffs Fail to State a Claim Under the N.H. Consumer Protection Act........... 15

        B.      Plaintiffs Fail to Plead a Claim Under the Utah Antitrust Act. ............................ 16

        C.      Plaintiffs Fail to Plead a Missouri Merchandising Practices Act Claim............... 16

V.     Many of Plaintiffs' Claims Are Time-Barred.................................................................17

        A.      The Court Should Decline to Import Cross-Jurisdictional Class Action Tolling
Into the Laws of States That Have Not Adopted It.............................................. 17

        B.      The Claims Under the Laws of Other States Are Time-Barred in Whole or in
Part Based on State-Specific Requirements......................................................... 18

CONCLUSION...................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Postal Workers Union* v. *U.S. Postal Serv.*,
　736 F.2d 317 (6th Cir. 1984) ...................................................................5

*People* v. *Amazon.com, Inc.*,
　No. CGC-22-601826 (Cal. Super. Ct.) ...............................................8, 12

*Anderson* v. *Mosaic Fertilizer LLC*,
　2021 WL 4762421 (M.D. Fla. Sept. 7, 2021)...........................................19

*Archon Corp.* v. *Eighth Judicial Dist. Court of Nev.*,
　407 P.3d 702 (Nev. 2017)........................................................................20

*Associated General Contractors of California, Inc.* v.
　*California State Council of Carpenters*,
　459 U.S. 519 (1983)...................................................................................4

*Bartlett* v. *Miller & Schroeder Muns., Inc.*,
　355 N.W.2d 435 (Minn. Ct. App. 1984)...................................................18

*In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*,
　995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014)..............................................17

*Beckler* v. *Visa U.S.A., Inc.*,
　2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) ..................................11

*Becnel* v. *Deutsche Bank, AG*,
　507 F. App'x 71 (2d Cir. 2013) ...............................................................19

*Bentley* v. *Glenn Shipley Enters., Inc.*,
　619 N.E.2d 816 (Ill. App. 1993)..............................................................19

*Bergquist* v. *Int'l Realty, Ltd.*,
　537 P.2d 553 (Or. 1975) ..........................................................................18

*Cain* v. *Midland Funding, LLC*,
　256 A.3d 765 (Md. 2021) .........................................................................20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
　27 F. Supp. 3d 1015 (N.D. Cal. 2014).....................................................20

*Chavez* v. *Occidental Chem. Corp.*,
　933 F.3d 186 (2d Cir. 2019).....................................................................18

*Cnty. of Cook* v. *Philip Morris, Inc.*,
   817 N.E.2d 1039 (Ill. App. Ct. 2004) ................................................................9

*Consiglio-Tseffos* v. *Visa U.S.A., Inc.*,
   2004 WL 3030043 (Ariz. Super. Ct. Dec. 8, 2004) .............................................9

*Crouch* v. *Crompton Corp.*,
   2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004) ...........................................11

*Davitashvili* v. *Grubhub Inc.*,
   2022 WL 958051 (S.D.N.Y. Mar. 30, 2022) ......................................................8

*De Coster* v. *Amazon.com, Inc.*,
   2023 WL 372377 (W.D. Wash. Jan. 24, 2023)..............................................8, 12

*Farmland National Beef Packing Co., L.P.* v. *Stone Container Corp.*,
   2006 WL 2356958 (Kan. Dist. Ct. Aug. 3, 2006).............................................20

*Ferring B.V.* v. *Serenity Pharmaceuticals, LLC*,
   391 F. Supp. 3d 265 (S.D.N.Y. 2019).................................................................5

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................................16

*Flood* v. *Just Energy Marketing Corp.*,
   904 F.3d 219 (2d Cir. 2018)...........................................................................3, 5

*Force Partners, LLC* v. *KSA Lighting & Controls, Inc.*,
   2022 WL 580808 (N.D. Ill. Feb. 25, 2022) ......................................................13

*In re Fosamax Prods. Liability Litig.*,
   694 F. Supp. 2d 253 (S.D.N.Y. 2010)...............................................................18

*Frame-Wilson* v. *Amazon.com, Inc.*,
   2023 WL 2632513 (W.D. Wash. Mar. 24, 2023) ............................................1, 3

*Frame-Wilson* v. *Amazon.com, Inc.*,
   591 F. Supp. 3d 975 (W.D. Wash. 2022)................................................3, 4, 12, 19

*Fucile* v. *Visa U.S.A., Inc.*,
   2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ...........................................11

*Gaff* v. *R.J. Reynolds Tobacco Co.*,
   129 So. 3d 1142 (Fla. Dist. Ct. App. 2013) ......................................................19

*In re Geo Specialty Chems. Ltd.*,
   577 B.R. 142 (Bankr. D.N.J. 2017) ....................................................................5

*Geran* v. *Xerox Educ. Servs., Inc.*,
    469 S.W.3d 459 (Mo. Ct. App. 2015) ..................................................................17

*Gilldorn Sav. Ass'n* v. *Com. Sav. Ass'n*,
    804 F.2d 390 (7th Cir. 1986) ...............................................................................5

*Grimes* v. *Hous. Auth. of the City of New Haven*,
    698 A.2d 302 (Conn. 1997) .................................................................................18

*Grumhaus* v. *Comerica Sec., Inc.*,
    2003 WL 22136307 (N.D. Ill. Sept. 16, 2003) ....................................................19

*Haberkorn* v. *Archon Corp.*,
    2016 WL 11164442 (Nev. Dist. Ct. Aug. 4, 2016) ...............................................20

*Hannah's Boutique, Inc.* v. *Surdej*,
    112 F. Supp. 3d 758 (N.D. Ill. 2015) ...................................................................14

*Hill* v. *City of New York*,
    45 F.3d 653 (2d Cir. 1995) ...................................................................................5

*Ho* v. *Visa U.S.A., Inc.*,
    3 Misc. 3d 1105(A) (N.Y. Sup. Ct. Apr. 21, 2004) .............................................7

*Hromyak* v. *Tyco Int'l Ltd.*,
    942 So. 2d 1022 (Fla. Dist. Ct. App. 2006) .........................................................19

*Kanne* v. *Visa U.S.A. Inc.*,
    723 N.W.2d 293 (Neb. 2006) ..............................................................................10

*Kessel* v. *Monongalia Cnty. Gen. Hosp. Co.*,
    648 S.E.2d (W. Va. 2007) ....................................................................................15

*In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig.*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019) ..................................................................14

*Knowles* v. *Visa U.S.A., Inc.*,
    2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) .............................................10

*State* v. *Kowalski*,
    587 S.W.3d 709 (Mo. Ct. App. 2019) ..................................................................17

*LaChance* v. *U.S. Smokeless Tobacco Co.*,
    156 N.H. 88 (2007) ..............................................................................................16

*Leegin Creative Leather Products, Inc.* v. *PSKS, Inc.*,
    551 U.S. 877 (2007) .............................................................................................13

*In re Linerboard Antitrust Litig.*,
223 F.R.D. 335 (E.D. Pa. 2004)..........................................................................20

*Lithium Ion Batteries Antitrust Litig.*,
2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)........................................................16

*Lorix* v. *Crompton Corp.*,
736 N.W.2d 619 (Minn. 2007).............................................................................10

*Lucas* v. *Citizen Commc'ns Co.*,
409 F. Supp. 2d 1206 (D. Haw. 2005) .................................................................14

*Lucas* v. *Pioneer, Inc.*,
256 N.W.2d 167 (Iowa 1977) ..............................................................................20

*Maestas* v. *Sofamor Danek Group Inc.*,
33 S.W.3d 805 (Tenn. 2000)................................................................................19

*Minuteman, LLC* v. *Microsoft Corp.*,
2000 WL 33187307 (N.H. Super. Dec. 3, 2000) .................................................14

*Mormann* v. *Iowa Workforce Development*,
913 N.W.2d 554 (Iowa 2018) ..............................................................................20

*Nass-Romero* v. *Visa U.S.A. Inc.*,
279 P.3d 772 (N.M. Ct. App. 2012)......................................................................10

*Oliver* v. *Am. Express Co.*,
2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) ........................................................7

*Oliver* v. *Am. Express Co.*,
2021 WL 386749 (E.D.N.Y. Feb. 1, 2021)...........................................................15

*Owens Corning* v. *R.J. Reynolds Tobacco Co.*,
868 So.2d 331 (Miss. 2004).................................................................................10

*In re Packaged Seafood Prods. Antitrust Litig.*,
242 F.3d 1033 (S.D. Cal. 2017)...........................................................................17

*Panhandle Cleaning & Restoration, Inc.* v. *Nationwide Mut. Ins. Co.*,
2018 WL 3717108 (N.D.W. Va. Aug. 3, 2018).....................................................15

*Parklane Hosiery Co., Inc.* v. *Shore*,
439 U.S. 322 (1979).................................................................................................2

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,
946 F. Supp. 2d 554 (E.D. La. 2013)....................................................................17

*Portwood* v. *Ford Motor Co.*,
701 N.E.2d 1102 (Ill. 1998) ...........................................................................19

*Postlewaite* v. *McGraw-Hill*,
333 F.3d 42 (2d Cir. 2003)............................................................................3, 5

*R.I. Laborers' Health & Welfare Fund* v. *Philip Morris, Inc.*,
99 F. Supp. 2d 174 (D.R.I. 2000)....................................................................11

*Robinette* v. *Jones*,
476 F.3d 585 (8th Cir. 2007) ............................................................................5

*Rocky Aspen Management 204 LLC* v. *Hanford Holdings LLC*,
2019 WL 3940218 (S.D.N.Y. July 29, 2019) ....................................................5

*Ross* v. *Am. Express Co.*,
35 F. Supp. 3d 407 (S.D.N.Y. 2014)..................................................................7

*Salatino* v. *Chase*,
939 A.2d 482 (Vt. 2007) ..................................................................................18

*Salton, Inc.* v. *Philips Domestic Appliances & Pers. Care B.V.*,
391 F.3d 871 (7th Cir. 2004) ............................................................................5

*Samaha* v. *City of Minneapolis*,
2022 WL 2392528 (D. Minn. July 1, 2022) ......................................................5

*Se. Fla. Laborers Dist. Health & Welfare Tr. Fund* v. *Philip Morris*,
1998 WL 186878 (S.D. Fla. Apr. 13, 1998) ......................................................9

*Seaboard Corp.* v. *Marsh Inc.*,
284 P.3d 314 (Kan. 2012) ...............................................................................20

*Southard* v. *Visa U.S.A. Inc.*,
734 N.W.2d 192 (Iowa 2007) ..........................................................................10

*Soward* v. *Deutsche Bank AG*,
814 F. Supp. 2d 272 (S.D.N.Y. 2011)..............................................................17

*Spahr* v. *Leegin Creative Leather Prod., Inc.*,
2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) ...............................................15

*Sportmart, Inc.* v. *No Fear, Inc.*,
1996 WL 296643 (N.D. Ill. June 3, 1996).........................................................13

*Stand Energy Corp.* v. *Columbia Gas Transmission Corp.*,
2008 WL 3891219 (S.D.W. Va. Aug. 19, 2008) ...............................................15

*Stark* v. *Visa U.S.A. Inc.*,
    2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)................................................................10

*State by Humphrey* v. *Alpine Air Products, Inc.*,
    490 N.W.2d 888 (Minn. Ct. App. 1992)................................................................14

*Strang* v. *Visa U.S.A., Inc.*,
    2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005)................................................................11

*Tigg* v. *Pirelli Tire Corp.*,
    232 S.W.3d 28 (Tenn. 2007)................................................................20

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009)................................................................20

*Vincent* v. *Money Store*,
    915 F. Supp. 2d 553 (S.D.N.Y. 2013)................................................................18

*Watson* v. *Wells Fargo Home Mortg., Inc.*,
    438 S.W.3d 404 (Mo. 2014)................................................................17

*Wills* v. *Radioshack Corp.*,
    981 F. Supp. 2d 245 (S.D.N.Y. 2013)................................................................5

*Wyly* v. *Weiss*,
    697 F.3d 131 (2d Cir. 2012)................................................................2

*Yellow Cab Co.* v. *Uber Technologies, Inc.*,
    2015 WL 4987653 (D. Md. Aug. 19, 2015)................................................................15

*Yellow Cab Co.* v. *Uber Techs., Inc.*,
    No. 1:14-cv-02764-RDB (D. Md. Aug. 28, 2014)................................................................15

**Statutes**

Fla. Stat. § 95.051 ................................................................18

Haw. Rev. Stat. Ann. § 480-3 ................................................................14

Ill. Comp. Stat. 10/3(1) ................................................................13

N.H. Rev. Stat. Ann. § 356:14 ................................................................14

West Virginia Code § 47-18-3 ................................................................15

**Other Authorities**

18A Charles Alan Wright & Arthur R. Miller,
    Fed. Prac. & Proc. § 4439 (3d ed.) (Apr. 2023 Update) ............................................................5

1 *McLaughlin on Class Actions* § 3:15 (9th ed.) ..........................................................................18

3 William B. Rubenstein,
    *Newberg and Rubenstein on Class Actions* § 9:67 (6th ed.)....................................................18

## INTRODUCTION

Plaintiffs try to escape the significant failures of their allegations by invoking collateral estoppel, but their efforts to distance themselves from the plaintiffs in *Frame-Wilson* demonstrate why collateral estoppel does not apply and confirm Plaintiffs lack antitrust standing.  Plaintiffs are pursuing state-law claims not previously considered, along with an incorrect theory of antitrust standing that the *Frame-Wilson* decision they rely on never addressed and that other courts have expressly rejected.  As a result, collateral estoppel does not apply because the *Frame-Wilson* court did not decide the issue of antitrust standing presented in Amazon's motion here.  Plaintiffs have previously conceded that their case—and antitrust standing—is different, telling this Court, "this action and *Frame-Wilson* seek recovery for different classes of purchasers."  Dkt. 29 at 5.  In *Frame-Wilson*, the court held that the plaintiffs "established standing based on their allegation that they were direct purchasers of antitrust conspirators."  *Frame-Wilson* v. *Amazon.com, Inc.*, 2023 WL 2632513, at *2 (W.D. Wash. Mar. 24, 2023) ("*Frame-Wilson II*").  Here, Plaintiffs <u>disclaim</u> any allegations that they purchased from either Amazon or any alleged co-conspirator.  In Plaintiffs' words, "because the definition of Class Products in this action explicitly excludes products sold by third-party sellers directly, *see* FAC ¶ [97], there is **not a single State Law Class Member who can be deemed a purchaser from an alleged co-conspirator of Amazon**."  Dkt. 29 at 10 (emphasis in original).  That concession destroys not only Plaintiffs' reliance on the *Frame-Wilson* court's standing decision but also their antitrust standing in this case.

Unlike the *Frame-Wilson* plaintiffs, Plaintiffs here are seeking damages from Amazon "on behalf of purchasers from non-conspiring Amazon competitors like Walmart and eBay."  Dkt. 29 at 1.  That is the very definition of an "umbrella" plaintiff—*i.e.*, a plaintiff who purchased products neither from the defendant nor from any alleged co-conspirator and who instead seeks to recover damages based on purchases from a non-conspiring competitor.  Yet, as Plaintiffs also have

conceded, the umbrella theory of standing "has never been accepted by the Second Circuit or the Ninth Circuit." *Id.* at 10 n.3.

Despite Plaintiffs' attempt to distance their claims from the umbrella theory and to recharacterize them as something else, there is no recognized doctrine under federal or state antitrust law that grants standing to purchasers who did not directly or indirectly buy from the defendant or an alleged co-conspirator. And there is no reason for this Court to break new ground by allowing Plaintiffs, as admitted purchasers from Amazon competitors, to proceed under an umbrella theory. For these and the other reasons set out below and in Amazon's opening brief, the motion to dismiss should be granted.

## ARGUMENT

### I. Collateral Estoppel Does Not Apply Because *Frame-Wilson* Did Not Decide Standing of Non-Purchasers from Amazon or Alleged Co-Conspirators.

Collateral estoppel applies only when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly* v. *Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (citation and internal quotation marks omitted).[1] None of the conditions for collateral estoppel to apply are present.

Here, the *Frame-Wilson* court did not decide the issue raised in this motion—whether a plaintiff who did not purchase products from Amazon *or* an alleged co-conspirator has standing to sue Amazon. That court twice expressly declined to reach that issue. *Frame-Wilson* v.

---

[1] Although federal law allows offensive collateral estoppel, it is treated less favorably; it "does not promote judicial economy in the same manner as defensive use does because it does not encourage joinder of all potential defendants in the first action," but encourages plaintiffs to "adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Parklane Hosiery Co., Inc.* v. *Shore*, 439 U.S. 322, 329–30 (1979). Offensive collateral estoppel "will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." *Id.* at 330.

*Amazon.com, Inc.*, 591 F. Supp. 3d 975, 984 (W.D. Wash. 2022) ("*Frame-Wilson I*"); *Frame-Wilson II*, 2023 WL 2632513, at *2. As a result, collateral estoppel does not apply: "If an issue was not actually decided in the prior proceeding, or if its resolution was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by collateral estoppel." *Postlewaite* v. *McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003); *see also Flood* v. *Just Energy Marketing Corp.*, 904 F.3d 219, 237 (2d Cir. 2018) (same).

Plaintiffs seek to establish standing for a class of purchasers on a basis that they admit the *Frame-Wilson* court did *not* decide. The *Frame-Wilson* plaintiffs asserted "two bases" for standing: (i) "as direct purchasers from Amazon's co-conspirators" and (ii) as purchasers from "non-conspiring competitors . . . under an umbrella theory." *Frame-Wilson I*, 591 F. Supp. 3d at 983 (citation and internal quotation marks omitted). The court decided that the plaintiffs had standing only on the first basis and declined to reach whether the plaintiffs established standing on the second basis as purchasers from non-conspiring competitors. *Id.* at 984 ("the Court need not address Plaintiffs' standing under an umbrella theory"). Plaintiffs have previously acknowledged that the *Frame-Wilson* plaintiffs relied "on the umbrella theory of liability to support federal antitrust standing for purchasers from non-conspiring e-commerce companies," but the "court declined to address this theory of standing, which has never been accepted by the Second Circuit or the Ninth Circuit." Dkt. 29 at 10 n.3. With regard to co-conspirator standing discussed in *Frame-Wilson*, Plaintiffs here disavow any reliance on such standing. Plaintiffs seek damages *only* on behalf of "purchasers from non-conspiring e-commerce companies." *Id.* at 10.

Nevertheless, Plaintiffs persist in arguing that the *Frame-Wilson* court somehow *did* decide whether they, as purchasers from admittedly non-conspiring competitors of Amazon, should still be deemed "efficient enforcers" of the antitrust laws under *Associated General Contractors of*

*California, Inc.* v. *California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). Plaintiffs wrongly imply that the *Frame-Wilson* court analyzed the *AGC* factors and their application. It did not. The court cited *AGC* only once across its two decisions and only for a proposition concerning *AGC*'s application of "the *Illinois Brick* rule" of direct purchaser standing. *Frame-Wilson I*, 591 F. Supp. 3d at 983–84. Plaintiffs resort to partial and misleading quotations to try to suggest otherwise. For example, they say that the *Frame-Wilson* court "rejected Amazon's argument that the FW Plaintiffs' 'theory of injury based on purchases from retailers other than Amazon is too attenuated as a matter of law.'" Opp. 10 (citing *Frame-Wilson I*, 591 F. Supp. 3d at 983). But they omit the rest of the quoted sentence, which states, "Amazon claims that Plaintiffs' 'theory of injury based on purchases from retailers other than Amazon is too attenuated as a matter of law, and violates the bright-line rule that plaintiffs must be direct purchasers in order to have standing to recover.'" *Frame-Wilson I*, 591 F. Supp. 3d at 983. While the court rejected that argument, its sole basis for doing so was the allegation that plaintiffs "are direct purchasers of antitrust coconspirators." *Id.*

The *Frame-Wilson* court began <u>and ended</u> its analysis of antitrust standing with the direct-purchaser rule of *Illinois Brick*. *Id.* ("The Court begins its analysis with the rule set forth in *Illinois Brick*."); *id.* at 984 ("The Court concludes that Plaintiffs have established standing as direct purchasers of alleged antitrust co-conspirators."). "Based on this," the *Frame-Wilson* court declined to reach whether *non*-purchasers from a defendant could establish "standing under an umbrella theory." *Id.* Because Plaintiffs here purport to represent a class consisting *exclusively* of such non-purchasers, nothing in the *Frame-Wilson* opinions supports their standing, much less forecloses that issue from being litigated in this Court based on offensive collateral estoppel. *Flood*, 904 F.3d at 237; *Postlewaite*, 333 F.3d at 48.

Plaintiffs also attempt to elide another fundamental, and equally fatal, defect: the denial of a motion to dismiss, as in *Frame-Wilson,* has no preclusive effect. *E.g.,* 18A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4439 (3d ed.) (Apr. 2023 Update) (motion to dismiss "ordinarily is not a final judgment that will support" collateral estoppel); *Wills* v. *Radioshack Corp.*, 981 F. Supp. 2d 245, 265 (S.D.N.Y. 2013) (explaining a grant of a motion to dismiss "may be considered a judgment on the merits" for collateral estoppel, but a denial is not a "final judgment to which the Court could grant preclusive effect"); *Hill* v. *City of New York*, 45 F.3d 653, 659 (2d Cir. 1995) (denial of motion to dismiss is "non-final" ruling); *Salton, Inc.* v. *Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 881 (7th Cir. 2004) ("once a judgment is reversed it ceases to have collateral estoppel effect").[2]

## II.   As Non-Purchasers from the Defendant or Alleged Co-Conspirators, Plaintiffs Lack Antitrust Standing.

By their admission, Plaintiffs are non-purchasers, either directly or indirectly, from Amazon or an alleged co-conspirator: Plaintiffs allege instead that they purchase from "non-conspiring retailers," Opp. 16, who are competitors of Amazon such as Walmart. *Supra* at 1; *see also* Dkt. 29 at 10 ("As alleged, Mr. Mbadiwe paid more for products that he purchased from Walmart.com than he would have absent the Price Parity Restriction. FAC ¶ 25. There is no allegation in *Frame-Wilson* or this action that Amazon competitors like Walmart and e-Bay, who

---

[2] Plaintiffs cite cases applying collateral estoppel on interim orders, but those are the rare exception. *Rocky Aspen Management 204 LLC* v. *Hanford Holdings LLC*, 2019 WL 3940218, at *4 (S.D.N.Y. July 29, 2019), involved a bankruptcy court conducting a two-day trial with witnesses and issuing an order that, though "technically an order resolving a motion to dismiss," was "a dispositive ruling in essence more akin to a summary judgment order or bench trial order." *Ferring B.V.* v. *Serenity Pharmaceuticals, LLC*, 391 F. Supp. 3d 265, 269, 290 (S.D.N.Y. 2019), involved the denial of a *summary judgment* motion, which *Ferring* acknowledges would not have preclusive effect. Plaintiffs' out-of-circuit cases are likewise unpersuasive. In three, the prior orders *granted* motions to dismiss. *Robinette* v. *Jones*, 476 F.3d 585, 588 (8th Cir. 2007); *Am. Postal Workers Union* v. *U.S. Postal Serv.*, 736 F.2d 317, 319 (6th Cir. 1984); *Samaha* v. *City of Minneapolis*, 2022 WL 2392528, at *1 (D. Minn. July 1, 2022). The other two involved narrow legal issues that did not require factual development. *Gilldorn Sav. Ass'n* v. *Com. Sav. Ass'n*, 804 F.2d 390, 393 (7th Cir. 1986) (whether claims were compulsory counterclaims); *In re Geo Specialty Chems. Ltd.*, 577 B.R. 142, 187–189 (Bankr. D.N.J. 2017) (applicability of Chapter 11 plan's injunction provision to an antitrust class action).

were not third-party sellers, conspired with Amazon"); Opp. 10 n.6 (arguing that Plaintiffs are efficient enforcers because they are "Purchasers from non-conspiring platforms . . . but not direct purchasers under *Illinois Brick*"); FAC ¶ 97 (class excludes direct purchases from third-party sellers).  The only recognized ground for such a non-purchaser to try to establish standing is an umbrella theory—that is, Plaintiffs' alleged price-fixing conspiracy created a "price umbrella" that allowed non-conspiring competitors, such as Walmart or eBay, to charge supra-competitive prices. Yet Plaintiffs now both disavow an umbrella theory, Opp. 16–17, and concede that courts in this Circuit have consistently rejected it,  Dkt. 29 at 10 n.3; *see also* MTD 10–11.  Plaintiffs also articulate no other theory to support the proposition that they—as non-purchasers from Amazon— have antitrust standing.  As courts in the relevant states have consistently held, non-purchaser standing is inconsistent with *AGC* and the requirement that there be proximate causation between the challenged conduct and a plaintiff's alleged injury.

### A.    Plaintiffs Lack Antitrust Standing Under New York Law.

Plaintiffs concede that they are proceeding strictly as non-purchasers, *i.e.*, expressly limiting their proposed classes to products purchased from "non-conspiring retail platforms like Walmart.com."   Opp. 8; *see also id.* at 16.  And they have argued that this case differs from *Frame-Wilson* because "**there is not a single State Law Class Member who can be deemed a purchaser from an alleged co-conspirator of Amazon**." Dkt. 29 at 10.  The only standing theory even arguably available for such non-purchasers is umbrella standing, which they disavow, Opp. 16–17,  and acknowledge that the Second Circuit does not recognize, Dkt. 29 at 10 n.3.

As New York residents and putative class members of the New York class, FAC ¶¶ 25– 26, 112, Plaintiffs must show their antitrust standing under New York law.  *Ross* v. *Am. Express Co.*, 35 F. Supp. 3d 407, 432–33 (S.D.N.Y. 2014) (requiring named plaintiffs to individually have antitrust standing on their claims).  New York courts have rejected non-purchaser standing on

which Plaintiffs' claims depend.  *Ho* v. *Visa U.S.A., Inc.*, 3 Misc. 3d 1105(A) (N.Y. Sup. Ct. Apr. 21, 2004) (table), *aff'd*, 793 N.Y.S.2d 8 (1st Dep't 2005).  In *Ho*, the plaintiffs, asserting state-law antitrust claims, alleged that they were "general consumers" at various stores that accepted Visa and MasterCard as payment, that Visa and MasterCard charged those stores supra-competitive fees, and that the stores passed those fees on to consumers by raising the price of the products the plaintiffs purchased—not from Visa or MasterCard—but from the stores.  *Id.* at *2.  The court held that the plaintiffs' claimed injuries were too "indirect" and remote under *AGC*, finding the plaintiffs "had no direct dealings with either of the defendants" and do not "use defendants' credit or debit card services in any way."  *Id.* at *2–*3.  The court held there was no antitrust standing for plaintiffs who "claim that stores where they shop raise their prices on all products in order to absorb the extra fees charged by Visa and MasterCard, and that they pay higher prices as a result." *Id.*; *see also Oliver* v. *Am. Express Co*., 2020 WL 2079510, at *14 (E.D.N.Y. Apr. 30, 2020) (dismissing NY antitrust claims against American Express for lack of antitrust standing by purchasers using non-American Express cards).

Similarly, here, Plaintiffs lack antitrust standing under New York law because they are "general consumers" at other retailers who compete with Amazon, have no "direct dealings" with Amazon, and do not even allege to have purchased products offered by third-party sellers in other retail stores or e-commerce platforms who were subject to the Parity Provision.

Plaintiffs do not and cannot articulate or support any alternative theory of antitrust standing as *non-purchasers* from Amazon.  *Frame-Wilson* does not help Plaintiffs because, as discussed and as Plaintiffs themselves have acknowledged, the plaintiffs in that case are alleged to be direct purchasers from Amazon's alleged co-conspirators.  Plaintiffs also cite *De Coster* v. *Amazon.com, Inc.*, 2023 WL 372377 (W.D. Wash. Jan. 24, 2023), and *People* v. *Amazon.com, Inc.*, No. CGC-

22-601826 (Cal. Super. Ct.), but neither provides precedent for Plaintiffs' standing argument here. The plaintiffs in *De Coster* are alleged to be direct purchasers <u>in Amazon's store</u>, 2023 WL 372377, at *1, and *People* v. *Amazon.com, Inc.*, is an action under state law by the California Attorney General involving no issue of antitrust standing.

Finally, Plaintiffs cite *Davitashvili* v. *Grubhub Inc.*, 2022 WL 958051, at *1 (S.D.N.Y. Mar. 30, 2022), which involved three alleged classes of purchasers. The first two—the "Direct Takeout and Delivery Class" and "Dine-In Class"—consisted of direct purchasers from restaurants that were alleged to be parties to anticompetitive agreements. *Id.* at *2. The defendants in *Grubhub* challenged antitrust standing *only* as to these two direct-purchaser classes. *Id.* at *11.[3] The court rejected that challenge, but its ruling has no bearing on the claims here for the same reason that the *Frame-Wilson* court's ruling as to standing does not apply: Both of those classes involved claims by alleged direct purchasers from an antitrust co-conspirator, whereas here, Plaintiffs have made clear that they are *not* alleging any such claims. As to the third class, dubbed the "Restaurant Platform Class," the court noted that the defendants had "not challenged" the plaintiffs' "antitrust standing to bring suit on behalf of the Restaurant Platform Class against Grubhub and Uber." *Id.* at *14. The Court only "addresse[d] the issue for the sake of completeness," and did so in just two sentences without any analysis of any of the issues presented here and without discussing whether plaintiffs in this third class were non-purchasers. *Id.*

## B.   The Non-New York Claims Must Be Dismissed for Lack of Antitrust Standing.

Courts in fifteen other states have expressly rejected the type of non-purchaser standing that Plaintiffs rely on here, based on *AGC* and/or the requirement of proximate causation for

---

[3] The defendants argued that the plaintiffs had "not adequately pleaded antitrust injury on behalf of the direct classes because any injury they suffered by purchasing meals at supracompetitive prices in the direct markets cannot be traced to [the] [d]efendants' conduct in the Restaurant Platform Market." *Id.* at *11.

antitrust standing.  Accordingly, Counts 1–14, 16–18, 20–26, and 28–31 must be dismissed.

      **1.**      **Fifteen Other States Have Applied *AGC* and Proximate Causation to Bar Non-Purchaser Standing.**

<u>Arizona</u>.  Arizona antitrust law does not allow standing where the "injury suffered by Plaintiffs is not that of an indirect purchaser of the services sold by the Defendants."  *Consiglio-Tseffos* v. *Visa U.S.A., Inc.*, 2004 WL 3030043, at *1 (Ariz. Super. Ct. Dec. 8, 2004).[4]

<u>Florida</u>.  Where a plaintiff "has not purchased any products from the defendants," their "claim is wholly derivative" and "thus not cognizable as an antitrust injury" under Florida law.  *Se. Fla. Laborers Dist. Health & Welfare Tr. Fund* v. *Philip Morris*, 1998 WL 186878, at *6 & n.7 (S.D. Fla. Apr. 13, 1998) (applying *AGC* and proximate causation principles).

<u>Illinois</u>.  Where "defendants are not accused of selling . . . products to the plaintiffs," a complaint should be dismissed for lack of injury under Illinois's remoteness doctrine.  *Cnty. of Cook* v. *Philip Morris, Inc.*, 817 N.E.2d 1039, 1048 (Ill. App. Ct. 2004) (applying *AGC* and proximate causation principles).

<u>Iowa</u>.  Where "the plaintiffs are neither consumers of the defendants' products nor competitors of the defendants," "the plaintiffs' injuries were too remote to be compensable under Iowa's competition law."  *Southard* v. *Visa U.S.A. Inc.,* 734 N.W.2d 192, 199 (Iowa 2007).

<u>Maine</u>.  Applying *AGC*, the "factors that militate against standing outweigh those in favor of standing" in the case of non-purchasers.  *Knowles* v. *Visa U.S.A., Inc.*, 2004 WL 2475284, at *8 (Me. Super. Ct. Oct. 20, 2004).

<u>Michigan</u>.  Where a plaintiff was "not an indirect purchaser" and instead was "actually a

---

[4] Plaintiffs argue that Arizona, North Dakota, and Vermont's laws "do not contain any restriction that would bar non-purchasers from seeking recovery," and that Amazon's cases are not a "blanket prohibition."  Opp. 18.  No matter how the rule is characterized in these cases, the case law in Arizona, North Dakota, and Vermont has applied the *AGC* factors to reject non-purchaser standing.

'non-purchaser' of the debit card services that Defendants provide to merchants," "he cannot sue" under *AGC*. *Stark* v. *Visa U.S.A. Inc.*, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004).

Minnesota.   Minnesota courts "do not believe that the legislature intended" to allow standing where plaintiffs "did not purchase, directly or indirectly, any product or service provided by or manufactured with components from" the defendants. *Lorix* v. *Crompton Corp.*, 736 N.W.2d 619, 632 (Minn. 2007) (citing principles of proximate causation).

Mississippi.   There is "no showing of antitrust injuries" where the plaintiff had "never [consumed the defendant's products], purchased, or competed in the market"; plaintiff "cannot satisfy any of the basic requirements of injury and standing imposed by antitrust law." *Owens Corning* v. *R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 344 (Miss. 2004).

Nebraska.   "None of" the *AGC* factors "weigh in favor of concluding that appellants' claimed injury is the type intended to be protected by antitrust laws," where the plaintiffs were "not competitors in the allegedly affected market" or "consumers of [the defendant's] services." *Kanne* v. *Visa U.S.A. Inc.*, 723 N.W.2d 293, 298–99 (Neb. 2006).

New Mexico.   A plaintiff who is "neither a consumer nor a competitor in the market allegedly being restrained by Defendants and does not appear in that chain of distribution," and instead was only "a consumer of goods sold by merchants who happen to be part of the affected market," lacks antitrust standing. *Nass-Romero* v. *Visa U.S.A. Inc.*, 279 P.3d 772, 778–81 (N.M. Ct. App. 2012) (applying *AGC*).

North Carolina.   There is no antitrust standing where the plaintiffs are not "consumer[s] or competitor[s] in the allegedly restrained market," *i.e.*, where the plaintiffs "claim[] injury in a market collateral to the market in which the alleged restraint took place." *Crouch* v. *Crompton Corp.*, 2004 WL 2414027, at *18 (N.C. Super. Ct. Oct. 28, 2004) (applying *ACG*).

    <u>North Dakota.</u>  "Plaintiffs are not 'indirect purchasers'" and "lack standing to pursue their claims" where they are "non-purchasers"—described as those who "claim to have been overcharged on their day-to-day purchases of an enormous variety of consumer goods that defendants neither manufactured nor sold." *Beckler* v. *Visa U.S.A., Inc.*, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004) (applying *AGC*).

    <u>Rhode Island.</u>  A non-purchaser's alleged antitrust injury is "too remote to confer standing" under *AGC*. *R.I. Laborers' Health & Welfare Fund* v. *Philip Morris*, *Inc.*, 99 F. Supp. 2d 174, 184–87 (D.R.I. 2000).

    <u>Vermont.</u>  Whether under *AGC* or "the target area test," non-purchasers do not have standing. *Fucile* v. *Visa U.S.A., Inc.*, 2004 WL 3030037, at *3 (Vt. Super. Ct. Dec. 27, 2004).

    <u>Wisconsin.</u>  A plaintiff who "claimed injuries, as a general Wisconsin consumer or as a debit card purchaser," rather than a purchaser of the defendant's products, has no antitrust standing because the injuries "are derivative, remote, and highly speculative." *Strang* v. *Visa U.S.A., Inc.*, 2005 WL 1403769, at *5 (Wis. Cir. Ct. Feb. 8, 2005) (applying *AGC*).

### 2.    Eleven States Would Prohibit Non-Purchaser Standing in Light of Limitations on Antitrust Standing Under Their Respective Laws.

    While they have not expressly ruled on standing by non-purchasers, an additional eleven states limit antitrust standing so as to preclude non-purchasers from asserting they have standing. Under the laws of these states, for antitrust standing to exist, plaintiffs must satisfy the *AGC* factors (either because those states have expressly adopted *AGC* or because they have a statutory mandate to construe their states' antitrust laws "in harmony" with federal antitrust law)[5] or at least must plead and prove proximate causation (a requirement identical to *AGC*'s first factor). MTD 14–23.[6]

---

[5] These states are Connecticut, Maryland, Nevada, South Dakota, Hawaii, Kansas, Oregon, and West Virginia.
[6] These states are Arkansas, New Hampshire, and Utah.

As described above, the sixteen states that have considered non-purchaser standing have concluded that such standing cannot satisfy *AGC* or the requirements of proximate causation.

### III.      Plaintiffs' Claims Are Subject to the Rule of Reason.

Plaintiffs do not dispute that the Parity Provision establishes the terms and conditions for third-parties to sell goods in Amazon's store—not the prices for goods that Amazon sells as a first-party seller.  Plaintiffs nevertheless argue that the *per se* rule applies "where Amazon, as a first-party seller, sold the exact same product that a third-party seller sold both on the Amazon Platform and outside the Amazon Platform."  Opp. 18.  Notably, the court in *Frame-Wilson* rejected the same argument, holding that the *per se* rule does not apply because "Plaintiffs do not allege[ ]that the provision at issue involves an agreement to fix prices of Amazon's products *and* those of third-party sellers.  Instead, Plaintiffs challenge the vertical agreement between third-party sellers and their *host platform*, Amazon.com."  *Frame-Wilson I*, 591 F. Supp. 3d at 986; *see also De Coster*, 2023 WL 372377, at *4 ("Per se liability is reserved for only those agreements that are 'so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'"); Order on Amazon's Demurrer, *People* v. *Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Super. Ct. Mar. 30, 2023) (Dkt. 62-1 at 10) ("The challenged agreements do not fall neatly into categories of agreements that have been found to be per se violations of the antitrust laws in the past, such as agreements between business to 'engage in a horizontal allocation of markets, with would-be competitors dividing up territories or customers.'").

Further, Plaintiffs disregard state law—and the federal law it follows—in arguing that the Parity Provision is a "vertical price-fixing agreement" that is "*per se* unlawful" under the laws of Illinois, as well as Hawaii, Kansas, Maryland, Minnesota, New Hampshire, Nevada, Tennessee,

12

and West Virginia.  Opp. 19–22.[7]

**A.     The Illinois Antitrust Statute Provides that Only Horizontal Agreements Between Competitors Are *Per Se* Unlawful.**

Plaintiffs argue that Section 3(1) of the Illinois Antitrust Act applies to the vertical agreements here, ignoring that this Section requires the agreement to be with "a competitor."  740 Ill. Comp. Stat. 10/3(1).  "Section 3(1) does not reach vertical agreements." *Force Partners, LLC* v. *KSA Lighting & Controls, Inc.*, 2022 WL 580808, at *19 (N.D. Ill. Feb. 25, 2022); *Sportmart, Inc.* v. *No Fear, Inc.*, 1996 WL 296643, at *17 (N.D. Ill. June 3, 1996) ("Section 3(1) applies only to agreements and conspiracies between competitors.").  Accordingly, "vertical price fixing agreements are not per se illegal under Section 3(1)," and "are to be judged . . . by the rule of reason." *Sportmart*, 1996 WL 296643, at *17.

**B.     Hawaii, Minnesota, New Hampshire, Nevada, Tennessee, West Virginia, and Maryland Law Provide the Parity Provision Is Subject to the Rule of Reason.**

In *Leegin Creative Leather Products, Inc.* v. *PSKS, Inc.*, the Supreme Court overruled prior precedent holding that vertical resale price maintenance agreements between a manufacturer and retailer are subject to *per se* treatment, holding that "vertical price restraints are to be judged according to the rule of reason."  551 U.S. 877, 907 (2007).  Plaintiffs rely on pre-*Leegin* cases in arguing that Hawaii, Minnesota, New Hampshire, Nevada, Tennessee, and West Virginia law would subject the Parity Provision to *per se* treatment.  And they ignore that in all of these states, the rule in *Leegin* applies.

Hawaii.   The Hawaii antitrust statutes "shall be construed in accordance with judicial interpretations of similar federal antitrust statutes."  Haw. Rev. Stat. Ann. § 480-3.  Section 480-4

---

[7] While Mississippi and Kansas are included in the heading of Section IV in Plaintiffs' brief, the brief does not address those states' laws.  It is unnecessary for the Court to address the appropriate standard because Plaintiffs concede the Mississippi claim is time-barred, and the Kansas claim fails for lack of antitrust standing.

mirrors Section 1 of the Sherman Act, and should be construed in accordance with *Leegin*. *Lucas* v. *Citizen Commc'ns Co.*, 409 F. Supp. 2d 1206, 1223 (D. Haw. 2005). *Lucas* finds that vertical agreements are subject to the rule of reason. *Id.*

Minnesota.  Plaintiffs cite *State by Humphrey* v. *Alpine Air Products, Inc.*, 490 N.W.2d 888, 894 (Minn. Ct. App. 1992), for the proposition that "Minnesota antitrust law should be interpreted consistently with federal court interpretations of the Sherman Act unless state law is clearly in conflict with federal law."  Opp. 21.  *Alpine Air*, which pre-dates *Leegin*, held that vertical price fixing was *per se* illegal based on then-existing federal precedent, not the text of the state antitrust statute, which the court held includes language "indicat[ing] vertical price-fixing agreements are excluded" from the list of *per se* prohibitions.  490 N.W.2d at 893–94.  That federal precedent has been abrogated by *Leegin*.  *E.g., Hannah's Boutique, Inc.* v. *Surdej*, 112 F. Supp. 3d 758, 769 (N.D. Ill. 2015).

New Hampshire.  The New Hampshire antitrust statute "follow[s] closely the language of federal antitrust law," *Minuteman, LLC* v. *Microsoft Corp.*, 2000 WL 33187307, at *3 (N.H. Super. Dec. 3, 2000), *aff'd*, 147 N.H. 634 (2002), and courts therefore would follow *Leegin*.  *See also* N.H. Rev. Stat. Ann. § 356:14.

Nevada.  Because the "language of Nevada's harmonization provision" with federal antitrust law is "mandatory," *In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 264 (S.D.N.Y. 2019), Nevada courts would follow *Leegin*.

Tennessee.  In *Spahr* v. *Leegin Creative Leather Prod., Inc.*, 2008 WL 3914461, at *13–14 (E.D. Tenn. Aug. 20, 2008), the court held that the plaintiffs "have asserted no good reason why the Tennessee courts would not follow" *Leegin*.  Neither do Plaintiffs here.

West Virginia.  West Virginia Code § 47-18-3 "was closely modeled after the Sherman

Act." "West Virginia's Legislature 'has directed that where our state antitrust provisions track the Sherman Act's provisions, federal decisional law should be followed.'" *Panhandle Cleaning & Restoration, Inc.* v. *Nationwide Mut. Ins. Co.*, 2018 WL 3717108, at *2 (N.D.W. Va. Aug. 3, 2018).  In *Stand Energy Corp.* v. *Columbia Gas Transmission Corp.*, 2008 WL 3891219, at *13 (S.D.W. Va. Aug. 19, 2008), the court applied *Leegin* to West Virginia's statute, and held the rule of reason applied to vertical restraints.  Plaintiffs' argument—that West Virginia courts are "not bound to apply federal law . . . where the federal and state provisions are not comparable," Opp. 22—has been rejected by West Virginia courts.  *E.g., Kessel* v. *Monongalia Cnty. Gen. Hosp. Co.,* 648 S.E.2d 366, 375 (W. Va. 2007).

Maryland.  Courts should be "guided by" federal law in interpreting Maryland antitrust law.  *Oliver* v. *Am. Express Co.*, 2021 WL 386749, at *3 (E.D.N.Y. Feb. 1, 2021).  The only authority Plaintiffs cite to argue that Maryland courts would apply *per se* treatment is *Frame-Wilson I*, which relied solely on *Yellow Cab Co.* v. *Uber Technologies, Inc.*, 2015 WL 4987653, at *4 (D. Md. Aug. 19, 2015).  Opp. 22.  *Yellow Cab*, which was on a motion to remand a case after removal, is inapposite.  In that case, plaintiffs alleged an agreement wherein a supplier (Uber) set the prices charged by independent drivers, alleging that "Uber forces its Providers and Drivers to charge mandatory, uniform prices which have not been approved by" the taxi regulator.  Compl. (Dkt. 2) ¶ 109, *Yellow Cab Co.* v. *Uber Techs., Inc.*, No. 1:14-cv-02764-RDB (D. Md. Aug. 28, 2014).  Here, Plaintiffs do not allege that Amazon set the prices that any third-party seller charged.

## IV.    Three of Plaintiffs' Claims Fail For State-Specific Reasons.

### A.    Plaintiffs Fail to State a Claim Under the N.H. Consumer Protection Act.

Plaintiffs do not address the multiple federal district court decisions from New Hampshire that have dismissed CPA claims for failure to identify specific conduct in New Hampshire.  MTD 28–29 (citing New Hampshire decisions).  Instead, Plaintiffs argue that they are not required to

allege conduct in New Hampshire because the New Hampshire Supreme Court has given the statute a "broad sweep," including in *LaChance* v. *U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 95 (2007). Opp. 26–27. *LaChance* is off the mark; the "question presented in *LaChance* was whether consumers were required to bring 'antitrust-type actions' under New Hampshire's antitrust statute rather than under the CPA . . . .   The *LaChance* court did not say, nor does it[] suggest, that the CPA applies to proscribed conduct occurring out of state." *Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at \*22 (N.D. Cal. Oct. 2, 2014); *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1159 (N.D. Cal. 2009) (rejecting same argument; noting *LaChance* does not "address the requirement that the offending conduct occur within the state" for a CPA claim).

### B.   Plaintiffs Fail to Plead a Claim Under the Utah Antitrust Act.

Plaintiffs ask this Court to go against the weight of authority within this Circuit and hold that the Utah Antitrust Act does not require a class representative to be a citizen or resident of Utah. Opp. 27–28; MTD 30.  Plaintiffs provide no basis to depart from the majority rule.

### C.   Plaintiffs Fail to Plead a Missouri Merchandising Practices Act Claim.

Plaintiffs contend that the prohibition on engaging in "unfair practices" in the MMPA stands on its own, and the alleged unfair practices need not be "in connection with the sale or advertisement of any merchandise." Opp. 28–29.  Plaintiffs' position is contrary to the weight of Missouri law.  *E.g.*, *Watson* v. *Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 408 (Mo. 2014) (denying unfair practices claim relating to loan modification negotiations where such negotiations "were not 'in connection with' the sale of this loan because that was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan"); *Geran* v. *Xerox Educ. Servs., Inc.*, 469 S.W.3d 459, 466–67 (Mo. Ct. App. 2015) (same); *State* v. *Kowalski*, 587 S.W.3d 709, 716 (Mo. Ct. App. 2019) ("[A]ll MMPA cases must allege a relationship between the sale of merchandise and the allegedly unlawful conduct.").  None of Plaintiffs' cases involve a defendant

that was not part of the distribution chain for the purchased product. *E.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F.3d 1033, 1079 (S.D. Cal. 2017) (indirect purchaser claim); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 946 F. Supp. 2d 554, 571 (E.D. La. 2013) (same).

## V.   Many of Plaintiffs' Claims Are Time-Barred.

Plaintiffs do not dispute that their claims are largely based on purchases outside of the applicable limitations periods; for the majority of states, they are asking this Court to apply cross-jurisdictional class-action tolling—*i.e.*, tolling of their claims based on *Frame-Wilson*—even though they concede no court in those states has adopted such tolling.[8]

### A.   The Court Should Decline to Import Cross-Jurisdictional Class Action Tolling Into the Laws of States That Have Not Adopted It.

"Of the federal courts that have considered the issue, most have refused to extend" cross-jurisdictional tolling "into a state that has yet it consider it."  *Soward* v. *Deutsche Bank AG*, 814 F. Supp. 2d 272, 281 (S.D.N.Y. 2011); *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014) (cross-jurisdictional tolling under state law "can only be applied if it is clearly recognized by authoritative state court decisions."); 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 9:67 (6th ed.) ("federal courts in diversity cases have generally been disinclined to apply cross-jurisdictional tolling where the state whose law is being considered has not explicitly done so.").[9]

Plaintiffs do not cite any case by any court in Connecticut, Florida, Kansas, Iowa, Minnesota, Nebraska, New Hampshire New Mexico, North Dakota Oregon, Maine, Tennessee, or Vermont adopting cross-jurisdictional class action tolling. They rely on cases in those states

---

[8] Plaintiffs concede their Mississippi claim is barred and their Arkansas Deceptive Trade Practices Act claim is barred to the extent it is based on purchases prior to August 1, 2017.  Plaintiffs do not oppose Amazon's motion to dismiss the Missouri claim to the extent it is based on purchases outside the November 8, 2017–March 2019 time period.
[9]  *See also Vincent* v. *Money Store*, 915 F. Supp. 2d 553, 569–70 (S.D.N.Y. 2013); *In re Fosamax Prods. Liability Litig.*, 694 F. Supp. 2d 253, 258 (S.D.N.Y. 2010), *aff'd sub nom. Casey* v. *Merck & Co.*, 678 F.3d 134 (2d Cir. 2012).

adopting *American Pipe* intra-jurisdictional tolling,[10] or their argument that adoption of cross-jurisdictional tolling is the "trend."  Opp. 38.  Neither argument warrants extension of cross-jurisdictional class action tolling to a state that has not adopted it.  "Despite some important similarities, *American Pipe* tolling and cross-jurisdictional tolling are different such that adoption of the former does not necessarily imply adoption of the latter."  *Chavez* v. *Occidental Chem. Corp.*, 933 F.3d 186, 198 (2d Cir. 2019).  "The few state courts to consider recognition of 'cross-jurisdictional' tolling under which a class action commenced in one jurisdiction (federal court or a different state) tolls the statute of limitations for individual claims later commenced in another jurisdiction, have reached no consensus."  1 *McLaughlin on Class Actions* § 3:15 (9th ed.).

**B.      The Claims Under the Laws of Other States Are Time-Barred in Whole or in Part Based on State-Specific Requirements.**

<u>Florida</u>.  Plaintiffs argue that Florida has adopted intra-jurisdictional tolling, but fail to address Fla. Stat. § 95.051, which provides "an exclusive list of conditions that can toll the running of the statute of limitations," and the list does not identify the pendency of another class action. *Anderson* v. *Mosaic Fertilizer LLC*, 2021 WL 4762421, at *5 (M.D. Fla. Sept. 7, 2021) ("Notably, § 95.051(1) does not include *American Pipe* tolling.").  Courts, on that basis, have declined to import cross-jurisdictional class action tolling into Florida law.  *E.g.*, *Becnel* v. *Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013) ("Florida does not allow tolling during the pendency of class action lawsuits no matter where they are filed."); *Anderson*, 2021 WL 4762421, at *5 ("Florida law has not adopted the *American Pipe* tolling rule for class action claims.").[11]  Plaintiffs'

---

[10] *E.g.*, *Salatino* v. *Chase*, 939 A.2d 482 (Vt. 2007); *Grimes* v. *Hous. Auth. of the City of New Haven*, 698 A.2d 302 (Conn. 1997); *Bergquist* v. *Int'l Realty, Ltd.*, 537 P.2d 553 (Or. 1975); *Bartlett* v. *Miller & Schroeder Muns., Inc.*, 355 N.W.2d 435 (Minn. Ct. App. 1984).

[11] In neither of the cases cited by Plaintiffs did the court actually decide whether intra-jurisdictional class action tolling could apply.  In *Gaff* v. *R.J. Reynolds Tobacco Co.*, 129 So. 3d 1142 (Fla. Dist. Ct. App. 2013), the suit was untimely, even if the limitations period had been tolled, and there could not be tolling in *Hromyak* v. *Tyco Int'l Ltd.*, 942 So. 2d 1022 (Fla. Dist. Ct. App. 2006), because the claims in the two suits were "not identical," *id.* at 1023.

Florida claims are limited to purchases for the November 8, 2018, to March 8, 2019, time period.

Illinois. Plaintiffs try to get around the case law holding that the "Illinois statute of limitations is not tolled during the pendency of a class action in federal court," *Portwood* v. *Ford Motor Co.*, 701 N.E.2d 1102, 1105 (Ill. 1998), by invoking the Illinois savings statute. The court in *Frame-Wilson* previously dismissed an Illinois Consumer Protection Act claim for failure to state a claim, *Frame-Wilson I*, 591 F. Supp. 3d at 994; the savings statute does not apply where the claim "was dismissed for failure to state a cause of action." *Bentley* v. *Glenn Shipley Enters., Inc.*, 619 N.E.2d 816, 818 (Ill. App. 1993); *Grumhaus* v. *Comerica Secs., Inc.*, 2003 WL 22136307, at *2 (N.D. Ill. Sept. 16, 2003) (same). The Illinois Consumer Protection Claim is time-barred.[12]

Tennessee. Plaintiffs attempt to circumvent *Maestas* v. *Sofamor Danek Group Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000), which rejected class action cross-jurisdictional tolling under Tennessee law, by arguing that *Maestas* applies only to product liability cases. That is incorrect. *E.g.*, *Tigg* v. *Pirelli Tire Corp.*, 232 S.W.3d 28, 33–36 (Tenn. 2007) (applying *Maestas* to employment termination case).[13] Plaintiffs' claim under Tennessee law is therefore barred.

Kansas. Plaintiffs cite a Kansas district court decision recognizing intra-jurisdictional tolling, *Farmland National Beef Packing Co., L.P.* v. *Stone Container Corp.*, 2006 WL 2356958 (Kan. Dist. Ct. Aug. 3, 2006), but disregard that the Kansas Supreme Court has previously held that "Kansas does 'not have any tolling provisions that apply during the pendency of an action.'" *Seaboard Corp.* v. *Marsh Inc.*, 284 P.3d 314, 322 (Kan. 2012) (citation omitted). Plaintiffs'

---

[12] The savings statute does not apply to the Illinois Antitrust Law claim because the *Frame-Wilson* plaintiffs did not assert claims under that law. *See Grumhaus*, 2003 WL 22136307, at *3–4.

[13] Plaintiffs cite one non-binding opinion, *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 350–51 (E.D. Pa. 2004), which has been rejected by several other courts, *e.g.*, *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1081–82 (D. Kan. 2009); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1015, 1021–22 & n.6 (N.D. Cal. 2014), and also cannot be reconciled with the Tennessee Supreme Court's decisions in *Maestas* and *Tigg*.

Kansas claim is therefore time-barred.

Thus, Plaintiffs' (1) Kansas, New Hampshire (Consumer Protection), Illinois (Consumer Protection) and Tennessee claims are barred by the applicable three-year limitations period (Counts 7, 9, 19, and 27); (2) Connecticut, Florida, Iowa,[14] Minnesota, Nebraska, New Hampshire (Antitrust), New Mexico, North Dakota, and Oregon claims are limited to purchases for the time period November 8, 2018, to March 8, 2019 (Counts 3, 4, 8, 13, 16, 18, 20, 23, and 24); and (3) Maine, Vermont, and Wisconsin claims are limited to purchases for the time period November 8, 2016, to March 8, 2019 (Counts 10, 29, and 31).[15]

## CONCLUSION

For the foregoing reasons, and those in Amazon's opening brief, Amazon's motion to dismiss should be granted.

---

[14] *Mormann* v. *Iowa Workforce Development*, 913 N.W.2d 554 (Iowa 2018), was not a class action; *Lucas* v. *Pioneer, Inc.*, 256 N.W.2d 167 (Iowa 1977), involved intervention in an already existing class action.

[15] In *Cain* v. *Midland Funding, LLC*, 256 A.3d 765, 800–01 (Md. 2021), cross-jurisdictional tolling was limited to "later filed individual claims."  For Nevada, Plaintiffs cite a trial court opinion with no reasoning that adopted intra-jurisdictional tolling for claims in Nevada courts.  *Haberkorn* v. *Archon Corp.*, 2016 WL 11164442, at *1 (Nev. Dist. Ct. Aug. 4, 2016).  The Nevada Supreme Court's denial of mandamus on procedural grounds adds nothing to the analysis.  *Archon Corp.* v. *Eighth Judicial Dist. Court of Nev.*, 407 P.3d 702 (Nev. 2017).

Dated: August 9, 2023                    Respectfully submitted,


                                         */s/ Karen L. Dunn*
                                         _____
                                         Karen L. Dunn (*pro hac vice*)
                                         William A. Isaacson (*pro hac vice*)
                                         Amy J. Mauser (*pro hac vice*)
                                         Martha L. Goodman
                                         PAUL, WEISS, RIFKIND, WHARTON &
                                           GARRISON LLP
                                         2001 K Street, NW
                                         Washington, DC 20006
                                         Tel: (202) 223-7300
                                         Fax: (202) 223-7420
                                         kdunn@paulweiss.com
                                         wisaacson@paulweiss.com
                                         amauser@paulweiss.com
                                         mgoodman@paulweiss.com

                                         *Attorneys for Defendant Amazon.com, Inc.*